

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
Fax 215.981.4750

Robert L. Hickok
direct dial:  215.981.4583
direct fax:  267.200.0746
hickokr@pepperlaw.com

April 1, 2020

**Via ECF**

Hon. Eduardo C. Robreno
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

      Re:     ***Utah Retirement Systems v. Healthcare Services Group, Inc., et al.*, Case No. 2:19-cv-01227-ER**
             **Notice of Supplemental Authority in Connection with Motion to Dismiss**

Dear Judge Robreno:

      We represent Healthcare Services Group, Inc. and the individual defendants in the above-captioned matter.  We write to bring to Your Honor's attention a recent decision from the U.S. District Court for the Northern District of New York, *Lewis v. YRC Worldwide Inc.*, 2020 U.S. Dist. LEXIS 53471 (N.D.N.Y. Mar. 27, 2020) (Suddaby, C.J.), a copy of which is attached.

      In *Lewis*, the court dismissed a putative securities class action in its entirety, finding that plaintiffs failed to state a claim under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 because the complaint failed adequately to plead (1) a material misstatement or omission regarding the alleged fraudulent scheme; and (2) a strong inference of scienter.

| Philadelphia | Boston | Washington, D.C. | Los Angeles | New York | Pittsburgh | Detroit |
|---|---|---|---|---|---|---|
| Berwyn | Harrisburg | Orange County | Princeton | Rochester | Silicon Valley | Wilmington |



3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
Fax 215.981.4750

Defendants respectfully submit that Judge Suddaby's ruling in *Lewis* is directly relevant to the issues currently pending before the Court.

Respectfully,

Robert L. Hickok

# Exhibit A

No *Shepard's* Signal™
As of: April 1, 2020 2:49 PM Z

## *Lewis v. YRC Worldwide Inc.*

United States District Court for the Northern District of New York

March 27, 2020, Decided; March 27, 2020, Filed

1:19-CV-0001 (GTS/ATB)

**Reporter**
2020 U.S. Dist. LEXIS 53471 *

CHRISTINA LEWIS; CITY OF WARWICK RETIREMENT FUND; and PETER SZABO, Plaintiffs, v. YRC WORLDWIDE INC.; JAMES L. WELCH; JAMIE G. PIERSON; STEPHANIE D. FISHER; and DARREN D. HAWKINS, Defendants.

## Core Terms

scienter, Defendants', misleading, allegations, omissions, Overcharge, alleged facts, misstatements, particularity, strong inference, class period, reasons, motive, securities fraud, investor, purported class, Exchange Act, disclosure, disclose, duty to disclose, recklessness, pricing, sales, individual defendant, financial statement, customers, reserves, factual allegations, contingency, actual knowledge

**Counsel:** **[*1]** For Christina Lewis, Plaintiff: PHILLIP KIM, ESQ., OF COUNSEL, THE ROSEN LAW FIRM, New York, NY.

For City of Warwick Ret. Fund, Plaintiff: JEFFREY P. CAMPISI, ESQ., DONALD R. HALL, ESQ., JASON URIS, ESQ., OF COUNSEL, KAPLAN FOX & KILSHEIMER LLP, New York, NY.

For City of Warwick Ret. Fund, Plaintiff: GEORGE H. LOWE, ESQ., JONATHAN B. FELLOWS, ESQ., OF COUNSEL, BOND SCHONECK & KING, PLLC, Syracuse, NY.

For Peter Szabo, Plaintiff: EMMA GILMORE, ESQ., JEREMY A. LIBERMAN, ESQ., JOSEPH A. HOOD, II, ESQ., MICHAEL J. WERNKE, ESQ., SAMUEL ADAMS, ESQ., VERONICA MONTENEGRO, ESQ., VILLI A. SHTEYN, ESQ., OF COUNSEL, POMERANTZ LLP, New York, NY.

For Peter Szabo, Plaintiff: GARTH SPENCER, ESQ., OF COUNSEL, GLANCY PRONGAY & MURRAY LLP, New York, NY.

For Defendants: ANN M. ASHTON, ESQ., JONATHAN E. RICHMAN, ESQ., RALPH C. FERRARA, ESQ., OF COUNSEL, PROSKAUER ROSE LLP, Washington, D.C.

For Defendants, DANIEL J. FRENCH, ESQ., DAVID G. BURCH, JR., ESQ., ANNELIESE ALIASSO, ESQ., OF COUNSEL, BARCLAY DAMON LLP, Syracuse, NY.

**Judges:** Hon. Glenn T. Suddaby, Chief United States District Judge.

**Opinion by:** Glenn T. Suddaby

## Opinion

### DECISION and ORDER

Currently pending before the Court, in this securities action filed by Christina Lewis, individually **[*2]** and on behalf of all others similarly situated, the City of Warwick Retirement Fund, and Peter Szabo ("Plaintiffs") against YRC Worldwide Inc. ("Defendant YRC"), James L. Welch ("Defendant Welch"), Jamie G. Pierson

("Defendant Pierson"), Stephanie D. Fisher ("Defendant Fisher"), and Darren D. Hawkins ("Defendant Hawkins") (collectively "Defendants"), is Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim. (Dkt. No. 81.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Summary of Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiffs' Amended Complaint alleges that, from March 10, 2014, through December 14, 2018, Defendants repeatedly violated *Section 10(b)* and *20(a)* of the *Securities Exchange Act of 1934* ("Exchange Act") and SEC *Rule 10b-5*. (*See generally* Dkt. No. 75 [Plfs.' Amend. Compl.].) In particular, Plaintiffs' Amended Complaint alleges that Defendant YRC maintained a company-wide re-weigh system that overcharged customers ("Overcharge Scheme"), and thereby reaped approximately $24 million a year for weight/freight it never transported. (*Id.*) Plaintiff's Amended Complaint also alleges that Defendants failed to **[*3]** disclose a Department of Justice ("DOJ") investigation into Defendants' alleged re-weigh system that was initiated through a *qui tam* civil complaint, and that Defendants made false and misleading statements about their pricing strategy, internal controls, and compliance with the Generally Accepted Accounting Principles ("GAAP") and other laws. (*Id.*)

Generally, based on these factual allegations, Plaintiffs' Amended Complaint asserts the following two claims: (1) a claim that Defendants violated *Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)*, and SEC *Rule 10b-5, 17 C.F.R. § 240.10b-5*, during the class period; and (2) a claim that Defendants violated *Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a)*. (*Id.*) Familiarity with these claims, and the factual allegations supporting them, is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

### B. Defendants' Motion to Dismiss

### 1. Summary of Defendants' Arguments in Their Memorandum of Law

Generally, in their motion to dismiss, Defendants assert three arguments. (Dkt. No. 81-24.) First, Defendants argue that Plaintiffs have not stated a claim for a violation of *Section 10(b)* of the Exchange Act or SEC *Rule 10b-5*. (*Id.* at 6-36.) More specifically, Defendants argue that Plaintiffs have not alleged facts plausibly suggesting **[*4]** a material misstatement or omission because, based on the Amended Complaint's own factual allegations (and the documents incorporated by reference in the Amended Complaint), Defendants made (1) no misstatements about reported financial results, (2) no misstatements about accounting policies, (3) no misstatements about loss contingencies, (4) no misstatements about conformance to GAAP, and (5) no other material misstatements or omissions. (*Id.* at 8-28.)

Second, Defendants argue that Plaintiffs have not alleged facts plausibly suggesting a strong inference of scienter because (1) there are no factual allegations plausibly suggesting conscious misbehavior or recklessness, and (2) Plaintiffs' allegations of motive to commit fraud are insufficient to plausibly suggest such a strong inference. (*Id.* at 29-36.)

Third, Defendants argue that Plaintiffs have not stated a control-person liability claim under *Section 20(b)* of the Exchange Act because they have failed to allege facts plausibly suggesting a primary violation of *Section 10(b)*. (*Id.* at 37.)

### 2. Summary of Plaintiffs' Arguments in Their Opposition

Generally, in opposition to Defendants' motion, Plaintiffs assert three arguments. (Dkt. No. 83.) First, Plaintiffs argue that they have stated a claim **[*5]** for a violation of *Section 10(b) of the Exchange Act*, SEC *Rule 10b-5*, and *Section 20(b)* of the Exchange Act by alleging that Defendants provided false and misleading statements and omissions. (Dkt. No. 83.) More specifically, Plaintiffs argue that they have alleged that (1) Defendants' overcharge scheme occurred during the class period, (2) Defendants had an affirmative duty to disclose the overcharge scheme and DOJ investigation, (3) Defendants made materially false and misleading statements and omissions about their reported financial results, (4) Defendants failed to disclose the DOJ investigation as a loss contingency in violation of GAAP, (5) Defendants understated YRC's re-rate reserves, (6) Defendants made material misstatements and omissions in YRC's Sarbanes-Oxley ("SOX") Certifications, and (7) Defendants made materially false

and misleading statements about their conformance to GAAP and compliance with all laws. (*Id.* at 12-30.)

