**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

UTAH RETIREMENT SYSTEMS, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

HEALTHCARE SERVICES GROUP, INC., DANIEL P. MCCARTNEY, THEODORE WAHL, JOHN C. SHEA, and MATTHEW J. MCKEE,

Defendants.

Case No. 2:19-cv-01227-ER

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER: (I) PRELIMINARILY APPROVING PROPOSED CLASS ACTION SETTLEMENT; (II) PRELIMINARY CERTIFYING THE SETTLEMENT CLASS; AND (III) APPROVING NOTICE TO THE SETTLEMENT CLASS**

Ira Neil Richards (PA Bar No. 50879)
Arleigh P. Helfer III (PA Bar No. 84427)
1600 Market Street, Ste. 3600
**SCHNADER HARRISON SEGAL & LEWIS LLP**
Philadelphia, PA 19103
Telephone: (215) 751-2503

*Counsel for Lead Plaintiff Utah Retirement Systems & Liaison Counsel for the Class*

Nicole Lavallee (*Pro Hac Vice*)
Jeffrey Rocha (*Pro Hac Vice*)
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200

Patrick T. Egan (*Pro Hac Vice*)
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

*Counsel for Lead Plaintiff Utah Retirement Systems & Lead Counsel for the Class*

Dated: June 30, 2021

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1

II. SUMMARY OF THE LITIGATION ..... 3

III. PRELIMINARY APPROVAL OF THE STIPULATION IS WARRANTED ..... 6

A. Standards Governing Approval of Class Action Settlements ..... 6

B. The Court "Will Likely Be Able To" Approve the Proposed Settlement Under Rule 23(e)(2) ..... 7

1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class 7

2. The Stipulation is the Result of Arm's-length Negotiation Between Experienced Counsel ..... 8

3. The Settlement's Terms Are Adequate ..... 9

a) The Substantial Benefits for the Class, Weighed Against the Inherent Risks of Litigation Support Preliminary Approval ..... 10

b) The Proposed Method of Distributing Relief to the Settlement Class is Effective ..... 12

c) Lead Plaintiff's Request for Attorneys' Fees is Reasonable ..... 13

d) There Are No Side Agreements Other Than With Respect to Opt Outs ..... 13

4. All Settlement Class Members Are Treated Equitably ..... 14

C. The Remaining *Girsh* Factors Further Support Preliminary Approval ..... 15

1. The Reaction of the Settlement Class to the Settlement ..... 16

2. The Stage of the Proceedings ..... 16

3. Defendants' Ability To Withstand A Greater Judgment ..... 17

4. The Risk of Maintaining the Class Action Through Trial ..... 17

5. The Settlement Amount is Reasonable Considering The Range of Possible Recoveries ..... 18

IV. THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ..... 19

A. Numerosity ..... 21

B. Commonality ........ 21

C. Typicality ........ 22

D. Adequacy of Representation ........ 23

E. Rule 23(b)(3) Factors ........ 25

1. Predominance ........ 25

2. Superiority ........ 26

F. Ascertainability ........ 29

V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ........ 30

VI. PROPOSED SCHEDULE OF EVENTS ........ 32

## TABLE OF AUTHORITIES

**Cases**

*Alves v. Main*,
No. 01-cv-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)
*aff'd*, 559 F. App'x 151 (3d Cir. 2014) .......... 8, 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).......... 19, 20, 25, 27

*Aramburu v. Healthcare Fin. Servs., Inc.*,
No. CV 02-6535 (MDG), 2008 WL 11411523 (E.D.N.Y. Dec. 4, 2008) .......... 20

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018).......... 17

*Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
513 F. Supp. 2d 322 (E.D. Pa. 2007) .......... 17

*Burns v. FalconStor Software, Inc.*,
No. 10 CV 4572 (ERK), 2013 WL 12432583 (E.D.N.Y. Oct. 9, 2013).......... 26

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015), as amended (Apr. 28, 2015) .......... 29

*Du on behalf of Enteromedics, Inc. v. Blackford*,
No. 17-CV-194, 2018 WL 4691046 (D. Del. Sept. 28, 2018).......... 24

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985).......... 26

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975).......... 7, 10, 17, 18

*In re CIGNA Corp. Sec. Litig.*,
No. 02-cv-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .......... 21, 27, 28

*In re Corel Corp. Inc. Sec. Litig.*,
206 F.R.D. 533 (E.D. Pa. 2002).......... 23

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007).......... 13

*In re Deutsche Bank AG Sec. Litig.*,
328 F.R.D. 71 (S.D.N.Y. 2018), *leave to appeal denied*,
No. 18-3036, 2019 WL 1612904 (2d Cir. Feb. 20, 2019) .......... 29

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ..................................................................... 15

*In re Gen. Motors. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)........................................................................................ 16

*In re Herley Indus. Inc. Sec. Litig.*,
No. Civ.A. 06-2596, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009) .......................... 27, 28

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................................ 26

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012) ........................................................................... 16

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
MDL No. 1658 SRC, 2013 WL 396117 (D.N.J. Jan. 30, 2013)................................ 23, 25

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) .................................................................... 16

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016)...................................................................................... 17

*In re Novo Nordisk Sec. Litig*.,
No 3:17-cv-209-BRM-LHG, 2020 WL 502176 (D.N.J. Jan. 31, 2020).......................... 22

*In re Par Pharm. Sec. Litig.*,
No. CIV.A 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013)............................... 14

*In re Platinum & Palladium Commodities Litig.*,
No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014).................................. 19, 20

*In re Processed Egg Prod. Antitrust Litig.*,
No. 08-MD-2002, 2014 WL 828083 (E.D. Pa. Feb. 28, 2014) ....................................... 20

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F. 3d 283 (3d Cir. 1998)..................................................................................... 17

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003).......................................................... 9, 10, 17

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ............................... 26

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
No. Civ.A. 8-397 DMC/JAD, 2012 WL 4482032 (D.N.J. Sept. 25, 2012)..................... 24

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02-168 WHW, 2008 WL 906254 (D.N.J. Mar. 31, 2008) ........................................ 10

*In re Urban Outfitters, Inc. Sec. Litig.*,
No. 13-5978, 2016 WL 1043014 (E.D. Pa. Feb. 29, 2014) ............................................ 30

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 315CV07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020), *report and recommendation adopted*, No. CV157658-MAS-LHG, 2021 WL 358611 (D.N.J. Feb. 1, 2021)........................................................................................ 26

*In re Viropharma Inc. Sec. Litig.*,
No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ........................................... 8

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)........................................................................... 23, 27

*In re Warfarin*,
212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).......................... 14, 17

*In re Wilmington Tr. Sec. Litig.*,
No. 10-CV-0990-ERC, 2018 WL 6046452 (D. Del. Nov. 19, 2018).............................. 13

*In re: Genworth Fin. Sec. Litig.*,
No. 3:14-CV-682-JAG, 2016 WL 7187290 (E.D. Va. Sept. 26, 2016)........................... 13

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)................................................................................ 21

*Marsden v. Select Med. Corp.*,
246 F.R.D. 480 (E.D. Pa. 2007)........................................................................... 24

