**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UTAH RETIREMENT SYSTEMS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHCARE SERVICES GROUP, INC., DANIEL P. MCCARTNEY, THEODORE WAHL, JOHN C. SHEA, and MATTHEW J. MCKEE, <br><br> Defendants. | Case No. 2:19-cv-01227-ER |

**DECLARATION OF PATRICK T. EGAN IN SUPPORT OF
LEAD PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER:
(I) PRELIMINARILY APPROVING PROPOSED CLASS ACTION SETTLEMENT;
(II) PRELIMINARILY CERTIFYING THE SETTLEMENT CLASS; AND
(III) APPROVING NOTICE TO THE SETTLEMENT CLASS**

I, Patrick T. Egan, declare:

1.      I am a partner in the Boston office of Berman Tabacco, the Court-appointed Lead Counsel for Lead Plaintiff Utah Retirement Systems ("Lead Plaintiff" or "URS") and the proposed class counsel in the above-captioned matter.  As a result of my own substantial personal involvement in this litigation, I have personal knowledge of the facts set forth in this declaration. I submit this declaration in support of Lead Plaintiff's Unopposed Motion for an Order: (I) Preliminarily Approving Proposed Class Action Settlement; (II) Preliminarily Certifying The Settlement Class; and (III) Approving Notice To The Settlement Class.[1]

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated June 29, 2021 (the "Stipulation"), attached hereto as Exhibit 1.

2.      The purpose of this declaration is to summarize the factual and procedural history of this Action, including the investigation and filing of this litigation, motion to dismiss proceedings, class certification proceedings, discovery, and settlement negotiations.

3.      This matter commenced on March 22, 2019 with the filing of the initial complaint, styled as *Stephen Koch v. Healthcare Services Group, Inc., and Theodore Wahl.*, Case No. 2:19-cv-01227-ER.  (ECF No. 1.)

4.      On June 17, 2019, this Court appointed URS as Lead Plaintiff for the class and approved Lead Plaintiff's choice of the law firms of Berman Tabacco as Lead Counsel and Schnader Harrison Segal & Lewis LLP as Liaison Counsel for the class.  (ECF No. 24.)

5.      Since the inception of this case, my firm has aggressively investigated and prosecuted the claims in this Action on behalf of the class.  My firm has investigated potential claims by, among other things, reviewing news articles, analyst reports, and other publicly available information concerning the allegations and interviewing a number of former Healthcare Services Group, Inc. employees; researched and analyzed potential claims; drafted the Amended Complaint; successfully opposed Defendants' motion to dismiss and motion for reconsideration; consulted with our experts/consultants on topics of market efficiency, loss causation, damages and accounting; and conducted discovery.  As detailed in my firm's resume, Berman Tabacco has been prosecuting complex securities class actions, like this one, since 1982.  Berman Tabacco has prosecuted and will continue to prosecute this Action vigorously on behalf of Lead Plaintiff and the proposed class, representing the interests of the class fairly and adequately, and will continue to commit the resources necessary to resolve this case on the best terms possible for members of the Settlement Class.

6.    The Defendants in this matter, Healthcare Services Group, Inc. ("HCSG"), Daniel P. McCartney, Theodore Wahl, John C. Shea ("Shea"), and Matthew J. McKee (collectively, "Defendants"), have been represented by experienced defense counsel who have contested this matter and defended it well from the outset.

7.    On September 17, 2019, after extensive investigation by Lead Counsel, Lead Plaintiff filed an Amended Class Action Complaint for Violations of the Federal Securities Laws alleging violations of §§10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") (the "Amended Complaint"), which is the operative complaint in this Action.  (ECF No. 31.)

8.    On November 18, 2019, Defendants filed their motion to dismiss the Amended Complaint.  (ECF No. 33.)  Lead Plaintiff thereafter opposed Defendants' motion on January 17, 2020 (ECF No. 38) and, on April 24, 2020, the Court denied Defendants' motion (ECF No. 42.) On May 8, 2020, Defendants moved for reconsideration of the motion to dismiss (ECF No. 45), which Lead Plaintiffs Opposed (ECF No. 46).  The Court entered an Order denying this motion on July 13, 2020 (ECF No. 51).