Second, Plaintiffs argue that their Amended Complaint alleges facts plausibly suggesting a strong inference of scienter by alleging that (1) Defendant Welch had actual knowledge of the Overcharge Scheme, (2) all individual Defendants knew of the DOJ investigation, (3) Defendants failed to disclose information they had a **[*6]** clear duty to disclose, (4) Defendants repeatedly made statements about YRC's re-rating pricing strategy, (5) the facts in question pertained to YRC's core operations (rendering it apparent that knowledge of them may be attributed to the company and its key officers), (6) Defendants had the motive and opportunity required for scienter, and (7) at the very least, *someone* whose intent could be imputed to the corporation acted with the requisite scienter. (*Id.* at 31-39.)

Third, Plaintiffs argue that the Amended Complaint states a control-person liability claim under *Section 20(b)* of the Exchange Act because it has sufficiently alleged a violation of *Section 10(b) of the Exchange Act* and SEC *Rule 10b-5*. (*Id.* at 40.)

### 3. Summary of Defendants' Arguments in Their Reply

Generally, in reply to Plaintiffs' opposition, Defendants repeat their argument that the Amended Complaint has not alleged facts plausibly suggesting a material misrepresentation. (Dkt. No. 84.) Specifically, Defendants argue that there was (1) no duty to disclose the alleged "overcharge scheme" or DOJ investigation, (2) no misrepresentation about pricing or reported financial results, (3) no GAAP violations from non-disclosure of the DOJ investigation, (4) no misstatements about YRC's re-rate reserves, (5) no **[*7]** misstatements in YRC's SOX Certifications, and (6) no misstatements about conformance to GAAP or compliance with laws. (*Id.* at 18-25.) In addition, Defendants argue that Plaintiffs have not pled a strong inference of scienter because there is (1) no factual allegation plausibly suggesting conscious misbehavior or recklessness, (2) no scienter from the knowledge of the DOJ investigation, (3) no scienter from the alleged disclosure duties, (4) no scienter under the "core operations" theory, (5) no scienter from the SEC filings or SOX certifications, and (6) no scienter based on motive or opportunity. (*Id.* at 2-14). Finally, Defendants argue that Plaintiffs have not alleged facts plausibly suggesting that any misconduct occurred during the class period. (*Id.* at 15.)

### 4. Subsequent Letter-Briefs

After the completion of briefing on their motion, Defendants submitted a letter-brief directing the Court's attention to a Second Circuit decision published on December 10, 2019: *Gamm v. Sanderson Farms, Inc, 944 F.3d 455 (2d Cir. 2019)*. (Dkt No. 87.) Defendants argue that, pursuant to this decision, Plaintiffs have failed to plead facts of the alleged underlying illegal activity with sufficient particularity under *Fed. R. Civ. P. 9(b)* and the PSLRA. (*Id.*)

In response, Plaintiffs argue that *Gamm* is inapposite **[*8]** because their Amended Complaint is based on information provided by several confidential informants, and the alleged underlying illegal activities were pleaded with sufficient particularity. (Dkt. No. 88.)

### II. GOVERNING LEGAL STANDARDS

### A. General Legal Standard Governing Dismissal for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to *Fed. R. Civ. P. 12(b)(6)*, can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under *Fed. R. Civ. P. 8(a)(2)*; or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty., 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008)* (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. *Rule 8(a)(2) of the Federal Rules of Civil Procedure* requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)* [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by *Fed. R. Civ. P. 8(a)(2)*.

On **[*9]** the one hand, the Supreme Court has long characterized the "short and plain" pleading standard

under *Fed. R. Civ. P. 8(a)(2)* as "simplified" and "liberal." *Jackson, 549 F. Supp.2d at 212 n.20* (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under *Fed. R. Civ. P. 8(a)(2)* requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson, 549 F. Supp. 2d at 212 n.17* (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson, 549 F. Supp. 2d at 212 n.18* (citing Supreme Court cases); *Rusyniak v. Gensini, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009)* (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice § 12.34[1][b]* at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak, 629 F. Supp. 2d at 213 n.22* (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-52, 173 L. Ed. 2d 868 (2009)*.

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme **[*10]** Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under *15 U.S.C. § 1*. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly, 127 S. Ct. at 1968-69*. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id. at 1965-74*. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id. at 1965*. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference **[*11]** that the defendant is liable for the misconduct alleged." *Iqbal, 129 S. Ct. at 1949*. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal, 129 S. Ct. at 1950* (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly, 550 U.S. at 556*.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal, 129 S. Ct. at 1949*. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal, 129 S. Ct. at 1949* (internal citations and alterations omitted). *Rule 8* "demands **[*12]** more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to *Fed. R. Civ. P. 12(b)(6)* or *Fed. R. Civ. P. 12(c)*, the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1] *See Fed. R. Civ. P. 10(c)* ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC, No. 10-573, 647 F.3d 419, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011)*

### B. Legal Standard Governing Dismissal of Claims for Securities Fraud

Claims for securities fraud are subject to the heightened pleading standards of *Fed. R. Civ. P. 9(b)* and the Private Securities Litigation Reform Act ("PSLRA"). *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC, 277 F. Supp. 3d 500, 509 (S.D.N.Y. 2017)* ("*Menaldii II*"). "Under the PSLRA, securities fraud complainants must: '(1) 'specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading,' **[*13]** *15 U.S.C. § 78u-4(b)(1)*; and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' *§ 78u-4(b)(2)*." *Menaldi II, 277 F. Supp. 3d at 509* (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308, 321, 127 S. Ct. 2499, 168 L.*

---

(explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under *Fed. R. Civ. P. 12[d]* if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)* (explaining that a district court considering a dismissal pursuant to *Fed. R. Civ. 12(b)(6)* "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint . . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2009)* ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)* (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Ed. 2d 179 [2007])*. "*15 U.S.C. [Section] 78u-4(b)(1)* requires that a securities fraud claim based on information and belief 'must state with particularity *all facts* on which that belief is formed.'" *Gamm, 944 F.3d at 463* (emphasis in original). "*Rule 9(b)* 'imposes a comparable requirement' on securities fraud plaintiffs." *Menaldi v. Och-Ziff Capital Mgmt Grp. LLC, 164 F. Supp. 3d 568 (S.D.N.Y. 2016)* ("*Menaldi I*") (citing *In re BioScrip, Inc. Sec. Litig., 95 F. Supp. 3d 711, 725 [S.D.N.Y. 2015]* [citing *Fed. R. Civ. P. 9(b)*] ["In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."]).

Where "'proof that the defendant acted with a particular state of mind' is at issue, the PSLRA requires that 'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Gamm, 944 F.3d at 462* (citing *15 U.S.C. § 78u-4[b][2]*); *City of Pontiac Policemen's and Firemen's Ret. Sys. v UBS AG, 752 F.3d 173, 184 (2d Cir. 2014)* ("*UBS*"). A plaintiff's complaint "must allege with particularity facts that give a 'strong inference' that [the defendant] acted consciously and recklessly in omitting or misrepresenting financial information." *Ind. Public Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 93 (2d Cir. 2016)* ("*SAIC*") (citing *ECA, Local 134 IBEW Joint Pension Tr. Of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 198 [2d Cir. 2009]* ["*JP Morgan*"]). The Second Circuit also requires a securities fraud complaint to "(1) **[*14]** specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gamm, 944 F.3d at 462-63* (quoting *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 [2d Cir. 1993])*.

### C. Legal Standard Governing Claims Brought Pursuant to *Section 10(b) of the Exchange Act* and SEC *Rule 10b-5*

*Section 10(b)* of the Exchange act "forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and regulations.'" *Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)* (quoting *15 U.S.C. § 78j[b]*). "Commission *Rule 10b-5* forbids, among other things, the making of any 'untrue statement of a material fact' or the omission of any material fact 'necessary in order to

make the statements made . . . not misleading.'" *Dura Pharms., 544 U.S. at 341*.

"To succeed on a claim under *Section 10(b)* of the Exchange Act and *Rule 10b-5*, 'a plaintiff must allege that [each] defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury.'" *SAIC, 818 F.3d at 93* (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 [2d Cir. 2007]); Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015)* ("*Morgan Stanley*").

## D. Legal Standard Governing Claims Brought Pursuant to *Section 20(a)* of the Exchange Act

"To allege **[\*15]** control person liability [under *Section 20(a)* of the Exchange Act], plaintiffs must adequately plead a 'primary violation' of the securities laws." *Menaldi I, 164 F. Supp. 3d at 586-87* (citing *Wilson v. Merrill Lynch & Co., 671 F.3d 120, 139 [2d Cir. 2011]).* "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, 493 F.3d at 108; Menaldi I, 164 F. Supp. 3d at 586*.