*McIntyre v. RealPage, Inc.*,
No. Civ.A. No. 18-3934, 2020 WL 5017612 (E.D. Pa. Aug. 25, 2020).......................... 29

*Merck & Co., Inc., Vytorin/Zetia*,
2012 WL 4482041 .......................................................................................... 27, 28

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ...................................................................... 14

Neale v. Volvo Cars of N. Am., LLC,
794 F.3d 353 (3d Cir. 2015)................................................................................ 25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001)................................................................................ 23

*Pro v. Hertz Equip. Rental Corp.*,
No. CV 06-3830(DMC), 2013 WL 12157826 (D.N.J. Mar. 18, 2013) ............................ 20

*Reyes v. Netdeposit, LLC*,
802 F.3d 469 (3d Cir. 2015)........................................................................................ 22

*Rosen v. Fid. Fixed Income Trust*,
169 F.R.D. 295 (E.D. Pa. 1995).................................................................................. 27

*Schuler v. Medicines Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 23, 2016)................................ 8

*Silvis v. Ambit Energy L.P.*,
No. CV 14-5005, 2018 WL 1010812 (E.D. Pa. Feb. 22, 2018) ................................ passim

*Sudunagunta v. NantKwest, Inc.*,
No. CV161947MWFJEMX, 2019 WL 2183451 (C.D. Cal. May 13, 2019)...................... 9

*Velez v. Novartis Pharms. Corp.*,
No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)........................... 20

**Rules**

Fed. R. Civ. P. 23(a)(1)........................................................................................................ 21

Fed. R. Civ. P. 23(a)(2)........................................................................................................ 21

Fed. R. Civ. P. 23(a)(3)........................................................................................................ 22

Fed. R. Civ. P. 23(a)(4)........................................................................................................ 23

Fed. R. Civ. P. 23(b)(3)................................................................................................. 25, 27

Fed. R. Civ. P. 23(e)(1)(B)............................................................................................. 6, 19

Fed. R. Civ. P. 23(e)(2).......................................................................................................... 6

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................ 13

Fed. R. Civ. P. 23(e)(2)(C)(iv)............................................................................................. 13

Fed. R. Civ. P. 23(e)(3).......................................................................................................... 6

Rule 23(e)(2)........................................................................................................................ 15

Rule 23(e)(2)(C)(ii)............................................................................................................... 12

Rule 23(e)(2)(D) .................................................................................................................. 14

Lead Plaintiff Utah Retirement Systems ("URS" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its unopposed motion for entry of the Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), which is attached as Exhibit A to the Stipulation and Agreement of Settlement, dated June 29, 2021 (the "Stipulation").[1]

## I. PRELIMINARY STATEMENT

Lead Plaintiff and Defendants[2] have negotiated a proposed Settlement of this action in exchange for a cash settlement of $16,800,000 for the benefit of the Settlement Class.[3] The proposed Settlement, detailed in the Stipulation, would resolve all claims against Defendants in this Action and, if approved, would provide the Settlement Class with a substantial, immediate concrete benefit and avoid the protracted risks and uncertainties inherent in complex, securities class action litigation. *See* Egan Decl. Ex. 1. The Stipulation is the result of extensive arm's-

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation. The Stipulation is attached as Exhibit 1 to the Declaration of Patrick T. Egan ("Egan Decl."), filed herewith. Unless otherwise indicated, all emphasis is added and all alterations, internal quotation marks and citations are omitted.

[2] "Defendants" are Healthcare Services Group, Inc. ("HCSG" or the "Company"), Daniel P. McCartney ("McCartney"), Theodore Wahl ("Wahl"), John C. Shea ("Shea"), and Matthew J. McKee ("McKee").

[3] For purposes of settlement only, the Settlement Class is defined generally as all Persons who purchased or otherwise acquired the common stock of HCSG between April 8, 2014 through February 9, 2021, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby. As detailed below, the Settlement Class Period is longer than the Class Period alleged in the operative complaint, which encompassed April 8, 2014 through March 4, 2019. The extended Settlement Class Period results from a press release issued by the Company in February 2021, which constituted a further revelation related to the alleged earnings per share ("EPS") manipulation scheme alleged in the Complaint. The February 2021 announcement, which was issued in the midst of class certification briefing and just as the parties began settlement discussions, serves as a final corrective disclosure arising out of the same facts and circumstances of the alleged fraud.

length negotiations between highly experienced counsel, which included a full-day mediation session before Robert A. Meyer, a nationally recognized mediator.

Lead Plaintiff secured the Settlement due to its vigorous efforts over the course of over two years of hard-fought litigation. These efforts included, *inter alia*: (i) interviews with former HCSG employees; (ii) extensive consultation with, and analysis by, damages and accounting consultants; (iii) detailed reviews of HCSG public filings, annual reports, press releases, and other publicly available information; (iv) review of analysts' reports and articles relating to HCSG; (v) extensive briefing of the asserted claims both in opposing Defendants' motion to dismiss and in preparing a motion for class certification; (vi) review of thousands of documents produced in discovery; (vii) four depositions, including expert depositions; and (viii) research of the applicable law with respect to the claims asserted in the Amended Complaint and the potential defenses thereto. *See*, *e.g.*, Egan Decl. ¶¶ 5, 25.

Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount provided under the Settlement and of the risks and expenses of protracted litigation against Defendants, Lead Counsel and Lead Plaintiff submit that the proposed Stipulation is an excellent result and in the best interests of the Settlement Class, and ask that the Court enter the proposed Preliminary Approval Order[4], which will, *inter alia*:

(i) preliminarily certify the Settlement Class;

(ii) preliminarily approve the terms of the Stipulation;

(iii) hold that the manner and form of notice detailed in the proposed Preliminary Approval Order satisfy due process and provide the best notice practicable under the circumstances;

[4] *See* Egan Decl. Ex. 1-A.

(iv) appoint A.B. Data, Ltd. (“A.B. Data”) as the Claims Administrator;

(v) appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; and

(vi) schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Proof of Claim Form and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Stipulation, the proposed Plan of Allocation, and/or Lead Counsel’s motion for attorneys’ fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Stipulation.

## II. SUMMARY OF THE LITIGATION

In this Action, Lead Plaintiff alleges that Defendants engaged in a long-term pattern of misleading investors into believing that the Company legitimately met or beat Wall Street analysts’ consensus estimates for the Company’s EPS by manipulating net income and EPS to ensure the Company consistently met analyst expectations. *See* Amended Class Action Complaint for Violations of the Federal Securities Laws alleging violations of §§10(b) and 20(a) of the Securities and Exchange Act of 1934 (the “Amended Complaint”) (ECF No. 31). Lead Plaintiff alleges that, once Defendants’ conduct drew the attention of the U.S. Securities and Exchange Commission (“SEC”), Defendants continued to hide from investors its past conduct and an ongoing SEC investigation. On March 4, 2019, Defendants first revealed the existence of the SEC investigation and further announced that Company was conducting its own internal investigation. In response, the price of HCSG’s stock fell more than 13%. Then, on February 10, 2021, the Company issued a press release announcing, in part, that the Company and the SEC had recently commenced discussions regarding a potential resolution of the investigation and that, in conjunction with those discussions, Defendant Shea had notified the Company that he would be taking a temporary leave

of absence from his duties. *See* Egan Decl. ¶¶ 22, 34. This news led to a further decline in the price of HCSG's common stock.