9.    On June 8, 2020, the parties exchanged their initial disclosures.

10.    Defendants filed their Answer and Affirmative Defenses to the Amended Complaint on June 22, 2020.  (ECF No. 47.)

11.    On July 23, 2020, the Parties submitted their Joint Rule 26(f) Report along with a Proposed Case Management Plan.  (ECF No. 53.)

12.    On July 27, 2020, the Court held an initial pre-trial conference and, on August 11, 2020, the Court entered a First Scheduling Order on Class Certification imposing a schedule regarding the class certification aspects of the case, bifurcating discovery, and ordering the

Defendants to produce certain materials previously provided to the U.S. Securities and Exchange Commission ("SEC"), pursuant to an agreement of the parties.  (ECF No. 59.)

13.    Counsel for the parties held several conferences to negotiate proposed protective orders and discovery protocols.  On July 28, 2020, the Court issued two Orders approving the Parties' Stipulated Protective Order (ECF No. 56) and Joint Discovery Protocol (ECF No. 57), and, on September 11, 2020, the Court issued an Order approving the Parties' Stipulated Qualified Protective Order governing protected health information (ECF No. 60).

14.    Thereafter, the parties commenced authorized discovery, including: Defendants' production to Lead Plaintiff of over 60,000 documents (including over 450,000 produced pages), Lead Plaintiff's production to Defendants of 665 documents (totaling approximately 11,209 pages of materials), Defendants' service on Lead Plaintiff of twelve (12) written interrogatories and Lead Plaintiff's objections and responses thereto and Lead Plaintiff's service upon Defendants of one (1) written interrogatory (containing four (4) subparts), and Defendants' objections and responses thereto.

15.    In connection with the above-referenced discovery, counsel for the parties exchanged numerous meet and confer letters and held several telephonic conferences to discuss the nature and scope of the parties' requests, objections, and responses.

16.    In addition, Defendants subpoenaed 2,412 documents (totaling 9,485 pages of materials) from Lead Plaintiff's investment advisor Wasatch Global Investors, and 496 documents (totaling 1,071 pages) from third-party Callan Associates Inc.

17.    On November 13, 2020, Lead Plaintiff moved for class certification, supported with an expert report.  (ECF No. 61.)

18.     On December 3, 2020, following several weeks of negotiation, the parties submitted, and the Court approved, a Stipulated Remote Deposition Protocol to address the constraints of the COVID-19 pandemic on in-person depositions.  (ECF No. 62.)

19.     Thereafter, Defendants deposed URS's Rule 30(b)(6) designee, the Rule 30(b)(6) designees of URS's money manager Wasatch Global Investors and Plaintiff's expert, Dr. Zachary Nye. Ph.D.

20.     Defendants filed their opposition brief and expert report on January 27, 2021. (ECF No. 63) and, on February 25, 2021, Lead Plaintiff deposed Defendants' class certification expert, Stephen Choi.

21.     In early February 2021, the parties discussed the possibility of mediation and selected a nationally recognized mediator, Robert A. Meyer, Esquire, to mediate a possible settlement of this Action.  Robert A. Meyer is a mediator with JAMS with over twelve years' experience in mediating complex commercial disputes, including securities class actions brought under the PSLRA.  *See* https://www.jamsadr.com/meyer/.

22.     On February 10, 2021, shortly after the Parties began to discuss mediation, HCSG issued a press release announcing quarterly results, revenue guidance and concerns over lingering Covid-related issues.  In addition, the Company provided an update on the ongoing SEC investigation, stating, "The Company and the SEC have recently commenced discussions regarding a potential resolution of the investigation, which focuses on periods prior to 2018." The Company further announced that in conjunction with those discussions, defendant Shea "is taking a temporary leave of absence from his duties."

23.     On March 12, 2021, the parties exchanged detailed mediation statements setting forth their positions on liability and damages.

24.     On March 17, 2021, the parties engaged in intensive, arm's-length settlement negotiations under the close supervision of Mr. Meyer and reached an agreement to settle the Action for $16,800,000, subject to approval by this Court.