## E. Legal Standard Governing *Qui Tam* Actions

The *False Claims Act* ("FCA") permits a private party to sue on behalf of the United States Government "to remedy an injury in fact suffered by the United States." *U.S. ex rel. Wood, v. Allergan, Inc., 899 F.3d 163, 166 (2d Cir. 2018)* (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S. Ct. 1858, 146 L. Ed. 2d 836 [2000]).* The Government may dismiss or settle the action notwithstanding the objections of the person initiating the action, if the person has been notified by the government and is provided the opportunity to be heard. *31 U.S.C. § 3730(c)(2)*. "The Government may intervene in any *qui tam* action, taking over from the relator[.]" *U.S. ex rel. Wood, 899 F.3d at 166*. The "Government, may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal." *31 U.S.C. § 3730(b)(3)*. "Under seal" is defined as "legally protected as secret." *Under Seal*, Black's Law

Dictionary **[\*16]** (10th ed 2014). "The seal provision was enacted in the 1980's as part of a set of reforms that were meant to 'encourage more private enforcement suits.'" *State Farm Fire and Cas. Co. v. U.S. ex rel. Rigsby, 137 S. Ct. 436, 443, 196 L. Ed. 2d 340 (2016)* (quoting S. Rep. No. 99-345, p. 23-24 [1986]).

"For purposes of *[Section] 3730(b)(5)*, the phrase, 'brings an action,' and the term, 'pending,' have their ordinary meaning." *United States ex rel. Hanks v. U.S. Oncology Speciality, LLP, 336 F. Supp. 3d 90, 114 (E.D.N.Y. 2018)* (quoting *U.S. ex rel. Wood, 899 F.3d at 172*). "The term 'pending' means '[r]emaining undecided; awaiting decision.'" *U.S. ex rel. Hanks, 336 F. Supp. 3d at 114-15* (quoting *Kellogg Brown & Root Servs. Inc., v. U.S. ex rel Carter, 575 U.S. 650, 135 S. Ct. 1970, 1978, 191 L. Ed. 2d 899 [2015]* [quoting *Pending*, Black's Law Dictionary (10th ed. 2014)]).

## III. ANALYSIS

The Court will begin its analysis by analyzing Plaintiffs' claims brought pursuant to *Section 10(b) of the Exchange Act* and SEC *Rule 10b-5* because, as explained above in Part II.D. of this Decision and Order, they must adequately plead a "primary violation" of the securities laws in order to establish a *prima facie* claim of control-person liability.

## A. Whether Plaintiffs Have Stated a Claim Under *Section 10(b) of the Exchange Act* and SEC *Rule 10b-5*

After carefully considering the matter, the Court generally answers this question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 81-24; Dkt. No. 84.) To those reasons, the Court adds the following, which is intended to supplement (and not to supplant) those reasons.

Because neither party contests the other three elements of securities fraud, **[\*17]** the Court will focus its analysis on whether Defendants made misstatements or omissions of material fact, and whether Defendants made these alleged misstatements or omissions with scienter.

## 1. Whether Plaintiffs Have Sufficiently Alleged a Company-Wide Scheme During the Class Period

As a threshold matter, Defendants argue that Plaintiffs have failed to alleged particularized facts plausibly suggesting a company-wide overcharge scheme occurred during the purported class period. (Dkt. No. 81-24, at 18-20.)

To support their allegation that the overcharge scheme occurred during the class period, Plaintiffs rely on the statements of six confidential witnesses ("CW"). (Dkt. No. 75, at ¶¶ 130-68.) However, three of the six witnesses did not work at Defendant YRC during the purported class period.[2] (Dkt. No. 75, at ¶¶ 130, 153, 164.) Although it is true that "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant," the case on which Plaintiffs rely for that point of law (*In re Scholastic Corp. Sec. Litig.*) involved objective, pre-class period data, not confidential witnesses who were not employed several years before the purported **[*18]** class period. *252 F.3d 63, 72 (2001)*. Moreover, CW 5's and CW 6's conversations with other YRC employees are inadmissible hearsay and cannot be considered. *See Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 139 n.17 (D. Conn. 2007)* ("These allegations are based on hearsay and, therefore, do not meet the PSLRA requirement that confidential witnesses' allegations must be based on personal knowledge.") (citing *Zucco Partners, LLC v. Digimarc Corp., 445 F. Supp. 2d 1201, 1207 [D. Or. 2006])*. Therefore, the statements of CW 5 and CW 6 cannot be used to support an allegation that an overcharge scheme took place during the purported class period.

Additionally, CW 3's and CW 4's statements are not pled with particularity. CW 3's allegations do not contain any reference to time frame during CW 3's employment. (Dkt. No. 75, at ¶¶ 138-40.) CW 3 was employed by Defendant YRC both before and during the first year of

the purported class period. (Dkt. No. 75, at ¶ 138.) However, CW 3's allegations fail to distinguish between alleged conduct occurring before the purported class period and alleged conduct occurring during the purported class period. Therefore, CW 3's generalized allegations do not allege with particularity that these alleged actions took place during the class period. CW 4's allegations are also insufficient for this reason. Specifically, the Amended Complaint **[*19]** alleges that CW 4 observed that the alleged wrongful re-weigh practices "occurred *during* CW 4's tenure at [Defendant] YRC." (Dkt. No. 75, at ¶ 143 [emphasis added].) Because CW 4 was employed by Defendant YRC from May 2008 through December 2017, the Amended Complaint fails to distinguish between alleged conduct occurring before the purported class period and alleged conduct occurring during the purported class period. Although Plaintiffs argue that Defendants' alleged conduct occurred throughout CW 3's and CW 4's tenure, the Amended Complaint alleges no such facts regarding CW 3, while CW 4's statement only references "during" CW 4's tenure. As previously discussed, this language is not sufficiently particular to plausibly suggest that the alleged actions took place during the purported class period. Thus, the statements of CW 3 and CW 4 cannot be used to support an allegation that the overcharge scheme occurred during the purported class period.

However, CW 2 has stated that Defendants overcharged certain customers at Defendant YRC's Sauk Village terminal during the class period. (*Id.* at ¶¶ 133-36.) CW 2's statements focus on certain customers, and describe how employees were trained **[*20]** to target larger customers when employing the overcharge practices. (*Id.* at ¶ 134.) CW 2 also describes how photographs were automatically uploaded into a computer system maintained by the corporate office, which can imply a potential company-wide scheme. (*Id.* at ¶ 136.) After drawing all reasonable inferences in favor of Plaintiffs, the Court finds that CW 2's statements create a reasonable inference that Defendants engaged in the alleged Overcharge Scheme during the purported class period. Therefore, CW 2's statements can be used to support that allegation.

Accordingly, for the reasons stated above, the Court finds that, based on CW 2's statement, Plaintiffs have sufficiently alleged that the Overcharge Scheme occurred during the purported class period.

**2. Whether Plaintiffs Have Sufficiently Alleged that**

---

[2] CW 1 was employed from March 2011 through March 2014. (Dkt. No. 75, at ¶ 130.) Plaintiffs' class period began on March 10, 2014. (Dkt. No. 83, at 29, n. 9.) CW 1's only time-specific allegation of misconduct occurred four months before the class period began. (Dkt. No. 75, at ¶ 131.) Moreover, CW 1's claim of learning through conversations with other YRC employees is inadmissible hearsay and cannot be considered. *Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 139 n.17 (D. Conn. 2007)* ("These allegations are based on hearsay and, therefore, do not meet the PSLRA requirement that confidential witnesses' allegations must be based on personal knowledge."). Accordingly, CW 1's statements cannot be used to support an allegation that the overcharge scheme occurred during the purported class period.

**Defendants Made a Materially False Statement or Omitted a Material Fact**

As indicated above in Part II.C. of this Decision and Order, "[a]t the pleading stage, a plaintiff satisfies the materiality requirement of *Rule 10b-5* by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000)*. "A complaint may only be dismissed on materiality **[*21]** grounds if the misstatements or omissions at issue are 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Sec. & Exch. Comm'n v. Honig, 18-CV-8175, 2020 U.S. Dist. LEXIS 31961, 2020 WL 906383, at *6 (S.D.N.Y. Feb. 25, 2020)* (quoting *Ganino, 228 F.3d at 162*). Generally, courts must engage in a fact-specific inquiry to determine whether a false or misleading statement or omitted fact is material.[3] *JP Morgan, 553 F.3d at 197* (citing *Basic Inc. v. Levinson, 485 U.S. 224, 240, 108 S. Ct. 978, 99 L. Ed. 2d 194 [1988])*.

"The materiality of a misstatement depends on whether 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'" *JP Morgan, 553 F.3d at 197* (quoting *Basic Inc., 485 U.S. at 231-32*). In other words, "there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares of stock." *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 92-93 (2d Cir. 2010)* ("*Operating Local*"). "Statements that are too vague or general to be relied upon-puffery-are, by definition, not material." *Constr. Laborers Pension Tt. for S. Cal., v. CBS Corp., 18-CV-7796, 2020 U.S. Dist.*

---

[3] The SEC has provided internal guidance to courts that have to determine whether a misleading statement or omission is material. *JP Morgan, 553 F.3d at 197*. Although the SEC suggests a percentage threshold can be presumptively immaterial, it also notes that the "challenged amount can be material even though it is below that percentage threshold of assets, liabilities, revenues or net income." *Id.* Accordingly, the SEC "considers the financial magnitude of the misstatement," whether there was "a concealment of an unlawful transaction," the "significance of the misstatement in relation to the company's operations," and "management's expectation that the misstatement will result in a significant market reaction." *Id. at 198*. Although the SEC's factors "does not change the standard of materiality, [the Second Circuit] consider[s] the factors in determining whether the misstatement significantly altered the 'total mix' of information available to investors." *Id.*

*LEXIS 7787, 2020 WL 248729, at *6 (S.D.N.Y. Jan. 15, 2020)* ("*CBS*") (citing *JP Morgan, 553 F.3d at 206*).