This securities fraud class action commenced on March 22, 2019 with the filing of the initial complaint, styled as *Stephen Koch v. Healthcare Services Group, Inc., and Theodore Wahl.*, Case No. 2:19-cv-01227-ER. *See* Egan Decl. ¶ 3. Thereafter, on May 21, 2019, URS filed a Motion for Appointment as Lead Plaintiff and Approval of its Selection of Counsel. By order dated June 17, 2019, this Court appointed URS as Lead Plaintiff and approved Lead Plaintiff's choice of the law firms of Berman Tabacco as Lead Counsel ("Berman Tabacco") and Schnader Harrison Segal & Lewis LLP ("Schnader") as Liaison Counsel for the Class. *Id.* ¶ 4.

On September 17, 2019, after extensive investigation by Lead Counsel, Lead Plaintiff filed the Amended Complaint. On November 18, 2019, Defendants moved to dismiss the Amended Complaint. *See* Egan Decl. ¶ 8. Lead Plaintiff opposed the motion on January 17, 2020 and, on April 24, 2020, the Court denied Defendants' motion. *Id.* On May 8, 2020, Defendants moved for reconsideration of the motion to dismiss, and the Court entered an Order denying this motion on July 13, 2020. Defendants filed their answers to the Complaint on June 22, 2020. *Id.*

On July 27, 2020, the Court held an initial pre-trial conference and bifurcated class and merits discovery. Egan Decl. ¶ 12.[5] Following the initial pre-trial conference and pursuant to a prior agreement reached by the parties, Defendants produced over 60,000 documents, totaling approximately 465,007 pages, including some of the materials the Company had previously disclosed to the SEC in connection with its investigation into Defendants' EPS practices. *Id.* ¶ 14.

[5] During the summer of 2020, the parties exchanged initial disclosures, submitted a Joint Rule 26(f) Report along with a Proposed Case Management Plan, negotiated two confidentiality agreements, propounded written discovery and conferred on numerous occasions regarding the nature and scope of the parties' discovery requests. *See* Egan Decl. ¶¶ 9, 11, 13-16.

In addition, Plaintiff and third-parties produced an additional 3,573 documents, totaling approximately 21,765 pages of materials. *Id.* ¶¶ 14, 16.

On November 13, 2020, Plaintiff moved for class certification, supported with an expert report. Egan Decl. ¶ 17; *see also* ECF. No. 61. After taking the depositions of URS, URS's money manager and Lead Plaintiff's expert, Defendants filed their opposition brief and expert report on January 27, 2021. *See* Egan Dec. ¶¶ 19-20. Lead Plaintiff deposed Defendants' class certification expert on February 25, 2021. *Id.*

In early February, during the briefing on the motion for class certification, the parties first discussed the prospect of mediation. *See* Egan Decl. ¶ 21. Eventually, the parties agreed to submit the case to mediation before Robert A. Meyer, a national-recognized mediator with vast experience in mediating PSLRA actions. *Id*.

On February 10, 2021, shortly after the parties began to discuss mediation, HCSG issued a press release announcing quarterly results, revenue guidance and concerns over lingering Covid-related issues. *See* Egan Decl. ¶ 22. In addition, the Company provided an update on the ongoing SEC investigation, stating, "The Company and the SEC have recently commenced discussions regarding a potential resolution of the investigation, which focuses on periods prior to 2018." *Id.* The Company further announced that in conjunction with those discussions, Defendant Shea "is taking a temporary leave of absence from his duties."

After exchanging detailed mediation statements, the parties participated in an all-day mediation on March 17, 2021 and reached an agreement in principle to settle the case. *See* Egan Decl. ¶¶ 23-24. As a result, the parties entered into the Stipulation, whereby Lead Plaintiff agreed to settle this matter in return for a cash payment of $16,800,000 for the benefit of the Settlement Class, and the exchange of mutual releases. *Id.* ¶ 24. Now, Lead Plaintiff moves the Court to

preliminarily approve the Stipulation.

## III. PRELIMINARY APPROVAL OF THE STIPULATION IS WARRANTED

### A. Standards Governing Approval of Class Action Settlements

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of class actions. On December 1, 2018, Rule 23(e) was amended to specify, among other things, that the focus of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The factors identified by amended Rule 23(e)(2), require the Court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to eachother." Fed. R. Civ. P. 23(e)(2).

In determining whether to grant final approval of class action settlements, courts in the Third Circuit also consider the so-called "*Girsh* factors"—many of which overlap with the Rule 23(e)(2) factors. These include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

As demonstrated below, the Stipulation here complies with Rule 23 and the requirements set forth under *Girsh v. Jepson*. Therefore, Lead Plaintiff's motion should be granted.

### B. The Court "Will Likely Be Able To" Approve the Proposed Settlement Under Rule 23(e)(2)

#### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

As an initial matter, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class during both the litigation of the Action and its settlement. *See* Egan Decl. ¶¶ 5, 7-30. Lead Plaintiff's claims are typical of the claims of the Settlement Class, and they have no antagonist interests. To the contrary, Lead Plaintiff's interest in obtaining the largest possible recovery was aligned with all other Settlement Class Members. *See* Declaration of Kevin Catlett on Behalf of Utah Retirement Systems in Support of Motion for Preliminary Approval of Class Action Settlement ("Catlett Decl.") ¶ 3 (submitted herewith as Egan Decl. Ex. 2). Further, Lead Plaintiff retained counsel who are highly experienced in class action litigation and have decades of experience in litigating securities fraud class actions. *See* Egan Decl. ¶ 5 & Exs. 3-4. Moreover, the Settling Parties have been actively litigating this Action since its commencement in early 2019, during which time Lead Counsel have engaged in extensive litigation, referenced above, related to investigating claims, defeating multiple attempts to dismiss the litigation, engaging in document, deposition, and expert discovery, and consulting with damages and accounting consultants. *See id.* ¶¶ 5, 7-30. The result of these efforts is a cash settlement of $16,800,000 that will provide significant relief to the Settlement Class when compared to the

risks of likely protracted litigation. Lead Plaintiff and Lead Counsel have, therefore, adequately represented the Settlement Class.

### 2. The Stipulation is the Result of Arm's-length Negotiation Between Experienced Counsel

Prior to submitting this case to mediation, the parties zealously advocated their positions on Defendants' motion to dismiss, exchanged written discovery, collectively produced hundreds of thousands of pages of documents, deposed experts and exhausted considerable resources briefing issues related to class certification. *See* Egan Decl. ¶¶ 5-30. Armed with this information, the parties were well-equipped to consider the strengths and weaknesses of their positions before agreeing to mediation. *See, e.g., Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 23, 2016) (noting that "Lead Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement" where it had reviewed publicly available information, conducted an extensive investigation, consulted with an expert, drafted the initial and amended complaints, briefed an opposition to defendants' motion to dismiss, and engaged in mediation).