25.     Both before and after filing the Amended Complaint, Lead Plaintiff, through Lead Counsel, undertook a thorough investigation, including, *inter alia*: (a) interviews with numerous former employees of HCSG; (b) consultation with an accounting consultant and with a loss causation and damages consultant for the purpose of accessing causation and potential damages; (c) detailed reviews of HCSG's public filings, annual reports, press releases, and other public statements; (d) review of analysts' reports and articles in the financial press relating to HCSG; (e) research of the applicable law with respect to the claims asserted in the Amended Complaint and the potential defenses thereto; and (f) legal research and briefing both in preparing a motion for class certification and in opposition to Defendants' motion to dismiss.

26.     In addition, Lead Counsel have also consulted extensively with its loss causation/damages expert with regard to the claims asserted in the Amended Complaint to support its motion for class certification and to prepare the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), which is described in the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), attached hereto as Exhibit 1.A-1.

27.     To estimate price inflation during the Settlement Class Period, Lead Plaintiff's damages consultant performed an event study of the alleged corrective events, and Company-specific returns on each date were estimated using a regression analysis, which measures the relationship between HCSG stock returns and (i) changes in market-wide factors that would be expected to impact all stocks; and (ii) changes in industry-wide factors that would be expected

to impact stock in HCSG's sector.  Then, the Company-specific returns (*i.e.*, net of market and industry effects) observed on each alleged corrective event date formed the basis of the estimate of price inflation present during the Settlement Class Period, subject to modification based on the market reaction to any confounding news released on the same dates.  Then, to estimate aggregate class-wide damages under Section 10(b), the timing and quantity of investor transactions in HCSG common stock during the Settlement Class Period were estimated using the proportional "80/20 Multi-Trader Model," which posits two active traders with different holdings and propensities to trade. The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (*i.e.*, they hold 80% of the shares available, but trade 20% of the volume) and a small set of "fast" traders (*i.e.,* they hold 20% of shares available, but trade 80% of the volume).  Applying the theory of per-share damages to the daily trading behavior predicted by the 80/20 Multi-Trader Model aggregate damages under Section 10(b) are estimated to be as much as $263.0 million, based on 59.1 million damaged shares.

28.     Based on these estimates, the $16.8 million recovery under the proposed Settlement constitutes approximately 6.4% of the Class's maximum likely recoverable damages, assuming Lead Plaintiff prevailed on all claims against the Defendants and certified the broader Settlement Class Period.

29.     Given the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict, Lead Counsel believes that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.  Based on their experience and close knowledge of the facts and applicable law and defenses, Lead Counsel and Lead Plaintiff have determined that the Settlement is in the best interest of the

Settlement Class.  As described below, at the time the Settlement was reached, there were sizable risks facing Lead Plaintiff with respect to establishing both liability and damages.

30.    In agreeing to settle, Lead Plaintiff and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving materiality, falsity, and damages; (ii) the difficulties in overcoming Defendants' challenges to class certification and truth on the market defense, uncertainty surrounding any effort to expand the Class Period, and the delays involved in the inevitable appeals of certification; (iii) the fact that, even if Lead Plaintiff prevailed at summary judgment and trial, any monetary recovery could have been less than the Settlement Amount and the delays that would follow even a favorable judgment including appeals.  For example, Defendants maintain that they made no actionable misrepresentations; that any alleged "rounding" of earnings per share ("EPS") was known and immaterial to investors years before the close of the Class Period or Settlement Class Period; that Defendants did not act with the requisite scienter; that Defendants were under no obligation to disclose the existence of the SEC investigation any earlier than they did and that Lead Plaintiff and the class were not damaged.  Moreover, Defendants maintain that the Action could not be certified as a class because Lead Plaintiff's damages model could not adequately account for different theories of liability purportedly impacting different portions of the class and that URS's asset manager did not rely on the alleged actionable misrepresentations.  Defendants further argued that, even if a class could be certified, the Class Period could not extend past March 22, 2017 when short-seller Monocle Accounting Research issued a report noting that HCSG regularly met consensus EPS targets for more than a decade.

31.    Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues ranging from accounting, loss causation, and damages.  If the trier of

fact finds Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims. Moreover, if the trier of fact is persuaded by Defendants' truth-on-the market defense—that the fraud was revealed early in the Class Period when Monocle released its first report in March of 2017—this could potentially reduce the total compensable pool of damages to near zero.