Courts determine whether a statement is false or misleading by evaluating not only the "literal truth," but also the "contexts and manner of presentation." *Singh v. Cigna Corp., 918 F.3d 57, 63 (2d Cir. 2019)* (quoting *Operating Local, 595 F.3d at 92*). "Like all companies subject to the securities laws, [the defendant] ha[s] a duty **[*22]** to ensure that the statements it made to investors were 'both accurate and complete.'" *Menaldi I, 164 F. Supp. 3d at 583* (quoting *Meyer v. Jinkosolar Holdings Co., 761 F.3d 245, 250 [2d Cir. 2014])*. "A plaintiff 'must do more than simply assert that a statement is false-[it] must demonstrate with specificity why that is so." *In re Avon Secs. Litig., 2019 U.S. Dist. LEXIS 200816, 2019 WL 6115349, at *13 (S.D.N.Y. Nov. 18, 2019)* (quoting *In re Lululemon Sec. Litig., 14 F. Supp. 3d 553, 571 [S.D.N.Y. 2014])*. "A violation of *Section 10(b)* and *Rule 10b-5* premised on misstatements cannot occur unless an alleged material misstatement was false at the time it was made." *In re Lululemon, 14 F. Supp. 3d at 571*.

"Similar to the falsity of statements, omissions are only actionable if a defendant is under a duty to disclose information and fails to do so." *Id. at 571-72*. A duty to disclose may arise in two circumstances. *Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011)*. First, a duty to disclose exists if a "statement would otherwise be 'inaccurate, incomplete, or misleading' without the omitted fact." *CBS, 2020 U.S. Dist. LEXIS 7787, 2020 WL 248729, at *6* (quoting *Morgan Stanley, 776 F.3d at 101*). "[T]here is generally no duty to disclose internal misconduct unless disclosure is 'necessary to prevent the corporation's *other* statements from being misleading.'" *Id.* (quoting *In re Braskem S.A. Sec. Litig., 246 F. Supp. 3d 731, 752 [S.D.N.Y 2017])*. However, "[s]ilence, absent a duty to disclose, is not misleading under *Rule 10b-5*." *Basic Inc., 485 U.S. at 239 n.17*; *Morgan Stanley, 776 F.3d at 100-01*. "The second circumstance in which there is a duty to disclose exists if a statute or regulation requires disclosure." *CBS, 2020 U.S. Dist. LEXIS 7787, 2020 WL 248729, at *6* (citing *Morgan Stanley, 776 F.3d at 101*). However, "once a company speaks on an issue or topic, there is a duty to tell the whole **[*23]** truth, even where there is no existing independent duty to disclose information on the issue or topic." *In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 258 (2d Cir. 2016)*.

In short, whether an alleged misrepresentation or

omission is "material" "depends on all relevant circumstances." *JP Morgan, 553 F.3d at 197* (quoting *Ganino, 228 F.3d at 162*). To dismiss a claim on materiality grounds, "the Court must find that no investor could have been fooled by [the actor's] misstatement[.]" *Honig, 2020 U.S. Dist. LEXIS 31961, 2020 WL 906383, at *9*.

**a. Defendants' Alleged Misstatement or Omission Regarding Their Failure to Disclose the Overcharge Scheme and DOJ Investigation Under Item 303 and GAAP**

**i. Item 303**

Plaintiffs argue that Defendants' "Overcharge Scheme" was a known trend or uncertainty that was having a material favorable impact on Defendants' revenues and was "reasonably likely" to subject Defendant YRC to numerous undisclosed risks. (Dkt. No. 83, at 31.)

An Item 303 "omission is actionable only if it satisfies the materiality requirements outlined in *Basic Inc.* . . . and if all other requirements to sustain an action under *Section 10(b)* are fulfilled." *Morgan Stanley, 776 F.3d at 100*; *see also* *In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993)* ("[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."). Item 303 imposes "specific 'disclosure requirements on companies filing' **[*24]** reports on SEC Forms 10-K and 10-Q." *SAIC, 818 F.3d at 94* (quoting *Morgan Stanley, 776 F.3d at 101*). Item 303 requires Defendant YRC's 10-K to "[d]escribe any known trends or uncertainties that have had or that the regisistrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *SAIC, 818 F.3d at 94* (quoting *17 C.F.R. § 229.303[a][3][iii]*). "[D]isclosure [under Item 303] is necessary 'where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations." *Id.* (quoting *Morgan Stanley, 776 F.3d at 101*). "Item 303 requires the registrant to disclose only those trends, events, or uncertainties that it actually knows of when it files the relevant report with the SEC. It is not enough that it should have known of the existing trend, event, or uncertainty." *Id. at 95*.

"[A] government investigation, without more, does not trigger a generalized duty to disclose." *In re Lions Gate Entm't Corp. Sec. Litig., 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016)*. "The securities laws do not require a company to hypothesize the worse results of an investigation when those results do not materialize and when the company chooses not to speak about the investigation." *In re Lions Gate, 165 F. Supp. 3d at 14-15*. "No reasonable investor would believe that disclosure **[*25]** regarding pending litigation meant that no other litigations were possible." *In re Bank of Am. AIG Disclosure Sec. Litig., 980 F. Supp. 2d 564, 582 (S.D.N.Y. 2013)*, aff'd, *566 F. App'x 93 (2d Cir. 2014)*.

In this case, Plaintiffs have not adequately alleged that Defendants had actual knowledge about the outcome of the DOJ investigation. In 2009, the DOJ initiated an investigation, which persisted for nine years. (Dkt. No. 83, at 15.) During the course of the investigation, "dozens of YRC employees were deposed" and "hundreds of thousands of pages of documents were produced." (*Id.*) Because the DOJ investigation originated from a *qui tam* action, the government had the right to settle the claim, dismiss it, or permit the person who initiated the action to personally pursue the action. *31 U.S.C. § 3730(c)(2)*. Plaintiffs have not alleged particularized facts plausibly suggesting that Defendants had actual knowledge that the DOJ would elect to pursue the action. Although Defendant YRC engaged in settlement negotiations with the DOJ, the existence of settlement discussions does not plausibly suggest that "litigation was imminent or that the amount of [the DOJ's] eventual suit was estimable." *In re Bank of Am., 980 F. Supp. 2d at 587*. Moreover, the DOJ repeatedly petitioned the Court to keep the action under seal until November 21, 2018. (Dkt. No. 75, at ¶ 93; Dkt. No. **[*26]** 81-12; Dkt. No. 81-24, at 17.) It would have been counter-intuitive for Defendants to disclose the action in public documents while the action was filed under seal. Furthermore, the Amended Complaint does not allege any facts plausibly suggesting that Defendants had actual knowledge that the DOJ planned to file a complaint against Defendants, because the DOJ repeatedly (for nine years) extended the time that the action was to remain under seal. Given the flexible nature of the *qui tam* action (specifically the government's ability to pursue, settle, or dismiss the action entirely), it is not reasonable to expect Defendants to have known the outcome of the nine-year DOJ investigation. For all of these reasons, the Court finds that Plaintiffs have not alleged facts plausibly suggesting that Defendants violated their duty to disclose the DOJ investigation under Item 303.

Plaintiffs argue that this action is similar to the circumstances in the case of *SAIC*, in which the company's Deputy Program Manager created an elaborate kickback scheme that defrauded New York City of approximately $600 million. *Ind. Public Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 89 (2d Cir. 2016)* ("*SAIC*"). However, Plaintiffs' reliance on *SAIC* is misplaced. In *SAIC*, the company filed a **[\*27]** 10-K Form that did not disclose SAIC's potential liability in spite of an internal audit that clearly outlined the improper practices which had been shared with executive officers. *Id.* In an Annual Shareholder Report that was released less than a month later, SAIC "touted its commitment to high standards of 'ethical performance and integrity.'" *Id.* Less than two months later, the Deputy Program Manager among others were charged with defrauding the New York City Government in a federal criminal complaint. *Id.*

Although CW 2 states that Defendants overcharged certain customers at Defendant YRC's Sauk Village terminal during the class period, Plaintiffs fail to allege facts plausibly suggesting how Defendants had actual notice of this practice and how this practice was a company-wide scheme. Instead, CW 2's statements concern only certain customers, and only the Sauk Village terminal. (Dkt. No. 75, at ¶ 133-36.) Although CW 2 describes how photographs were automatically uploaded into a computer system maintained by the corporate office, CW 2 fails to plausibly suggest how Defendants had actual knowledge of this system, and the practices of the system itself. (*Id.* at ¶ 136.) Moreover, the **[\*28]** Amended Complaint fails to plausibly suggest how a computer system located at a corporation's headquarters establishes a company-wide scheme affecting all of Defendant YRC's terminals.