Moreover, the Stipulation was entered into following an all-day mediation with a well-respected, independent mediator, lending further support to the arm's-length nature of the parties' negotiations. *See In re Viropharma Inc. Sec. Litig*., No. CV 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (the "participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties"); *see also Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) *aff'd*, 559 F. App'x 151 (3d Cir. 2014). Robert A. Meyer is a mediator with JAMS

with over twelve years' experience in mediating complex commercial disputes, including securities class actions brought under the PSLRA. *See* Egan Decl. ¶ 21.[6]

Additionally, Lead Counsel Berman Tabacco has extensive experience litigating securities class actions and Liaison Counsel Schnader has extensive experience litigating complex commercial matters. *See* Egan Decl. ¶ 5 & Exs. 3-4. As Lead and Liaison Counsel, their judgment that the settlement is fair and reasonable is entitled to considerable weight. *See Alves*, 2012 WL 6043272, at *22 ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (noting that Lead Counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight"). Similarly, Defendants were well-represented by strong counsel with deep experience in securities class action. Thus, there is no disputing that the Stipulation was reached in an arm's-length negotiation.

**3. The Settlement's Terms Are Adequate**

Rules 23(e)(2)(C) and 23(e)(2)(D) of the Federal Rules of Civil Procedure further direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). In this case, the Settlement represents an excellent result for the Settlement Class given the attendant risks associated with continued litigation. *See* Egan Decl. ¶¶ 29-31. Furthermore, Lead Counsel, with the assistance of its damages consultant, has proposed a plan for allocating the Settlement proceeds

[6] *See also Sudunagunta v. NantKwest, Inc.*, No. CV161947MWFJEMX, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq.").

that ensures all Settlement Class Members will be treated equitably relative to their respective losses. *Id.* ¶¶ 26-27, 33-36.

#### a) The Substantial Benefits for the Class, Weighed Against the Inherent Risks of Litigation Support Preliminary Approval

In assessing the proposed Settlement, Rule 23(e)(2) requires the Court to balance the benefits afforded to the Settlement Class—including the immediacy and certainty of a recovery—against the significant costs, risks and delay of proceeding with the litigation. Overlapping with Rule 23(e)(2)(C)(i) is the first *Girsh* factor which considers the complexity, expenses and likely duration of the litigation and the fourth and fifth *Girsh* factors, which consider the risks of establishing liability and damages. In this case, the proposed Settlement creates a cash recovery of $16.8 million that provides an immediate and substantial benefit to the Class considering the risks posed by continued litigation.[7]

In evaluating the settlement of securities class actions, courts have repeatedly recognized that such litigation is complex, uncertain, and costly. *See, e.g., In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d at 501 ("[T]his has been, and will continue to be, a very expensive case to prosecute and defend in light of the complexity of the issues and the necessity for expert witnesses."); *In re Suprema Specialties, Inc. Sec. Litig*., No. 02-168 WHW, 2008 WL 906254, at *5 (D.N.J. Mar. 31, 2008) (finding complexity of the securities class action supports final approval). This case is no different. Lead Plaintiff's theory of liability, and the defenses proffered in response by Defendants, have and will continue to require sophisticated analysis of complex financial data and accounting

---

[7] Lead Plaintiff's damages consultant estimates total alleged damages during the Class Period were approximately $263 million. *See* Egan Decl. ¶ 27. As discussed in Section III.C.5, below, a recovery of $16.8 million therefore represents approximately 6.4% of the estimated total alleged damages, in line with median reported values for securities fraud class actions generally and exceeding the Third Circuit's median recovery of 5.2% of damages. *See also* Egan Decl. ¶ 28.

rules before the case may proceed to trial. Indeed, the complexity, expense, and duration of continued litigation through class certification, merits and expert discovery, summary judgment, trial, subsequent post-trial motion practice, and a jury verdict would be significant. Barring a settlement, there is no question that this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the chance that the end result would be no better for the Settlement Class, and possibly worse.

While Lead Plaintiff believes the case is strong, it recognizes that there are significant risks to the Settlement Class. Defendants presented several arguments in their motion to dismiss and against class certification and asserted numerous defenses on the merits. For example, Defendants maintain that they made no actionable misrepresentations, that any alleged "rounding" of EPS was known and immaterial to investors years before the close of the Class Period or Settlement Class Period; that Defendants did not act with the requisite scienter; that Defendants were under no obligation to disclose the existence of the SEC investigation any earlier than they did and that Lead Plaintiff and the class were not damaged. *See* Egan Decl. ¶¶ 29-30. Moreover, Defendants maintain that the action could not be certified as a class because Lead Plaintiff's damages model could not adequately account for different theories of liability purported impacting different portions of the class and that URS's asset manager did not rely on the alleged actionable misrepresentation. *Id.*

Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues ranging from accounting, loss causation, and damages. *See* Egan Decl. ¶ 31. If the trier of fact finds Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims. Moreover, if the trier of fact is persuaded by Defendants' truth-on-the market defense—that the fraud was revealed early in the Class Period when a short seller released a report

in March of 2017—this could potentially reduce the total compensable pool of damages to near zero. *Id.* ¶¶ 30-31.

While Lead Plaintiff believes that it has strong counterarguments on these points, the fact remains that the Court at class certification, summary judgment, or trial could have found such arguments persuasive, which could significantly reduce or eliminate recoverable damages. The Stipulation, therefore, provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continued litigation.

#### b) The Proposed Method of Distributing Relief to the Settlement Class is Effective

As set forth in Section V, below, and in the Declaration of Adam D. Walter of A.B. Data, Ltd. Regarding Notice and Administration ("Walter Decl." or "Walter Declaration") (submitted herewith as Egan Decl. Ex. 5), the method and effectiveness of the proposed notice and claims administration process meet the dictates of Rule 23(e)(2)(C)(ii). The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *Investor's Business Daily*. *See* Walter Decl. ¶¶ 7-10. In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Claim Form and the Preliminarily Approval Order. *Id.* ¶ 11.

The claims process is also effective in that it includes a standard Claim Form which requests the information necessary to calculate a Claimant's Claim amount pursuant to the Plan of Allocation. Walter Decl. ¶ 2. The Plan of Allocation will govern how Settlement Class Members' Claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. *See* Egan Decl. ¶¶ 33-36. The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's event study analysis

estimating the amount of artificial inflation in the price of HCSG common stock during the Class Period. *See id.*; *see also* Section III.B.4, below.

**c) Lead Plaintiff's Request for Attorneys' Fees is Reasonable**

Rule 23(e)(2)(C)(iii) requires that the Court, as part of its overall analysis of the adequacy of the Settlement, consider "the terms of any proposed award of attorney's fees, including [the] timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the terms of the Settlement and as described in the proposed Notice to be provided to Settlement Class Members, Class Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund. *See* Egan Decl. ¶ 32. A detailed fee request will be supported by a memorandum of law and declaration that Lead Plaintiff propose be submitted prior to the deadline for Settlement Class Members to file objections or requests for exclusion, and well before the final approval hearing. Further, the proposed requested fee is consistent with the fee agreement between Lead Counsel and URS which was entered into at the outset of the litigation. *See* Catlett Decl. ¶ 6. If awarded, Lead Counsel's fee request will fall within the range of reasonable attorneys' fees generally awarded in this Circuit. *See In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ERC, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (citing *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *8 (D.N.J. Nov. 28, 2007)).