32.    Lead Counsel intends to request an attorney fee award no greater than 25% of the settlement amount (approximately $4,200,000).

33.    The Plan of Allocation assumes that the price of HCSG common stock was artificially inflated throughout the Settlement Class Period. The computation of the estimated alleged artificial inflation in the price of HCSG common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff. The Plan of Allocation sets forth Recognized Loss estimates based on Lead Plaintiff's determination, based on consultation with its damages consultant, that corrective disclosures removed artificial inflation from the price of HCSG common stock on March 4, 2019 and February 10, 2021 (the "Corrective Disclosure Dates"). Thus, in order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, HCSG common stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.

34.    For the first corrective disclosure, Lead Plaintiff's damages consultant determined that all of the Company-specific price decline on March 4, 2019 represented the elimination of inflation in the stock price related to the alleged fraud. For the second, however, the Company announced several things in its February 10, 2021 earnings release, including worse-than-expected revenue guidance and concerns over lingering Covid-related issues. These concerns,

not the update on the SEC investigation, were the primary focus of securities analysts' reports, according to Lead Plaintiff's damages/loss causation consultant. Thus, based on consultation with its consultant, Lead Counsel determined that only 25% of the stock price decline on February 10, 2021, or roughly $0.75 per share, represented the elimination of inflation in the stock price related to the alleged fraud.

35.    Under the Plan of Allocation, persons and entities who purchased HCSG stock during the Class Period are potentially eligible to share in the distribution of the Net Settlement Fund, if they submit valid claim forms. The Plan of Allocation describes the method of calculating each Claimant's Recognized Loss for each share of HCSG purchased during the Settlement Class Period, as well as their *pro rata* share of the Net Settlement Fund. Specifically, the Net Settlement Fund is to be allocated in proportion to the Recognized Loss calculated by the Claims Administrator for each Authorized Claimant. Each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, and multiplied by the total amount in the Net Settlement Fund.

36.    The per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that Lead Plaintiff's damages consultant calculated for litigation purposes and as the estimated maximum amounts of damages Settlement Class Members could likely recover at trial. Thus, I am informed and believe that the Plan of Allocation provides an equitable and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund among Claimants who suffered economic losses as a result of the alleged fraud.

37.    After a competitive bidding process, Lead Plaintiff has retained an experienced Claims Administrator, A.B. Data, Ltd.  *See* Declaration of Adam D. Walter of A.B. Data, Ltd., attached hereto as Exhibit 5.

38.    I have been informed by counsel for Defendants that Defendants do not oppose this motion.  Defendants take no position on any of the calculations contained in this declaration, including Lead Counsel's calculations of likely recoverable damages under the Plan of Allocation, average distribution per share, attorneys' fees per share or estimated administration costs.

39.    Attached hereto are true and correct copies of the following documents:

    a.  Exhibit 1: Stipulation and Agreement of Settlement;

        i.  Exhibit A: [Proposed] Order Preliminarily Approving Settlement and Providing for Notice;

        ii.  Exhibit A-1:  Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses;

        iii.  Exhibit A-2: Proof of Claim and Release Form;

        iv.  Exhibit A-3: Summary Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses;

        v.  Exhibit B: [Proposed] Final Judgment and Order of Dismissal With Prejudice;

b.  Exhibit 2: Declaration of Kevin Catlett on Behalf of Utah Retirement Systems in Support of Motion for Preliminary Approval of Class Action Settlement;

c.  Exhibit 3: Firm resume of Berman Tabacco;

d.  Exhibit 4: Firm resume of Schnader Harrison Segal & Lewis LLP;

e.  Exhibit 5: Declaration of Adam D. Walter of A.B. Data, Ltd. Regarding Notice and Administration; and

f.  Exhibit 6: Cornerstone Research, Securities Class Action Settlements: 2020 Review and Analysis.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at Boston, Massachusetts, on June 30, 2021.


/s/Patrick T. Egan
Patrick T. Egan

## **CERTIFICATE OF SERVICE**

I certify that on the 30th of June, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

/s/ Patrick T. Egan

Patrick T. Egan