For all of these reasons, the Court finds that Plaintiffs have failed to allege facts plausibly suggesting an Item 303 violation.

#### ii. GAAP

Plaintiffs also allege that Defendants did not earn the revenue under GAAP because Defendant YRC was not entitled to collect revenue generated from "fraud and cheating." (Dkt. No. 75, at ¶¶ 181-82.)

"A loss contingency is defined as an 'existing condition, situation, or set of circumstances involving uncertainty as to possible loss to an entity that will ultimately be resolved when one or more future events fail to occur.'" *In re Perrigo Co. PLC Sec. Litig., 19-CV-0070, 2020 U.S. Dist. LEXIS 12143, 2020 WL 377881, at *6 (S.D.N.Y. Jan. 23, 2020)* (quoting Accounting Standards Codification ["ASC"] 450-20-20). The disclosure of a loss contingency depends on whether the loss is probable, reasonably possible, or remote. ASC 450-20-25-1. A contingency is an "existing condition, situation, or set of circumstances involving uncertainty as to possible gain (gain contingency) or loss (loss contingency) to any entity that will ultimately be resolved when **[\*29]** one or more future events occur or fail to occur." ASC 450-20-15. "Probable" is defined as "the future event or events are likely to occur," while "reasonably possible" is defined as the "chance of the future or events occurring is more than remote but less than likely." ASC 450-20-15. "Remote" is defined as the "chance of the future event or events occurring is slight." *Id.*

> Even when there is a reasonable possibility of a loss, however, disclosure need not always be made. Disclosure is not required for a reasonably possible loss when it is 'a loss contingency involving an unasserted claim or assessment if there has been *no manifestation by a potential claimant of an awareness* of a possible claim or assessment unless both' (a) '[i]t is considered probable that a claim will be asserted' and (b) '[t]here is a reasonable possibility that the outcome will be unfavorable.' ASC 450-20-50-6 (emphasis added).

*In re Perrigo, 2020 U.S. Dist. LEXIS 12143, 2020 WL 377881, at *6.* "When no accrual is made, either because the loss is not 'probable' or because the amount of loss cannot be 'reasonably estimated,' the loss contingency nonetheless must be disclosed 'if there is at least a reasonable possibility that a loss . . . may have been incurred.'" *Id.* (citing **[\*30]** ASC 450-20-50-3).

"The representation in the auditor's standard report regarding fair presentation, in all material respects, in conformity with [GAAP] indicates the auditor's *belief* that the financial statements, taken as a whole, are not materially misstated." *In re Lehman Bros. Sec. & Erisa Litig., 799 F. Supp. 2d 258, 303 (S.D.N.Y. 2011)* (quoting Statements on Auditing Standards § 312.07; emphasis in original). "An opinion statement, however, is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way. Reasonable investors understand that opinions sometimes rest on a weighing of competing facts[.]" *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*

*Pension Fund, 575 U.S. 175, 189-90, 135 S. Ct. 1318, 191 L. Ed. 2d 253 (2015)*. "[S]tatements of opinion are actionable if they omit material facts about the basis for the speaker's opinion that, if disclosed would likely 'conflict with what a reasonable investor would take from the statement itself.'" *Menaldi I, 164 F. Supp. 3d at 583* (quoting *Omnicare, 575 U.S. at 189*).

Here, the Amended Complaint alleges that Defendants acknowledged an existence of a possible claim in their 2013 10-K financial statement. (Dkt. No. 75, at ¶ 213.) Specifically, in that financial statement, Defendants stated as follows:

> Litigation may be related to labor and employment, competitive matters, property damage and liability claims, safety and contract compliance, environmental liability, **[*31]** our past financial restructurings and other maters . . . . The results of complex legal proceedings are often uncertain and difficult to predict. An unfavorable outcome of any particular matter or any future legal proceedings could have a material adverse effect on our business, financial condition, liquidity or results of operations. In the future, we could incur judgments or enter into settlements of claims that could harm our financial position, liquidity and results of operations.

(Dkt. No. 81-2, at 18-19.) Contrary to Plaintiffs' argument, Defendants sufficiently warned investors about potential future judgments or settlements of claims, which would include the DOJ investigation. Although Defendants specifically outlined the Byrant Holdings and ABF lawsuits (Dkt. No. 75, at ¶ 214), Plaintiff's Amended Complaint overlooks the "Other Legal Matters" subheading in Defendants' 2013 10-K (Dkt. No. 81-2, at 90). "[A] government investigation, without more, does not trigger a generalized duty to disclose." *In re Lions Gate, 165 F. Supp. 3d at 12*. Defendants did not have a duty to disclose the DOJ investigation, because the DOJ was in the process of investigating Defendants, no lawsuit had been filed, and no court documents **[*32]** had been unsealed at the time Defendants filed their various 10-K statements. As discussed above in Part III.A.2.a.i. of this Decision and Order, Plaintiffs have failed to allege particularized facts plausibly suggesting that Defendants had manifested or had an awareness of the outcome of the DOJ investigation.

Moreover, even if Defendants had not disclosed the possible claim against them, Plaintiffs have failed to

allege facts plausibly suggesting that there was a reasonable possibility that the DOJ's investigation would become a legal action during the class period. In *Menaldi II*, the plaintiffs demonstrated that the SEC subpoenas "had enough details to suggest that the government was on [defendant's] trail," to adequately allege that the likelihood of an adverse outcome was "more than remote." *277 F. Supp. 3d at 515* (quoting ASC 450-20-20). In this case, Plaintiffs have broadly alleged that Defendants engaged in settlement discussions and that Defendants received and complied with numerous discovery requests, which included subpoenas and depositions. (Dkt. No. 75, at ¶¶ 109, 113.) The Amended Complaint fails to allege facts regarding the timing of the settlement negotiations, discovery requests, or depositions. **[*33]** Specifically, Plaintiffs' Amended Complaint alleges merely that the investigation first began in 2009 and continued for nine years. (*Id.* at ¶ 113.) Accordingly, the Amended Complaint contains no facts that plausibly suggest that the likelihood of an adverse outcome was more than remote.

For all of these reasons, the Court finds that Plaintiffs have not alleged particularized facts plausibly suggesting that Defendants committed GAAP violations by not disclosing the DOJ investigation.

**b. Defendants' Alleged Misstatements or Omissions About Their Pricing Strategies**

In securities fraud cases under *Section 10(b) of the Exchange Act* and SEC *Rule 10b-5*, "the materiality of an allegedly required forward-looking disclosure is determined by 'a *balancing* of both the *indicated probability* that the event will occur and the *anticipated magnitude* of the event in light of the totality of the company activity.'" *Morgan Stanley, 776 F.3d at 102-03* (emphasis in original) (quoting *Basic Inc., 485 U.S. at 238*). Liability for statements of current fact requires a showing of either knowing falsity or recklessness." *In re Philip Morris Int'l Inc. Sec. Litig., 18-CV-8049, 2020 U.S. Dist. LEXIS 19458, 2020 WL 550769, at *16 (S.D.N.Y. Feb. 4, 2020)* (citing *Slayton v. Am. Exp. Co., 604 F.3d 758, 773 [2d Cir. 2010])*. Liability for forward-looking statements only attaches upon proof of a knowing falsity. *In re Philip Morris, 2020 U.S. Dist. LEXIS 19458, 2020 WL 550769, at *16* (citing *Slayton, 604 F.3d at 773*). "For a forward looking statement to be **[*34]** actionable, the plaintiff must show that the statement was 'made with actual knowledge of [its] falsity by the speaker.'" *Id.* (quoting *In re Salix Pharm., Ltd., 14-CV-*

*8925, 2016 U.S. Dist. LEXIS 54202, 2016 WL 1629341, at *9 [S.D.N.Y. Apr. 22, 2016])*.

"Rosy predictions, or statements that are loosely optimistic regarding a company's wellbeing" are considered puffery and are "too vague and general to be actionable" under securities law. *In re Lululemon, 14 F. Supp. 3d at 572*. "Puffery encompasses 'vague and optimistic 'statements [that] are too general to cause a reasonable investor to rely upon them' and thus cannot serve as the basis for a securities fraud claim.'" *City of Warren Police and Fire Ret. Sys. v. Foot Locker, Inc., 412 F. Supp. 3d 206, 221 (S.D.N.Y. 2019)* ("*Foot Locker*") (quoting *Steamfitters' Indus. Pension Fund v. Endo Int'l PLC, 771 F. App'x 494, 497 [2d Cir. 2019])*; *see also Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004)* ("[E]xpressions of puffery and corporate optimism do not give rise to securities violations."). "Whether a representation is 'mere puffery' depends, in part, on the context in which it is made." *In re Petrobras Sec. Litig., 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015)*. "It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery.'" *UBS, 752 F.3d at 183*. Statements regarding "projections of future performance may be actionable . . . if they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them." *In re IBM Corp. Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998)* (citations omitted).