**d) There Are No Side Agreements Other Than With Respect to Opt Outs**

Rule 23(e)(2)(C)(iv) requires that the parties identify any side agreements. The Parties have entered into a standard supplemental agreement that provides that if Class Members opt out of the Settlement such that the number of shares of HCSG common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation at ¶ 8.3. Agreements of this sort are typical in class settlements and, if

requested, Lead Plaintiff can submit additional information regarding this agreement *in camera*.[8] There are no other side agreements between the Parties.

#### 4. All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. "The proposed allocation need not meet the standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *In re Par Pharm. Sec. Litig.*, No. CIV.A 06-3226 ES, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013). The proposed Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members who submit timely and valid Claim Forms demonstrating a loss on their transactions in HCSG common stock purchased or otherwise acquired during the Settlement Class Period and held through at least one of the alleged corrective disclosures. *See* Egan Decl. ¶¶ 33-36. The formula to apportion the Net Settlement Fund among Settlement Class Members, which was developed in consultation with Lead Plaintiff's damages consultant, is based on the estimated amount of artificial inflation in the price of HCSG common stock over the course of the Class Period that was allegedly caused by Defendants' misconduct.[9] Further, the Plan of Allocation apportions the Net Settlement Fund

---

[8] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out"); *see also In re Warfarin*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ("The notice did not need to include details such as . . . the confidential 'opt-out' threshold beyond which defendant reserved the right to withdraw from the settlement (irrelevant to members' opt-out decision)[.]").

[9] The Plan of Allocation focused on two alleged corrective disclosure dates: March 4, 2019, when the Company first announced the existence of the SEC investigation, and February 10, 2021, when the Company provided a further "update" on the investigation and announced that Defendant Shea was taking a temporary leave of absence. *See* Egan Decl. ¶¶ 33-36. For the first corrective disclosure, Lead Plaintiff's damages consultant determined that all of the Company-specific price decline on March 4, 2021 represented the elimination of inflation in the stock price related to the

among Settlement Class Members based on when they purchased, acquired, and/or sold their HCSG common stock, and was created without consideration of Lead Plaintiff's individual transactions. This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a pro rata basis for their recognized losses based largely on when they bought and sold their shares"). Accordingly, the Plan applies equitably to all Settlement Class Members.

* * *

Thus, each factor identified under Rule 23(e)(2) is satisfied and, given the litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel, the $16,800,000 recovery is remarkable.

### C. The Remaining *Girsh* Factors Further Support Preliminary Approval

As demonstrated above, the first, fourth and fifth *Girsh* factors (the complexity, expense and likely duration of litigation, risks of establishing liability and risks of establishing damages) all lean in favor of settlement. The remaining *Girsh* factors lend further support and, considered collectively, should be considered dispositive.

---

alleged fraud. For the second, however, the Company announced several things in its earnings release, including worse-than-expected revenue guidance and concerns over lingering Covid-related issues. These concerns, not the update on the SEC investigation, were the primary focus of securities analysts' reports, according to Lead Plaintiffs' damages/loss causation consultant. Thus, Lead Counsel, in consultation with its damages consultant, determined that only 25% of the stock price decline on February 10, 2021, or roughly $0.75 per share, represented the elimination of inflation in the stock price related to the alleged fraud. *See id.*; *see also* Stipulation Ex. A-1 (Notice) at 16-21.

**1. The Reaction of the Settlement Class to the Settlement**

The second *Girsh* factor—the reaction of the Class—is not yet ripe, as the Settlement has not yet been presented to the Class. However, URS, the institutional investor Lead Plaintiff and Class Representative believes the Settlement is an excellent result for the Class. *See* Catlett Decl. ¶ 5.

**2. The Stage of the Proceedings**

The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (quoting *In re Gen. Motors Co. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)) . "[U]nder this factor the Court considers whether the…amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Id.* at *29 (alteration in original).

In this case, the parties reviewed hundreds of thousands of documents, including, from the Defendants, a substantial number of documents HCSG furnished to the SEC in connection with its investigation into the very allegations at the heart of the Amended Complaint. In addition, the parties conducted four depositions, including two expert depositions, and the deposition of Lead Plaintiff's Rule 30(b)(6) representative. Further, lead counsel consulted with experts in the fields of market efficiency, loss causation, damages, and accounting. Thus, at the time of mediation, the parties were well-positioned to weigh the strengthens and weaknesses of their respective positions before agreeing to mediation. *See* Egan Decl. ¶¶ 5-36; *see also In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties."); *In re Nat'l Football*

*League Players Concussion Inj. Litig.*, 821 F.3d 410, 436-37 (3d Cir. 2016) ("To the extent objectors ask us to require formal discovery before presuming that a settlement is fair, we decline the invitation. In some cases, informal discovery will be enough for class counsel to assess the value of the class claims and negotiate a settlement that provides fair compensation.").

### 3. Defendants' Ability To Withstand A Greater Judgment

Although Defendants may be able to withstand a greater judgment (the seventh *Girsh* factor), where the other *Girsh* factors weigh in favor of approval, this factor should not influence the overall conclusions that the settlement is fair, reasonable, and adequate.[10]

### 4. The Risk of Maintaining the Class Action Through Trial

The sixth *Girsh* factor requires the Court to consider the risk of maintaining the class action through trial. Though Lead Plaintiff is confident that its class certification motion would have been granted, as the Third Circuit has noted, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F. 3d 283, 321(3d Cir. 1998); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d at 506-07 ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement."). Thus, in the present case, where "the Class had yet to be certified and there is no guarantee of success . . . the risks favor settlement." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018).

[10] *See, e.g., Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 333 (E.D. Pa. 2007) (even when a defendant "likely can withstand a judgment significantly greater than the Settlement . . . this determination in itself does not carry much weight in evaluating the fairness of the Settlement"); *In re Warfarin*, 391 F.3d at 538 (concluding that Defendant's ability to pay a higher amount was irrelevant in determining the fairness of the settlement).

**5. The Settlement Amount is Reasonable Considering The Range of Possible Recoveries**

The eighth and ninth *Girsh* factors support a finding that the Court likely will approve the settlement. These factors call for the court to determine "the range of reasonableness of the settlement fund in light of the best possible recovery … [and] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. Here, the $16.8 million settlement is an excellent result for the Settlement Class. *See* Egan Decl. ¶¶ 26-31, 33-36. For example, Cornerstone Research estimates that median settlements as a percentage of "simplified tiered damages"[11] in Rule 10b-5 cases have ranged between 3.9% and 8.9% for cases with estimated damages of between $150 million to $500 million since 2011.[12] Cornerstone Research further estimates that the median settlement dollars for all securities fraud cases from 2016 to 2020 following rulings on motions to dismiss, but before rulings on class certification, is $6.1 million.[13] In this case, Lead Plaintiff's expert estimates that total alleged damages during the Class Period were approximately $263.0 million. *See* Egan. Decl. ¶ 27. A $16.8 million settlement therefore represents approximately 6.4% of the estimated total alleged damages, in line with the median reported by Cornerstone Research and exceeds the Third Circuit's median recovery of 5.2% of damages. *See* Egan Decl. ¶ 28. Moreover, given the likelihood that not all Settlement Class Members will file claims, it is likely that the actual percentage of recovery will be even higher. Additionally, as discussed in Section III.B.3.a, above,

---

[11] Cornerstone Research defines "simplified tiered damages" as a measure of potential shareholder losses "that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends." *See* Egan Decl. Ex. 6 (*Cornerstone Research, Securities Class Action Settlements: 2020 Review and Analysis* at 5, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis).