In this case, Plaintiffs **[*35]** highlight several statements that they claim are actionable under *Section 10(b)* because the "representations contradicted what Defendants knew at the time." (Dkt. No. 83, at 32-33.) Specifically, Plaintiffs allege that Defendant YRC's 2013 10-K (which was filed on March 10, 2014) contained several statements about YRC's operating revenue being determined by volume and yield or price, and about incorrect ratings being able to be identified through an "extensive system that allows [Defendants] to accurately capture, record, and control all relevant information." (Dkt. No. 75, at ¶¶ 203-04, 207, 209.) Plaintiffs also allege that Defendant Welch's statements during various press releases and service conferences concerning Defendant YRC's pricing strategy (*id.* at ¶¶ 248, 329, 336, 371, 405) were "materially false and misleading because he failed to disclose that the Company's pricing strategy included cheating its customers out of millions of dollars in credits and discounts through the Overcharge Scheme" (*id.* at ¶ 249). However, the challenged statements are too general to cause a reasonable investor to rely upon

them, and thus they cannot serve as the basis for a securities fraud claim. "Our pricing **[*36]** strategy remains focused on profitability while delivering award winning customer service," and "meeting customers' needs" clearly constitutes inactionable puffery. *See JP Morgan, 553 F.3d at 206* (finding "generalizations are the type of 'puffery' that this and other circuits have consistently held to be inactionable."). These statements, along with the statements regarding the "right freight at the right price," are mere generalizations regarding Defendants' business practices.

Contrary to Plaintiffs' assertions, none of the identified statements would mislead a reasonable investor. Defendant Welch's statement of February 11, 2016, contains the most specificity; however, it merely concerns the collection of Defendant YRC's data. (Dkt. No. 75, at ¶ 329.) Additionally, for the reasons articulated in Part III.A.2.a.i. of this Decision and Order, Plaintiffs have also failed to allege particularized facts plausibly suggesting that Defendants did not believe these statements.[4]

For all of these reasons, the Court finds that Defendants' statements about its pricing strategies are inactionable puffery.

### c. Defendants' Alleged Misstatements or Omissions Regarding Their Reported Financial Results

"[W]hen a complaint **[*37]** claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity, in accordance with the heightened pleading requirement of *Rule 9(b)* and the PLSRA." *Gamm, 944 F.3d at 465*. "[T]he allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose *Section 10(b)* liability." *In re Sanofi Sec. Litig., 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016)* (quoting *In re Marsh & Mclennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452, 470 [S.D.N.Y. 2006])*; *but see In re Van der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d 388, 400-01 (S.D.N.Y. 2005)* (holding that statements which "put the sources of [the defendant's] revenue at issue" gave rise to *Section 10(b)* liability

---

[4] As discussed more thoroughly in Part III.2.a., CW 2's statements only refer to data being sent to the corporate office. Plaintiffs fail to plead that any of the individual Defendants had any knowledge of the alleged overcharge scheme *during* the class period.

because the company failed to disclose the improper conduct that generated that revenue). "Absent an allegation that [defendant] reported income that it did not actually receive or sales growth that did not actually occur . . . 'a violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data.' *In re Sanofi, 155 F. Supp. 3d at 404* (quoting *In re Sofamor Danek Grp., Inc., 123 F.3d 394, 401 & n.3 [6th Cir. 1997])*.

Here, Plaintiffs allege that Defendant YRC's financial results were overstated because they partially consisted of illicit revenue, which rendered these results false or misleading. (Dkt. No. 75, at ¶¶ 179, 199.) However, the Amended Complaint does not allege that Defendant **[*38]** YRC reported income that it did not actually receive or "earn." Although Plaintiffs argue that Defendants did not "earn" the revenue through the alleged fraud, the Amended Complaint recognizes that Defendant YRC was paid for those services that it was supposed to provide, namely the shipping of goods to customers. (*Id.* at ¶ 179.) Thus, absent a factual allegation plausibly suggesting that Defendants did not actually receive the reported income, Plaintiffs' claim must fail.

For all of these reasons, the Court finds that Plaintiffs have not alleged particularized facts plausibly suggesting that Defendants' reported financial results were in violation of *Section 10(b)* of the Exchange Act.

### d. Defendants' Alleged Misstatements or Omissions Regarding Their Compliance with GAAP Standards and Other Laws

"SEC regulations dictate that where financial statements are not prepared in compliance with GAAP,[5] they are presumed to be misleading." *DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A., 413 F. Supp. 3d 187, 207 (S.D.N.Y. 2019)* (citing *17 C.F.R. § 210.4-01[a][1]*). However, "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak v. Kasaks, 216*

---

[5] "GAAP are the official standards adopted by the American Institute of Certified Public Accountants[.]" *Ganino v. Citizens Utils. Co., 228 F.3d 154, 159 n.4 (2d Cir. 2000)*. "GAAP does not prescribe a fixed set of rules, but rather represent 'the range of reasonable alternatives that management can use.'" *Ganino, 228 F.3d at 159 n.4* (quoting *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1421 n.10 [3d Cir. 1997])*. "The SEC treats the [GAAP] standards as authoritative. *Id.*

*F.3d 300, 309 (2d Cir. 2000)*; *SAIC, 818 F.3d at 93*. "[T]he complaint must allege specific departures from GAAP and, in addition, set forth facts sufficient to warrant a **[*39]** finding that the auditor did not actually hold the opinion it expressed or that it knew that it had no reasonable basis for holding it." *In re Lehman Bros., 799 F. Supp. 2d at 303*. "Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *Novak, 216 F.3d at 309*.

"An opinion statement, however, is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way. Reasonable investors understand that opinions sometimes rest on a weighing of competing facts[.]" *Omnicare, 575 U.S. at 189-90*. "[S]tatements of opinion are actionable if they omit material facts about the basis for the speaker's opinion that, if disclosed would likely 'conflict with what a reasonable investor would take from the statement itself.'" *Menaldi I, 164 F. Supp. 3d at 583* (quoting *Omnicare, 575 U.S. at 189*).

In this case, Defendants' various 10-K financial statements are clearly opinions. For example, Defendants stated, "Based on our current assessment of information available as of the date of these financial statements, we believe that our financial statements include adequate provisions for estimated costs and losses that may be incurred within the litigation and proceedings to which we are a party." (Dkt. No. 75, at ¶ 213; Dkt. No. 81-2, at 90.) Plaintiffs have **[*40]** failed to allege facts plausibly suggesting that Defendants did not actually have the opinion that the financial statements were prepared in accordance with GAAP or other laws when expressed. Additionally, the fact that Defendants engaged in settlement discussions with the DOJ does not trigger disclosure. *See In re Bank of Am., 980 F. Supp. 2d at 587* ("The plaintiffs have not pleaded any facts suggesting that the defendants knew, while settlement negotiations were ongoing, that litigation was imminent or that the amount of AIG's eventual suit was estimable."). Again, Plaintiffs have not alleged any facts plausibly suggesting that Defendants knew that litigation was imminent at any time during the nine-year DOJ investigation.

For all of these reasons, the Court finds that Plaintiffs have failed to allege facts plausibly suggesting that Defendants failed to comply with GAAP standards or other laws.

### e. Defendants' Alleged Misstatements or Omissions

## Regarding Their Re-Rate Reserves

"Loan loss reserves refer to the amount set aside to cover expected defaults or losses on loans." *Fait v. Regions Fin. Corp., 655 F.3d 105, 108 n.1 (2d Cir. 2011)*. "As a general matter, loan loss reserves 'reflect management's opinion as to the likelihood of future loan losses and their magnitude.'" *In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326, 361 (S.D.N.Y. 2011)* (quoting *Fait v. Regions Fin. Corp., 712 F. Supp. 2d 117, 124 [S.D.N.Y. 2010])*. "Statements **[*41]** of opinion or belief are also actionable under *Section 10(b)* and *Rule 10b-5*." *In re MF Glob. Holdings Ltd. Secs. Litig., 982 F. Supp. 2d 277, 305 (S.D.N.Y. 2013)* (citing *CBS, 679 F.3d at 67-68*). However, "[t]he PSLRA established a statutory safe-harbor for forward-looking statements." *Slayton v. Am. Exp. Co., 604 F.3d 758, 765 (2d Cir. 2010)*. The PSLRA defines th term "forward-looking statement" as "a statement containing a projection of revenues, income (including income loss, earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;" "a statement of future economic performance" and "any statement of the assumptions underlying or relating to any statement described" in the PSLRA's definition. *15 U.S.C. § 78u-5(i)(1)(A)*, *(C)*, *(D)*. A "defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton, 604 F.3d at 766* (emphasis in original); *In re Supercom Inc. Sec. Litig., 15-CV-9650, 2018 U.S. Dist. LEXIS 175467, 2018 WL 4926442, at *18 (S.D.N.Y. Oct. 10, 2018)*. "However, '[a] statement may contain some elements that look forward and others that do not,' and 'forward-looking elements' may be 'severable' from 'non-forward-looking' elements." *In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 246 (2d Cir. 2016)* (quoting *Iowa Publ. Emps.' Ret. Sys. v. MF Glob., Ltd., 620 F.3d 137 144 [2d Cir. 2010])*.