[12] *Id.* at 6.

[13] *Id.* at 14.

should Defendants prevail in arguing that the alleged fraud was disclosed to the market on March 22, 2017, when the first Monocle report was published, this could potentially dramatically curtail the class period and reduce damages to near zero. *See also id.* ¶ 31.

In sum, the parties have demonstrated significant uncertainties and risks in continuing this litigation that lean in favor of approving settlement. Thus, the $16.8 million in cash recovery now, particularly when viewed in the context of the risks, costs, delay, and uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

## IV. THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

To grant preliminary approval of a proposed class settlement, a district court must also determine that the requirements for class certification under Rules 23(a) and (b) are met. For that reason, and pursuant to the December 2018 Rule 23(e) amendments, it is proper for the Court to consider, at this stage, whether certification of the Settlement Class is appropriate. Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice to the class if "giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal").

Courts have long acknowledged the propriety of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). Moreover, it is not unusual for class action litigants to agree to a broader class definition upon settlement, where the broader period involves the same alleged facts and circumstances as the initially alleged class period. *See, e.g., In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *2 (S.D.N.Y. July 15, 2014) ("The expanded class period covers the entire time period during which there might arguably have been artificiality in the market so Settling Defendants may obtain a 'global peace' settling all claims arising from the alleged facts."). Indeed, courts routinely approve class action settlements

that expand the class period from that alleged in the operative complaints.[14] A settlement class, however, like all other certified classes, must satisfy the requirements of Rules 23(a) and 23(b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem,* 521 U.S. at 593 ("[w]hether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested").

An action may be certified as a class action if the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy) are met, and the action qualifies under one of Rule 23(b)'s subdivisions (here, Rule 23(b)(3)). In addition, "the Third Circuit imposes another requirement, ascertainability of the class, that must be assessed during the Court's preliminary determination on class certification." *Silvis v. Ambit Energy L.P.*, No. CV 14-5005, 2018 WL 1010812, at *3 (E.D. Pa. Feb. 22, 2018).

Here, the proposed Settlement Class is defined in the Stipulation as: all Persons who purchased or otherwise acquired the common stock of HCSG between April 8, 2014 through February 9, 2021, inclusive, and were allegedly damaged thereby. *See* Stipulation ¶¶ 1.36, 1.38. As demonstrated in Lead Plaintiff's class certification briefing (*see* ECF No. 61) and below, the proposed Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

---

[14] *See, e.g.*, *Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) (class period expanded from 5 to 8 years in employment discrimination context); *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *2-3 (two settlement classes in antitrust and commodities fraud matter expanded on settlement for purposes of reaching a "global peace"); *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2014 WL 828083, at *4 (E.D. Pa. Feb. 28, 2014) (class period in antitrust matter temporarily extended through date of preliminary order); *Aramburu v. Healthcare Fin. Servs., Inc.*, No. CV 02-6535 (MDG), 2008 WL 11411523, at *1 (E.D.N.Y. Dec. 4, 2008) (class period amended "solely for the purposes of effectuating the settlement" in case brought under the Fair Debt Collection Practices Act); *Pro v. Hertz Equip. Rental Corp.*, No. CV 06-3830(DMC), 2013 WL 12157826, at *1 (D.N.J. Mar. 18, 2013) (previously certified class in consumer fraud matter expanded for settlement purposes).

### A. Numerosity

Under Rule 23(a), numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[t]here is no minimum number of members needed for a suit to proceed as a class action," the Third Circuit has held that where the "potential number of plaintiffs exceeds 40," numerosity is generally satisfied. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). In securities actions, "courts have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." *In re CIGNA Corp. Sec. Litig.*, No. 02-cv-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006).

Lead Plaintiff easily establishes numerosity, as the proposed Class consists of thousands of members. From April 8, 2014 to March 4, 2019 (the alleged Class Period), HCSG had between 70.2 million and 73.8 million ordinary shares outstanding.[15] Moreover, HCSG common stock was actively traded, with an average weekly trading volume of more than 2,324,809 million shares. *Id.* Similarly, during the latter portion of the Settlement Class Period, the public float exceeded 73.8 million shares, traded on the Nasdaq Global Select exchange.[16] Thus, joinder of these thousands of HCSG investors would be impractical.

### B. Commonality

Under Rule 23(a)(2), commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the proposed class

[15] *See* Expert Report of Zachary Nye, Ph.D. of Stanford Consulting Group, Inc. (the "Nye Report"), attached as Exhibit 3 to the Declaration of Patrick T. Egan In Support of Lead Plaintiff's Motion For Class Certification and Appointment of Class Representative and Class Counsel ¶ 25. (ECF. No. 61, Attch. Nos. 3, 6-7).

[16] *See* HCSG Profile and News, Wall St. J., *https://www.wsj.com/market-data/quotes/HCSG* (last visited June 30, 2021).

representative must share "at least one question of fact or law with the grievances of the prospective class." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). In assessing commonality, "[c]ourts in this [C]ircuit … have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 74-75 (D.N.J. 2019) (alteration in original).

Here, common questions abound, including: (i) whether Defendants violated the federal securities laws; (ii) whether Defendants' public statements during the Class Period misrepresented or omitted material facts; (iii) whether Defendants acted with scienter in issuing false and misleading statements; (iv) whether and to what extent the price of HCSG common stock was artificially inflated by Defendants' false and misleading statements or omissions; (v) whether the members of the putative Class suffered damages and what the appropriate measure of those damages is; and (vi) whether the Individual Defendants were controlling persons of the Company under Section 20(a) of the Exchange Act. *See* ECF. No. 61 (Lead Plaintiff's Mem. of Law in Supp. of Mot. for Class Cert. & Appointment of Class Rep. & Class Counsel ("Class Cert. MOL")) at 7-8. Thus, the presence of these common questions of law and fact firmly establishes commonality. *See, e.g., In re Novo Nordisk Sec. Litig*., No 3:17-cv-209-BRM-LHG, 2020 WL 502176, at *5 (D.N.J. Jan. 31, 2020) (commonality established where "[c]omplaint alleges a common course of conduct arising from materially false and misleading statements and omissions Defendants made to the investing public").

**C. Typicality**

To establish typicality under Rule 23(a), a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). However, typicality "does not require that the putative class members all share ***identical***

claims." *Roofer's Pension Fund*, 333 F.R.D. at 75 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004)). Instead, "[t]he standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Id*. at 75 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

The proposed Settlement Class satisfies the typicality requirement. Lead Plaintiff and the putative Settlement Class Members all purchased HCSG common stock and assert the same claims under Section 10(b), based on the same misstatements and omissions by Defendants, and the same claim under Section 20(a), based on liability of the Individual Defendants as "controlling persons" of the Company. *See* Class Cert MOL at 8-9. Thus, Lead Plaintiff's "claims arise from the very same alleged Exchange Act violations as those that give rise to the claims of the absent class members," abundantly satisfying typicality. *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658 SRC, 2013 WL 396117, at *5 (D.N.J. Jan. 30, 2013).