Under GAAP, "depository institutions and their holding companies are required to establish and maintain **[*42]** adequate allowances for loan losses." *Fait, 655 F.3d at 108 n.1*. "[L]oan loss reserves are generally considered opinions, not objective facts, and thus a *section 10(b)* claimant must plead in detail that such 'opinions were both false and not honestly believed when made.'" *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp., 951 F. Supp. 2d 479, 495 (S.D.N.Y. 2013)* (quoting *Fait, 655 F.3d at 113*).

In this case, the Amended Complaint repeatedly alleges that the failure to disclose the alleged "Overcharge Scheme" rendered Defendant YRC's various 10-K's materially false and misleading, in violation of GAAP. (Dkt. No. 75, at ¶¶ 207-08, 265-66, 317-18, 379-80, 435-36.) As discussed above in Part III.A.1. of this Decision and Order, only CW 2's statements were sufficiently pled to be considered by the Court. Here, Plaintiffs have failed to allege facts plausibly suggesting that Defendants' statements in the various 10-K forms were made with actual knowledge that they were false or misleading, or not honestly believed when made. The Amended Complaint contains no factual allegations that contradict the reasonableness of the estimated amounts at the time they were made. Instead, Plaintiffs circularly argue that, because Defendants participated in an alleged "Overcharge Scheme," the re-rate reserves themselves are false and misleading. However, **[*43]** based on the pre-class period allegations and CW 2's statements, Plaintiffs merely speculate that the re-rate reserves did not accurately reflect Defendant YRC's reserves based on its historical trends.

For all of these reasons, the Court finds that Plaintiffs have not alleged particularized facts plausibly suggesting that Defendants reported re-rate reserves were in violation of *Section 10(b)* of the Exchange Act.

## f. Defendants' Alleged Misstatements or Omissions Regarding Their SOX Certifications

"SOX certifications contain[] an important qualification that the certifying officer's statements are true based on [his or her] knowledge." *Das v. Rio Tinto PLC, 332 F. Supp. 3d 786, 812 (S.D.N.Y. 2018)* (internal quotations omitted) (quoting *Menaldi II, 277 F. Supp. 3d at 517*). Defendants' SOX Certifications are statements of opinion, and Plaintiffs must sufficiently allege that Defendants knew that the financial statements were inaccurate. *In re AmTrust Fin. Servs., Inc., Sec. Litig., 17-CV-1545, 2019 U.S. Dist. LEXIS 153297, 2019 WL 4257110, at *24 (S.D.N.Y. Sept. 9, 2019)* (citing *In re Scottish Re Grp. Sec. Litig., 524 F. Supp. 2d 370, 391 [S.D.N.Y. 2007])*. "Absent a sufficient allegation of materiality, the defendants' opinion that the financial statements fairly present in all material respects the financial condition of the company was not untrue or misleading when expressed." *In re AmTrust, 2019 U.S. Dist. LEXIS 153297, 2019 WL 4257110, at *24*.

In this case, the Amended Complaint fails to allege any facts squarely addressing **[*44]** Defendant YRC's *internal* structure for financial reporting or other internal

controls. Specifically, the Amended Complaint contains no factual allegations that explore Defendant YRC's internal structure or internal controls. Moreover, the Amended Complaint has failed to allege facts plausibly suggesting that the signers knew of the alleged "Overcharge Scheme" during the class period itself.

For all of these reasons, the Court finds that Plaintiffs have not alleged particularized facts plausibly suggesting that Defendants' SOX Certifications were signed in violation of *Section 10(b)* of the Exchange Act. In the interest of completeness, however, the Court will evaluate whether Defendants possessed the requisite scienter to demonstrate a *Section 10(b)* and a *Rule 10b-5* violation.

**3. Whether Plaintiffs Have Sufficiently Alleged that Defendants Acted with Scienter**

"Scienter is the mental state embracing the intent to deceive, manipulate, or defraud by the maker of a statement." *In re Lululemon, 14 F. Supp. 3d at 573* (citing *Tellabs, 551 U.S. at 319*). "To sustain a *Section 10(b)* or *Rule 10b-5* action, the plaintiffs must allege that each defendant acted with scienter, or 'a mental state embracing intent to deceive, manipulate, or defraud' investors." *Foot Locker, 412 F. Supp. 3d at 225* (quoting *Boca Raton Firefighters and Police Pension Fund v. Bahash, 506 F. App'x 32, 38 (2d Cir. 2012)* (quoting *Matrixx, 563 U.S. at 46*). At the motion-to-dismiss stage, a court **[*45]** "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff," to determine whether the plaintiff has alleged a "strong inference" of scienter. *In re Philip Morris, 2020 U.S. Dist. LEXIS 19458, 2020 WL 550769, at *19* (quoting *Tellabs, 551 U.S. at 323-24*).

"Under the PLSRA, a complaint must 'state with particularity facts giving rise to a strong inference' that the defendant acted with this state of mind." *CBS, 2020 U.S. Dist. LEXIS 7787, 2020 WL 248729, at *16* (quoting *15 U.S.C. § 78u-4[b][2][A]*). "For an inference of scienter to be strong, a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *In re Avon, 2019 U.S. Dist. LEXIS 200816, 2019 WL 6115349, at *12* (internal quotation marks omitted) (quoting *ATSI Commc'ns, 493 F.3d at 99*); *see also Tellabs, 551 U.S. at 324* ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.").

**a. Individual Scienter**

A plaintiff may plead individual scienter by alleging facts plausibly suggesting "(1) a motive and opportunity to commit the fraud; or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Emps.' Ret. Sys. Of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306 (2d Cir. 2015)* ("*Blanford*"); *Ganino, 228 F.3d at 168*.

**i. Motive and Opportunity**

"[M]otive for scienter can 'be shown by pointing to the concrete benefits that could be realized from **[*46]** one or more of the allegedly misleading statements or nondisclosures; opportunity could be shown by alleging the means used and the likely prospect of achieving concrete benefits by the means alleged.'" *Blanford, 794 F.3d at 309* (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 108 [2d Cir. 2009])*. "While motive may be 'sufficiently pleaded where [a] plaintiff alleged that defendants misrepresented corporate performance to inflate stock prices while they sold their own shares' the defendant's stock sales must be 'unusual' to support such an allegation." *Wyche v. Advanced Drainage Sys., Inc., 710 F. App'x 471, 473 (2d. Cir. 2017)* (citing *Kalnit v. Eichler, 264 F.3d 131, 139 [2d Cir 2001])*. The "mere fact that insider stock sales occurred does no suffice to establish scienter." *In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009)*. When determining whether sales are unusual or suspicious, district courts consider the following: "(1) the amount of net profits realized from the sales' (2) the percentages of holdings sold; (3) the change in volume of insider defendant's sales; (4) the number of insider defendants selling; (5) whether sales occurred soon after statements defendants are alleged to have known were misleading; (6) whether sales occurred shortly before corrective disclosures or materialization of the alleged risk; and (7) whether sales were made pursuant to trading plans such as *Rule 10b5-1* plans." *Gagnon v. Alkermes PLC, 368 F. Supp. 3d 750, 772-73 (S.D.N.Y. 2019)* (citing *Nguyen v. New Link Genetics Corp., 297 F. Supp. 3d 472, 493 [S.D.N.Y. 2018])*; *Glaser v. The9, Ltd., 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011)*. "Officers and directors **[*47]** are presumed to have the opportunity to commit fraud." *Foot Locker, 412 F. Supp. 3d at 226 n.12* (citing

*Pension Comm. Of Univ. Of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 181 [S.D.N.Y. 2006])*.

"To plead an individual's scienter through circumstantial evidence, a complaint may allege facts showing that the defendants '(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *CBS, 2020 U.S. Dist. LEXIS 7787, 2020 WL 249729, at *16* (quoting *Blanford, 794 F.3d at 306*). "Where motive is not apparent . . . the strength of the circumstantial allegations must be correspondingly greater." *Kalnit, 264 F.3d at 142*.

Here, Plaintiffs fail to allege facts plausibly suggesting a strong inference of scienter based on motive or opportunity. "Motives that are generally possessed by most corporate directors and officers do not suffice' instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit, 264 F.3d at 139*. Specifically, Plaintiffs argue that they have pled a strong inference of scienter because each of the individual Defendants sold significant portions of the stock acquired during the class-period at an increased price. (Dkt. No. 83, at 51-52.) However, capital-raising **[*48]** and profitability motives are insufficient to create a strong inference of scienter. *See In re Bank of Am., 980 F. Supp. 2d at 585 n.8* ("[T]he alleged motive to raise capital is a generic one insufficient to support scienter."); *JP Morgan, 553 F.3d at 198* ("Motives that are common to most corporate officers, such as the desire for a corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of [the scienter] inquiry."). Plaintiffs have failed to allege a strong inference of scienter based on standard corporate objectives.