**D. Adequacy of Representation**

Rule 23(a)(4)'s adequacy requirement seeks to ensure that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy requires only that the class representative (i) "not have any conflict that might prevent them from representing the interests of the class," and (ii) "that their counsel is qualified to represent all plaintiffs." *In re Corel Corp. Inc. Sec. Litig.*, 206 F.R.D. 533, 542 (E.D. Pa. 2002); *see also W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CV 13-6731, 2016 WL 4138613, at *9 (E.D. Pa. Aug. 4, 2016). "Regarding the qualifications of counsel, Fed. R. Civ. P. 23(g) provides that, in appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling

class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." *Du on behalf of Enteromedics, Inc. v. Blackford*, No. 17-CV-194, 2018 WL 4691046, at *4 (D. Del. Sept. 28, 2018).

Lead Plaintiff meets both prongs of the adequacy requirement here. First, no conflicts of interest exist between either Lead Plaintiff and the Settlement Class Members, or Lead Counsel and the Settlement Class Members. Lead Plaintiff and the putative class members share the same interest in holding Defendants accountable for their misconduct, as Lead Plaintiff and the putative class members purchased HCSG common stock and were injured by the same materially false and misleading statements and omissions. This identical interest satisfies Rule 23's adequacy requirement.[17] Second, both counsel for Lead Plaintiff and counsel for Defendants frequently litigate securities fraud matters and have the necessary expertise to identify the underlying wrongdoing, bring litigation in a representative capacity, and negotiate the proposed Settlement. Moreover, counsel has spent significant time, effort, and resources on this case, demonstrating their commitment to the class. Indeed, the parties have exchanged discovery, produced and/or reviewed hundreds of thousands of pages of documents, taken expert depositions in connection with class certification, prepared detailed mediation briefs, and participated in mediation in the presence of an experienced, well-respected mediator. *See* Egan Decl. ¶¶ 5-20. Thus, the adequacy of representation in this matter is unquestioned.

[17] *See In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. Civ.A. 8-397 DMC/JAD, 2012 WL 4482032, at *6 (D.N.J. Sept. 25, 2012) (finding adequacy where "Lead Plaintiffs' claims are identical to those of the Class: they claim that they purchased Schering securities during the Class Period and have been injured by the allegedly wrongful course of conduct at issue"); *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 485 (E.D. Pa. 2007) (finding adequacy where lead plaintiff "like other members of the class, bought their shares at an allegedly-inflated price and thus did not receive the same value upon sale of the stock as they would have otherwise").

### E. Rule 23(b)(3) Factors

Lead Plaintiff seeks class certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both the predominance and superiority requirements are met here.

#### 1. Predominance

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual class members. Where common questions of law or fact outnumber those affecting only individual class members, predominance is satisfied. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015). It follows that in securities fraud cases, predominance is likely to be found, because purchasers tend to be similarly situated with respect to statements made to them and alleged duties, if any, owed to them. *See Amchem, supra,* 521 U.S. at 625 (noting that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud...."). Here, the elements of a Section 10(b) claim Lead Plaintiff must establish are: "(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[18] *Amgen Inc.v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013). Significantly, the Supreme Court has held that because falsity, scienter, materiality, and loss causation are common merits issues in a securities fraud class action, proof of those elements is not a prerequisite to class certification. *See id*. at 467 ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)" and not a

[18] Lead Plaintiff's "control person" claim under Section 20(a) of the Exchange Act also raises common issues that are subject to class-wide proof. *See, e.g.*, *Merck*, 2013 WL 396117, at *13.

prerequisite to class certification) (alteration in original). Thus, the only issues that would be distinct for Lead Plaintiff and each Settlement Class member would be the amount of damages owed. However, "[a]lthough individual damage claims will differ depending on when and what type of stock was acquired, these issues cast no doubt on the finding of predominance." *In re Ikon Off. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 178 (E.D. Pa. 2000) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985).

Here, the Class's claims depend on the same factual circumstances. The central issues for Lead Plaintiff and for the putative class members are whether or not Defendants' uniformly disseminated misstatements and omissions during the Class Period violated securities law and whether such violations artificially inflated the cost of HCSG securities. *See* Class Cert. MOL at 12-16; *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 315CV07658-MAS-LHG, 2020 WL 3166456, at *5 (D.N.J. June 15, 2020), *report and recommendation adopted*, No. CV157658-MAS-LHG, 2021 WL 358611 (D.N.J. Feb. 1, 2021). "These questions predominate over any conceivable individual question, because defendants' alleged misconduct affected the members of the Class in the same manner." *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *16 (D.N.J. Dec. 9, 2008). Indeed, if each individual class member were to bring his or her own suit, "the member would have to prove the same misrepresentations and omissions in order to prevail." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2013 WL 12432583, at *5 (E.D.N.Y. Oct. 9, 2013). Thus, Lead Plaintiff satisfies the predominance requirement because liability questions common to the Settlement Class substantially outweigh any possible individual issues.

**2. Superiority**

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re*

*Warfarin*, 391 F.3d at 533-34. In the settlement context, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *Silvis*, 2018 WL 1010812, at *5.

Rule 23(b)(3) provides four factors to guide the Court's superiority analysis: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed R. Civ. P. 23(b)(3). Examination of each factor demonstrates that litigating this case as a class action is the superior method.

First, the proposed Settlement Class consists of "securities purchasers who are geographically dispersed and whose individual damages may well be small enough to render individual litigation prohibitively expensive." *Merck & Co., Inc., Vytorin/Zetia*, 2012 WL 4482041, at *8.[19] Thus, Class members are unlikely to litigate on an individual basis.

Second, Lead Plaintiff is not aware of any other related individual actions. *In re Herley Indus. Inc. Sec. Litig.*, No. Civ.A. 06-2596, 2009 WL 3169888, at *14 (E.D. Pa. Sept. 30, 2009)

---

[19] *See also CIGNA*, 2006 WL 2433779, at *5 ("the prohibitive expense of maintaining individual actions would likely prevent many individuals from asserting their claims against the Defendants-a clear departure from the underlying rationale and operation of the federal securities laws"); *Rosen v. Fid. Fixed Income Tr.*, 169 F.R.D. 295, 301 (E.D. Pa. 1995) ("class certification remains a desirable method of seeking redress under the securities laws, particularly where, as here, a large number of individuals [allegedly] have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf") (alteration in original).

(finding superiority where "[t]here is no other ongoing litigation surrounding the decline of Herley stock based on its alleged misrepresentations").

Third, concentrating the litigation of this action in this forum is desirable to avoid wasting judicial resources litigating actions based on the same operative facts. *CIGNA*, 2006 WL 2433779, at *5 (finding superiority because "[t]he need for efficient use of judicial resources dictates the propriety and desirability of resolving common issues in one action"). This Court has already expended judicial resources in overseeing this Action through the motion-to-dismiss stage and into discovery. Additionally, litigating this case as a class action will eliminate the possibility of inconsistent rulings across several jurisdictions. *See Merck & Co., Inc., Vytorin/Zetia*, 2012 WL 4482041, at *8 ("Further, given the amount of Class members, individually litigating these matters could certainly raise the possibility of conflicting outcomes").