Plaintiffs also argue that there is a strong inference of scienter because the individual Defendants collectively sold YRC shares at artificially inflated prices, which amounted to gross proceeds of approximately $9.8 million. (Dkt. No. 83, at 51.) However, "the fact that insiders sold company stock, standing alone does not give rise to an inference of scienter." *In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 444 (S.D.N.Y. 2005)*. "Plaintiffs must establish that the [stock] sales were "unusual" or "suspicious." *In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009)*;

*see also In re Health Mgmt. Sys., Inc. Sec. Litig., No. 97-CV-1865, 1998 U.S. Dist. LEXIS 8061, 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998)* ("Unusual insider trading activity during the class period may permit an inference of scienter; however, plaintiffs bear the burden of showing that any such sales are in fact unusual.").

In this **[*49]** case, Plaintiffs allege that the individual Defendants' trading activities were unusual and suspicious because they each sold a significant amount of the shares they individually acquired during the class period. (Dkt. No. 75, at ¶¶ 28, 32, 35, 39.) However, the percentages of total shares sold do not accurately reflect the percentage of holdings for each individual Defendant during the fifty-seven month class period. Specifically, Defendant Welch, despite selling approximately 33% of the shares acquired during the class period, increased his holdings in YRC by approximately 2.65 times. (Dkt. No. 81-13.) Similarly, Defendant Pierson increased his holdings by approximately 2.43 times, while Defendant Hawkins increased his holdings by approximately 3.7 times, and Defendant Fisher increased her holdings by approximately 2.76 times. (*Id.*) These increases in the individual Defendants' holdings are "wholly inconsistent with fraudulent intent." *In re Bristol-Myers-Squibb Sec. Litig., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004)*.

For all of these reasons, the Court finds that Plaintiffs have failed to allege facts plausibly suggesting that the individual Defendants acted with the appropriate motive and opportunity to establish scienter.

### ii. Conscious Misbehavior or Recklessness [*50]

"Alternatively, if Plaintiffs cannot make the 'motive' showing, then they could raise a strong inference of scienter under the 'strong circumstantial evidence' prong, 'though the strength of the circumstantial allegations must be correspondingly greater' if there is no motive." *JP Morgan, 553 F.3d at 198-99* (quoting *Kalnit, 264 F.3d at 142*). "[A] complaint adequately pleads a reckless omission if it alleges that defendants 'failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud.'" *SEC v. Egan, 994 F. Supp. 2d 558, 565 (S.D.N.Y 2014)* (quoting *Novak, 216 F.3d at 308*). "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *In re Advanced Battery Techs., Inc., 781 F.3d 638, 644 (2d Cir. 2015)* (quotation

marks and internal citations omitted); *see also S. Cherry, 573 F.3d at 109* (explaining that a plaintiff must establish "conscious recklessness" by showing that the defendants had "a state of mind approximating actual intent, and not merely a heightened form of negligence").

"In the securities fraud context, we have typically found it sufficient to state a claim based on recklessness if the complaint 'specifically allege[s] defendants' knowledge of facts or access to information contradicting their public statements.'" **[*51]** *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 177 (2d Cir. 2015)* (quoting *Novak, 216 F.3d at 308*). "[W]here liability is premised upon alleged material omissions, if the complaint 'does not present facts indicating a clear duty to disclose'-such as that arising from the need to correct or update prior statement-'plaintiff's scienter allegations do not provide strong evidence of conscious misbehavior or recklessness.'" *Fried v. Centerline Holding Co. (In re Centerline Holding Co. Secs. Litig.), 380 F. App'x 91, 93 (2d Cir. 2010)* (quoting *Kalnit, 264 F.3d at 144*).

In this case, Plaintiffs argue that Defendants' knowledge of the DOJ investigation sufficiently pleads scienter. (Dkt. No. 83, at 45.) However, the Amended Complaint pleads no facts plausibly suggesting that Defendant Pierson, Defendant Fischer, or Defendant Hawkins had any knowledge of the alleged "Overcharge Scheme." (*See generally* Dkt. No. 75.) Even if the Court were to consider the statements of all six of Plaintiffs' CWs, the Court would find no mention of any of the above-mentioned individual Defendants. Moreover, the Amended Complaint does not allege facts plausibly suggesting that Defendants Welch, Pierson, Fisher or Hawkins made any material misstatements or omissions, or were involved in the preparation of material misstatements or omissions.

For all of these reasons, the Court finds that Plaintiffs have failed to plead scienter (on **[*52]** behalf of Defendants Welch, Pierson, Fisher, and Hawkins) under the conscious-misbehavior-or-recklessness prong.

The Court notes that Plaintiffs have not alleged facts plausibly suggesting that the individual Defendants had a clear duty to disclose the DOJ investigation. As discussed above in Part III.A.2.a.i. of this Decision and Order, "a government investigation, without more, does not trigger a generalized duty to disclose." *In re Lions Gate, 165 F. Supp. 3d at 12*. "Because there is no clear case law that would require the disclosure of the [DOJ]

investigation in the absence of a pre-existing duty to disclose, the plaintiffs cannot show that the defendants acted in reckless disregard of the securities laws." *In re Bank of Am., 980 F. Supp 2d at 587*. Under these circumstances, the Court finds that there was no clear duty to disclose the DOJ investigation, and thus the mere knowledge of the investigation could not create a strong inference of scienter.

**b. Corporate Scienter**

"When the defendant is a corporation, a plaintiff must plead scienter with respect to 'someone whose intent could be imputed to the corporation.'" *Foot Locker, 412 F. Supp. 3d at 225* (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 [2d Cir. 2008])*. "'Courts in this district have not developed a bright-line rule' to determine which employees' scienter may be imputed to a corporation, **[*53]** *Barrett v. PJT Partners Inc., 16-CV-2841, 2017 U.S. Dist. LEXIS 145781, 2017 WL 3995606, at *7 (S.D.N.Y. Sept. 8, 2017)*, but courts have held that 'management level' employees are, ordinarily, sufficiently senior to 'serve as proxies' for the corporation's mental state." *CBS, 2020 U.S. Dist. LEXIS 7787, 2020 WL 248729, at *16* (quoting *Thomas v. Shiloh Indus., Inc., 15-CV-7449, 2017 U.S. Dist. LEXIS 105291, 2017 WL 2937620, at *3* & n.1 [S.D.N.Y. July 7, 2017] [collecting cases]). "Where the defendant at issue is a corporation, it is possible to plead corporate scienter by pleading facts sufficient to create a strong inference either (1) that someone whose intent could be imputed to the corporation acted with the requisite scienter[,] or (2) that the statements would have been approved by corporate officials sufficiently knowledgeable about the company to know that those statements were misleading.*" Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 177 (2d Cir. 2015)* (internal quotation marks omitted).

Here, Plaintiffs cannot meet their burden under either prong. For the reasons stated above in Part III.A.3.a. of this Decision and Order, the Court finds that Plaintiffs have failed to plead a strong inference of scienter with regard to any of the individual Defendants. Therefore, Plaintiffs have failed to plead scienter with respect to "management level" employees to establish corporate scienter under the first prong. As to the second prong, **[*54]** the Court has found that Plaintiffs have not alleged sufficient facts to plausibly suggest that any individual Defendant had knowledge of the alleged "Overcharge scheme" during the class period.

Furthermore, Plaintiffs made only conclusory allegations that Defendant YRC's management-level employees had the appropriate scienter when acting on behalf of Defendant YRC. Specifically, Plaintiffs argue that, even if they did not adequately plead the individual Defendants' scienter, "the knowledge of senior managers at [Defendant] YRC about the Overcharge Scheme" can be properly imputed to the company. (Dkt. No. 83, at 53.) However, Plaintiffs focus on events that occurred more than five years before the class period (2007-2009). (Dkt. No. 75, at ¶¶ 62-86, 105, 117-20.) As discussed above in Part III.A.1. of this Decision and Order, the Court considers only CW 2's statements in reaching its decision. Because Plaintiffs have failed to allege facts plausibly suggesting that the appropriate management-level officials had the required level of scienter during the class period, Plaintiffs' corporate scienter argument must be rejected.

For all of these reasons, the Court finds that Plaintiffs have **[*55]** failed to plead either the material misstatement or scienter elements necessary to establish a securities fraud claim under *Section 10(b)* or *Rule10b-5*, and thus that claim must be dismissed.

**B. Whether Plaintiffs Have Stated a Control-Person Liability Claim Under *Section 20(a)* of the Exchange Act**

After carefully considering the matter, the Court answers this question in the negative. As explained above in Part II.D. of this Decision and Order, control-person liability exists only where there is a primary violation. *In re Alstom S.A., 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005)*. Because the Court has found no primary violation, Defendants' conduct cannot give rise to a control-person liability claim under *Section 20(a)* of the Exchange Act. Therefore, Plaintiffs' control-person liability claim is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim (Dkt. No. 81) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Complaint (Dkt. No. 75) is **DISMISSED**.

Dated: March 27, 2020

Syracuse, NY

/s/ Glenn T. Suddaby

**Hon. Glenn T. Suddaby**

**Chief U.S. District Judge**

_____

End of Document