Fourth, "[b]ecause of the predominance of the core issues in the case, the case is well manageable as a class action." *Silvis*, 2018 WL 1010812, at *6. Indeed, federal securities class actions are routinely certified and raise no unusual manageability issues and this case is no different. Moreover, this case is a straightforward securities action, and cases of this nature are routinely certified as class actions. *Herley Indus. Inc.*, 2009 WL 3169888, at *14 (finding superiority because "[t]his case is, at its core, a straightforward securities class action that does not raise any concerns about management difficulties"). Thus, there is no reason to expect that counsel cannot manage this litigation.

"Ultimately, common questions predominate in this litigation and resolution of the claims via class action is superior to individual law suits." *Silvis*, 2018 WL 1010812, at *6. Even more, for the sole purposes of settlement, Defendants do not dispute that the Settlement Class should be

certified in accordance with Rule 23(b)(3). Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

**F. Ascertainability**

While not an explicit requirement under Rule 23, "the Third Circuit recognizes that an essential prerequisite of a class action, at least with respect to actions [proceeding] under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *McIntyre v. RealPage, Inc.*, No. Civ.A. No. 18-3934, 2020 WL 5017612, at *8 (E.D. Pa. Aug. 25, 2020) (alteration in original). To demonstrate ascertainability at class certification, a plaintiff need only show that: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), as amended (Apr. 28, 2015). Importantly, this does not require "that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Id.*

The proposed Class consists of all persons and entities who purchased or otherwise acquired HCSG common stock during the Settlement Class Period and were damaged thereby. Members of the Settlement Class will be identified utilizing shareholder records maintained by HCSG and its agents as when as widespread notice to investors and nominees, which satisfies Rule 23's ascertainability requirement.[20] Accordingly, the proposed Settlement Class is readily ascertainable.

[20] *See* Walter Decl. ¶ 6; *see also Byrd*, 784 F.3d at 169 (where "[t]here are 'objective records' that can 'readily identify' … class members," the ascertainability requirement is satisfied); *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 85 (S.D.N.Y. 2018) (holding that membership in securities classes is "easily ascertained by objective documentation"), *leave to appeal denied*, No. 18-3036, 2019 WL 1612904 (2d Cir. Feb. 20, 2019); *In re Urban Outfitters, Inc. Sec. Litig.*,

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

Lead Counsel requests the Court appoint A.B. Data as Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms and to administer the Settlement. *See* Egan Decl. ¶ 37. As set forth in the Walter Declaration, A.B. Data is a well-regarded class action claims administrator with significant experience in securities class action claims administration. Walter Decl. ¶ 3 & Ex. A.

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *Silvis*, 2018 WL 1010812, at *7 (quoting *Prudential*, 148 F.3d at 306). Two provisions are required under Rule 23, both of which are met here.

First, class members must be given the best notice practicable under the circumstances. Rule 23(c)(2)(B). "Specifically, the Rule provides that such notice must, in clear, concise and plain language, state: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) the class member's right to enter an appearance by an attorney; (5) the class member's right to be excluded from the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of settlement on class members." *Silvis*, 2018 WL 1010812, at *7 (citing Fed. R. Civ. P. 23(c)(2)(B)).

---

No. 13-5978, 2016 WL 1043014, at *4 (E.D. Pa. Feb. 29, 2014) ("[A]s the identity of the Class Members can be determined through their registered shares, the Class members are readily ascertainable.").

Second, under Rule 23(e)(1), all members of the class must be notified of the terms of any proposed settlement. "This notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Silvis*, 2018 WL 1010812, at *7.

Here, the parties have negotiated the form of notice to be disseminated to all Persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort. *See* Walter Decl. ¶¶ 4-9. The parties will also supplement the mailed Notice with a Summary Notice to be published in *Investor's Business Daily* and with a website providing full information. *Id.* ¶¶ 10-11. The Notice, Claim Form, and Summary Notice are attached to the Stipulation as Exhibits A-1, A-2, and A-3, respectively.

The proposed "long form" Notice contains all of the information required by Fed. R. Civ. P. 23 and by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Notice apprises Settlement Class Members of the nature of the Action, the definition of the Class, the claims and issues in the litigation, and the claims that will be released. *See* Stipulation Ex. A-1 (Notice) at 4-16; *see also* Walter Decl. ¶¶ 4, 12. The Notice advises that a Settlement Class Member may enter an appearance through counsel if desired, describes the binding effect of a judgment, states the procedures and deadlines for Settlement Class Members to exclude themselves or object to the settlement, describes the proposed Plan of Allocation, explains the requested attorney fees and Litigation Expenses; states the procedures and deadline for submitting a Claim Form; and provides the date, time, and location of the final Settlement Hearing. *See* Stipulation Ex. A-1 (Notice) at 4-21. The Notice also satisfies the PSLRA's separate disclosure requirements, 15 U.S.C. § 78u-4(a)(7). It provides the amount of the settlement to be distributed in the aggregate and on an

average per-share basis; information about the request for attorney's fees and costs; identification of Lead Counsel, and reasons for the settlement. *Id.*

Thus, the proposed notice plan in this case meets and exceeds the requirements of due process, Rule 23 and the PSLRA, and is typical of notice plans in similar securities actions. For these reasons, the notice program should be approved by the Court.

## VI. PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing, as set forth in the Preliminary Approval Order filed herewith:

| EVENT | PROPOSED TIMING |
|---|---|
| Notice mailed to the Settlement Class (the "Notice Date") | 21 calendar days after the Preliminary Approval Order is entered |
| Summary Notice published | 7 calendar days from the Notice Date |
| Date by which to file papers in support of the proposed Settlement, Plan of Allocation and request for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Last day for Settlement Class Members to opt-out or object to the proposed Settlement | 21 calendar days prior to the Settlement Hearing |
| Date by which to file reply papers in response to objections or comments to the proposed Settlement, Plan of Allocation, or request for attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Last day for Settlement Class Members to file Proof of Claim and Release forms | 120 days from the Notice Date |
| Settlement Hearing Date | No earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. |

//

//

//

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order.

DATED: June 30, 2021

**BERMAN TABACCO**

*/s/ Patrick T. Egan*
Patrick T. Egan (*Pro Hac Vice*)

One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com

**BERMAN TABACCO**
Nicole Lavallee (*Pro Hac Vice*)
Jeffrey Rocha (*Pro Hac Vice*)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
jrocha@bermantabacco.com

*Counsel for Lead Plaintiff Utah Retirement Systems & Lead Counsel for the Class*

and

**SCHNADER HARRISON SEGAL & LEWIS LLP**
Ira Neil Richards
Arleigh P. Helfer III
1600 Market Street, Ste. 3600
Philadelphia, PA 19103
Telephone: (215) 751-2503
Facsimile: (215) 751-2205
Email: irichards@schnader.com
ahelfer@schnader.com

*Counsel for Lead Plaintiff Utah Retirement Systems & Liaison Counsel for the Class*

**CERTIFICATE OF SERVICE**

I certify that on the 30th of June, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ Patrick T. Egan*
Patrick T. Egan