**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UTAH RETIREMENT SYSTEMS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>HEALTHCARE SERVICES GROUP, INC., DANIEL P. MCCARTNEY, THEODORE WAHL, JOHN C. SHEA, and MATTHEW J. MCKEE,<br><br>    Defendants. | Case No. 2:19-cv-01227-ER |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN**
**OF ALLOCATION AND CERTIFICATION OF SETTLEMENT CLASS**

Ira Neil Richards (PA Bar No. 50879)
Arleigh P. Helfer III (PA Bar No. 84427)
1600 Market Street, Ste. 3600
**SCHNADER HARRISON SEGAL & LEWIS LLP**
Philadelphia, PA 19103
Telephone: (215) 751-2503

*Counsel for Lead Plaintiff Utah Retirement Systems & Liaison Counsel for the Class*

| | |
|---|---|
| Nicole Lavallee (*Pro Hac Vice*) | Patrick T. Egan (*Pro Hac Vice*) |
| Jeffrey Rocha (*Pro Hac Vice*) | Steven J. Buttacavoli (*Pro Hac Vice*) |
| **BERMAN TABACCO** | **BERMAN TABACCO** |
| 44 Montgomery Street, Suite 650 | One Liberty Square |
| San Francisco, CA  94104 | Boston, MA 02109 |
| Telephone: (415) 433-3200 | Telephone: (617) 542-8300 |

*Counsel for Lead Plaintiff Utah Retirement Systems & Lead Counsel for the Class*

Dated:  December 3, 2021

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     SUMMARY OF THE LITIGATION ..................................................................... 3

III.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS
        REQUIREMENTS, RULE 23, THE PSLRA, AND IS REASONABLE ......................... 6

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL................................................ 8

        A.    The Settlement Meets the Legal Standards Governing Approval ......................... 8

              1.    Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately
                    Represented the Class ................................................................................ 10

              2.    Rule 23(e)(2)(B): The Settlement is the Result of Arm's-length
                    Negotiation Between Experienced Counsel.............................................. 11

              3.    Rule 23(e)(2)(C): The Settlement is Adequate ....................................... 13

                    a)    Rule 23(e)(2)(C)(i): The Substantial Benefits for the Class,
                          Weighed Against the Inherent Risks of Litigation Support
                          Preliminary Approval..................................................................... 13

                    b)    Rule 23(e)(2)(C)(ii): The Proposed Method of Distributing Relief
                          to the Settlement Class is Effective ............................................. 16

                    c)    Rule 23(e)(2)(C)(iii): The Request for Attorneys' Fees is
                          Reasonable ..................................................................................... 17

                    d)    Rule 23(e)(2)(C)(iv): There Are No Side Agreements Other Than
                          With Respect to Opt-Outs............................................................. 17

              4.    Rule 23(e)(2)(D): All Settlement Class Members Are Treated Equitably 18

        C.    The Remaining *Girsh* Factors Further Support Preliminary Approval ................ 20

              1.    The Reaction of the Settlement Class to the Settlement ........................... 20

              2.    The Stage of the Proceedings................................................................... 20

              3.    The Risk of Maintaining the Class Action Through Trial ........................ 21

              4.    Defendants' Ability to Withstand a Greater Judgment............................. 22

              5.    The Settlement Amount is Reasonable Considering the Range of Possible
                    Recoveries................................................................................................. 22

              6.    The Relevant *Prudential* Considerations Also Support Approval of the
                    Settlement ................................................................................................. 24

V.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION........................... 25

VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 26

VII.   CONCLUSION....................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Alves v. Main*,
No. 01-cv-789-DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012),
*aff'd*, 559 F. App'x 151 (3d Cir. 2014) ........................................................................ 12

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018) ........................................................................................ 22

*Boyd v. Coventry Health Care, Inc.*,
299 F.R.D. 451 (D. Md. 2014) ...................................................................................... 25

*Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
513 F. Supp. 2d 322 (E.D. Pa. 2007) ........................................................................... 22

*Devlin v. Ferrandino & Son, Inc.*,
No. CV 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) ...................................... 12

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ........................................................................................... 8

*Gen. Motors Corp. Pick-up Truck Fuel Tanks Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ....................................................................................... 8, 20

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .................................................................................... passim

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ........................................................................................... 6

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................. 17

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................... 19, 25

*In re Ikon Office Sols. Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................... 25

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012) .............................................................................. 21

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
No. CIV.A. 08-CV-285-DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ....................... 20

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) ................................................................................... 6, 8, 21

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................... 25

*In re Par Pharm. Sec. Litig.*,
No. CIV.A 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ................................ 18

*In re Platinum & Palladium Commodities Litig.*,
No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ........................................ 27

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F. 3d 283 (3d Cir. 1998) .............................................................. 9, 10, 21, 24

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................... 13, 14, 21

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02-168 WHW, 2008 WL 906254 (D.N.J. Mar. 31, 2008) ....................................... 14

*In re Viropharma Inc. Sec. Litig.*,
No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ........................................ 12

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .............................................................. 8, 18, 22

*In re Wilmington Tr. Sec. Litig.*,
No. 10-CV-0990-ER, 2018 WL 6046452 (D. Del. Nov. 19, 2018) .............................. 8, 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) .......................................................................... 6

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ................................................................ 18

*Schuler v. Medicines Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 23, 2016) ............................... 11

*Sudunagunta v. NantKwest, Inc.*,
No. CV 16-1947-MWF (JEMx), 2019 WL 2183451 (C.D. Cal. May 13, 2019) ............. 12

*Sutton v. Med. Serv. Ass'n of Pa.*,
No. CIV. A. 92-4787, 1994 WL 246166 (E.D. Pa. June 8, 1994) ..................................... 8

**Rules**

Fed. R. Civ. P. 23(e) .......................................................................................... 10

Fed. R. Civ. P. 23(e)(2) .................................................................................. 8, 9

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(i)................................................................................................. 20

Fed. R. Civ. P. 23(e)(2)(C)(ii)............................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................. 17

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................... 18

Court-appointed Lead Plaintiff Utah Retirement Systems ("URS" or "Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and for Certification of the Settlement Class.[1]

## I.    PRELIMINARY STATEMENT

Lead Plaintiff, on behalf of itself and the Settlement Class, seeks final approval of the proposed class action Settlement with Defendants.[2]  The Settlement before the Court provides for a $16,800,000 cash recovery for the benefit of the Settlement Class[3] in exchange for the dismissal of all claims asserted in this Action and full release of claims against Defendants and the other Released Persons.  If approved, the Settlement would provide the Settlement Class with a substantial, immediate concrete benefit and avoid the protracted risks and uncertainties inherent in complex securities class action litigation.  The Stipulation is the result of extensive arm's-length negotiations between highly experienced counsel, which included a full-day mediation session before Robert A. Meyer, a nationally recognized mediator.

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement (with attachments thereto), dated June 29, 2021 and filed on June 30, 2021 ("Stipulation") (ECF No. 70-4), or in the Declaration of Patrick T. Egan in Support in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Certification of Settlement Class, and (2) Lead Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses and Award to Lead Plaintiff Pursuant To 15 U.S.C. § 78u-4(A)(4) ("Egan Declaration" or "Egan Decl."), filed contemporaneously herewith.  Unless otherwise indicated, all emphasis is added and all alterations, internal quotation marks and citations are omitted.

[2] "Defendants" are Healthcare Services Group, Inc. ("HCSG" or the "Company"), Daniel P. McCartney ("McCartney"), Theodore Wahl ("Wahl"), John C. Shea ("Shea"), and Matthew J. McKee ("McKee").

[3] For purposes of settlement only, the Settlement Class is defined as all Persons who purchased or otherwise acquired the common stock of HCSG between April 8, 2014 through February 9, 2021, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby.

Lead Plaintiff secured the Settlement due to its vigorous efforts over the course of over two years of hard-fought litigation. These efforts included, *inter alia*: (i) interviews with former HCSG employees; (ii) extensive consultation with, and analysis by, damages and accounting consultants; (iii) detailed reviews of HCSG's public filings, annual reports, press releases, and other publicly available information; (iv) review of analysts' reports and articles relating to HCSG; (v) extensive briefing of the asserted claims both in opposing Defendants' motion to dismiss and in preparing a motion for class certification; (vi) issuance of discovery and meet and confers; (vii) review of thousands of documents produced in discovery; (viii) five depositions, including expert depositions; and (viii) research of the applicable law with respect to the claims asserted in the Amended Complaint and the potential defenses thereto. *See, e.g.*, Egan Decl. ¶¶ 6, 18-32. Based upon their experience, their evaluation of the facts and applicable law, their recognition of the substantial amount provided under the Settlement, and of the risks and expenses of protracted litigation against Defendants, Lead Counsel and Lead Plaintiff submit that the proposed Stipulation is an excellent result and in the best interests of the Settlement Class.

On September 15, 2021, this Court preliminarily approved the Settlement, certified the Settlement Class, and approved the notice program to the Settlement Class. *See* ECF No. 72 (the "Preliminary Approval Order"). To date, while the deadline to submit objections to the Settlement and requests for exclusion from the Settlement Class has not passed, no Settlement Class Member has objected to the Settlement or Plan of Allocation, and the Court-appointed Claims Administrator has not received any requests for exclusion.[4] *See* Egan Decl. ¶¶ 11, 80.

---

[4] Pursuant to the Preliminary Approval Order, requests for exclusion and objections must be received by December 17, 2021. *See* ECF No. 72 at 7-8. Should any requests for exclusion or objections be received after the date of this submission, they will be addressed in Lead Plaintiff's reply papers that are due to be filed by January 3, 2021. *See id*. at 9.

Lead Plaintiff submits that the Settlement readily meets the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure and is a fair, reasonable, and adequate result for the Settlement Class and respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION

The accompanying Egan Declaration details the background of this case and the Settlement.  A summary of the litigation and settlement of this Action is provided below.

Lead Plaintiff alleges that Defendants engaged in a long-term pattern of misleading investors into believing that the Company legitimately met or beat Wall Street analysts' consensus estimates for the Company's earnings per share ("EPS") by manipulating net income and EPS to ensure the Company consistently met analyst expectations.  *See* Amended Class Action Complaint for Violations of the Federal Securities Laws alleging violations of §§10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Amended Complaint") (ECF No. 31).  Lead Plaintiff further alleges that, once Defendants' conduct drew the attention of the U.S. Securities and Exchange Commission ("SEC"), Defendants continued to hide from investors its past conduct and an ongoing SEC investigation into the Company's EPS practices.  Defendants only revealed the existence of the SEC investigation on March 4, 2019, when it also announced that Company was conducting its own internal investigation.  In response, the price of HCSG's stock fell by more than 13%.  *Id.* ¶¶ 15, 280, 343; Egan Decl. at ¶ 14.  Then, on February 10, 2021, shortly after the parties began to discuss mediation, the Company issued a press release announcing, in part, that the Company and the SEC had recently commenced discussions regarding a potential resolution of the investigation and that, in conjunction with those discussions, Defendant Shea had notified the Company that he would be taking a temporary leave of absence from his duties.  *See* Egan Decl. ¶¶ 15, 34.  This news led to a further decline in the price of HCSG's common stock.  *See id.*

This securities fraud class action commenced on March 22, 2019 with the filing of the initial complaint, styled as *Stephen Koch v. Healthcare Services Group, Inc., and Theodore Wahl.*, Case No. 2:19-cv-01227-ER. *See* Egan Decl. ¶ 16. Thereafter, on May 21, 2019, URS filed a Motion for Appointment as Lead Plaintiff and Approval of its Selection of Counsel. By order dated June 17, 2019, this Court appointed URS as Lead Plaintiff and approved Lead Plaintiff's choice of the law firms of Berman Tabacco as Lead Counsel ("Berman Tabacco") and Schnader Harrison Segal & Lewis LLP ("Schnader") as Liaison Counsel for the Class. *See id.* ¶ 17.

On September 17, 2019, after extensive investigation by Lead Counsel, Lead Plaintiff filed the Amended Complaint. *See id.* ¶ 18. On November 18, 2019, Defendants moved to dismiss the Amended Complaint. *See id.* ¶ 19. Lead Plaintiff opposed the motion on January 17, 2020 and, on April 24, 2020, the Court denied Defendants' motion. *Id.* On May 8, 2020, Defendants moved for reconsideration of the motion to dismiss, and the Court entered an Order denying this motion on July 13, 2020. Defendants filed their answers to the Amended Complaint on June 22, 2020. *Id.*

On July 27, 2020, the Court held an initial pre-trial conference and bifurcated class and merits discovery. *See id.* ¶ 23.[5] Following the initial pre-trial conference and, pursuant to a prior agreement reached by the parties, Defendants produced over 60,000 documents, totaling approximately 465,007 pages, including certain materials that the Company had previously disclosed to the SEC in connection with its investigation into Defendants' EPS practices. *See id.* ¶ 26. In addition, Lead Plaintiff and third-parties produced an additional 3,573 documents, totaling

---

[5] During the summer of 2020, the parties exchanged initial disclosures, submitted a Joint Rule 26(f) Report along with a Proposed Case Management Plan, negotiated two confidentiality agreements, propounded written discovery and conferred on numerous occasions regarding the nature and scope of the parties' discovery requests. *See id.* ¶¶ 22-23, 25-27.

4

approximately 21,765 pages of materials. *See id.* ¶¶ 26, 28.

On November 13, 2020, Plaintiff moved for class certification, supported by an expert report. *See id.* ¶ 29; *see also* ECF. No. 61. After taking the depositions of URS, URS's external investment advisor, and Lead Plaintiff's expert, Defendants filed their opposition to class certification and supporting expert report on January 27, 2021. *See id.* at ¶¶ 31-32. Lead Plaintiff deposed Defendants' class certification expert on February 25, 2021. *See id.* at ¶ 32.

In early February, during the briefing on the motion for class certification, the parties first discussed the prospect of mediation. *See id.* ¶ 33. Eventually, the parties agreed to submit the case to mediation before Robert A. Meyer, a national-recognized mediator with vast experience in mediating PSLRA actions. *See id.*

After exchanging detailed mediation statements, the parties participated in an intensive, all-day mediation on March 17, 2021 and reached an agreement in principle to settle the case. *See id.* ¶¶ 35-36. As a result, the parties entered into the Stipulation, whereby Lead Plaintiff agreed to settle this matter in return for a cash payment of $16,800,000 for the benefit of the Settlement Class, and the exchange of mutual releases, subject to this Court's approval. *See id.* ¶ 36.

On September 15, 2021, this Court issued its Preliminary Approval Order, granting preliminary approval of the Settlement, preliminarily certifying of the Settlement Class, and approving the program for providing Notice to the Settlement Class. *See id.* ¶ 38; ECF No. 72. The Claims Administrator has carried out all of the steps set forth in the Preliminary Approval Order, including providing Notice to potential Settlement Class Members. *See* Declaration of Adam D. Walter of A.B. Data , Ltd. Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "A.B. Data Decl.," attached as Ex. 1 to the Egan Declaration, at ¶¶ 3-8). Pursuant to the

5

Preliminary Approval Order, Lead Plaintiff now moves this Court for final approval of the Settlement and Plan of Allocation.

## III. THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS REQUIREMENTS, RULE 23, THE PSLRA, AND IS REASONABLE

To grant final approval of a class action settlement, Fed. R. Civ. P. 23(c)(2) requires the Court to determine that the Settlement Class was provided with the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The notice requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") must also be met. 15 U.S.C. § 78u-4(a)(7). Additionally, due process requires that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). *See also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class."); *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) ("*NFL Players*") (quoting *In re Baby Prods.*, 708 F.3d at 180).

Upon preliminary approval, Lead Counsel and the Claims Administrator implemented the Court-approved notice plan in compliance with Rule 23, the PSLRA, and due process requirements. *See* A.B. Data Decl. at ¶¶ 2-9 & Exs. A-C; Egan Decl. at ¶¶ 38-44. Pursuant to the Court's Preliminary Approval Order, the Notice and Claim Form were sent via U.S. mail on October 6, 2021 to all registered holders of HCSG common stock during the Settlement Class Period, as identified by HCSG's transfer agent, and to a list of the largest and most common banks,

brokers, and other nominees maintained by the Claims Administrator. *See* A.B. Data Decl. a ¶¶ 3-5; Egan Decl. at ¶¶ 38-39. In addition to mailing the Notice, on October 11, 2021, the Summary Notice was published in the national edition of *Investors Business Daily* and in a press release issued on October 11, 2021, both of which included contact information for the Claims Administrator and Lead Counsel, as well as the address of the case-specific Settlement Website. *See* A.B. Data Decl. at ¶ 9; Egan Declaration at ¶ 42.

The Notice apprises Class Members of, *inter alia*, the nature and pendency of the Action, the definition of the Settlement Class, the class claims and issues, the claims that will be released, and that Lead Counsel intends to apply for an award of attorneys' fees not to exceed 25% of the Settlement Amount and for reimbursement of litigation expenses in an amount not to exceed $550,000. Egan Decl. at ¶ 43; A.B. Data Decl. at Ex. A. The Settlement Website, which went online on October 6, 2021, contains copies of the Court-approved Notice and Claim Form, as well as the Stipulation and relevant case filings. A.B. Data Decl. at ¶ 11; Egan Decl. at ¶ 44. This motion, Lead Plaintiff's Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff URS Pursuant to 15 U.S.C. § 78u-4(A)(4) (the "Fee Motion"), filed concurrently herewith, and supporting papers will be posted on the Settlement Website promptly after they are filed. Egan Decl. at ¶ 44.

The Notice and Claim Form have been provided to 159,546 potential Settlement Class Members. A.B. Data Decl. at ¶ 8; Egan Decl. at ¶¶ 38, 41. As of the date of this filing no Settlement Class Member has filed an objection to the Settlement or has requested exclusion from the Settlement.[6] A.B. Data Decl. at ¶ 13; Egan Decl. at ¶¶ 38, 41.

---

[6] The objection deadline is December 17, 2021. Should any objections be filed, URS will respond in its reply papers, which are due to be filed by January 3, 2022.

Accordingly, under the circumstances of this case, the "best notice practicable" was disseminated, satisfying Rule 23, due process, and the PSLRA. *See*, *e.g.*, *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 6046452, at \*4 (D. Del. Nov. 19, 2018) (approving of substantially similar notice program).

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Settlement Meets the Legal Standards Governing Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of class actions. There is, however, a "strong public policy" that is particularly applicable to class actions, "favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). *See also Gen. Motors Corp. Pick-up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Truck*") ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). While the ultimate decision of whether to grant approval of a class action settlement is "left to the sound discretion of the district court," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004), "absent fraud, collusion, or the like, [the Court] should be hesitant to substitute its own judgment for that of counsel," *Sutton v. Med. Serv. Ass'n of Pa.*, No. CIV. A. 92-4787, 1994 WL 246166, at \*5 (E.D. Pa. June 8, 1994). Moreover, a presumption of fairness applies to a proposed settlement that was, as here, reached by experienced counsel after discovery and arm's length negotiations. *See GMC Truck*, 55 F.3d at 785; *NFL Players*, 821 F.3d 436.

Under Rule 23(e), a court must hold a hearing and find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Following the amendment of Rule 23(e) in December 2018, the Court is to consider the following factors for approval:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:
  (i)  the costs, risks, and delay of trial and appeal;
  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In determining whether to grant final approval of class action settlements, courts in the Third Circuit also consider the so-called "*Girsh* factors," many of which overlap with the Rule 23(e)(2) factors. These include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Additionally, courts in the Third Circuit may address certain overlapping considerations set forth in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F. 3d 283 (3d Cir. 1998), where applicable. These include: (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and

9

subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable. *Id.* at 323. While the December 2018 amendment to Rule 23(e) was not intended to "displace" the factors for class action settlements that have been used by courts for decades such as the *Girsh* factors and *Prudential* considerations, the amendment was intended to concentrate the approval analysis "in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee's notes on 2018 amendment.

As demonstrated below, the Settlement complies with Rule 23(e), the *Girsh* factors, and the *Prudential* considerations. Therefore, Lead Plaintiff's motion should be granted.

### 1. Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the Court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class during both the litigation of the Action and its settlement. *See* Egan Decl. at ¶¶ 5-9, 17-37. Lead Plaintiff's claims are typical of the claims of the Settlement Class, and they have no interests adverse to the Settlement Class. To the contrary, Lead Plaintiff's interest in obtaining the largest possible recovery was aligned with all other Settlement Class Members. *See* Declaration of Kevin Catlett on Behalf of Utah Retirement Systems in Support of Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses, attached

10

as Ex. 4 to the Egan Decl. ("Catlett Decl.") ¶¶ 3-4.  Further, Lead Plaintiff retained counsel who are highly experienced in class action litigation and have decades of experience in litigating securities fraud class actions.  *See* Egan Decl. at ¶¶ 46, 74 & Ex. 2.  Moreover, the Settling Parties have been actively litigating this Action since its commencement in early 2019, during which time Lead Counsel has engaged in extensive litigation, referenced above and in the Egan Declaration, related to investigating claims, defeating Defendants' multiple attempts to dismiss the litigation, engaging in document, deposition, and expert discovery, and consulting with damages and accounting consultants.  *See id.* at ¶¶ 6, 16-32.  Accordingly, before the time settlement discussions began, Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses, both factually and legally.  *See id*.  The result of Lead Plaintiff's and Lead Plaintiff's Counsel's efforts is a cash settlement of $16,800,000 that will provide significant relief to the Settlement Class, particularly as compared to the risks of likely protracted litigation.  Lead Plaintiff and Lead Counsel have, therefore, adequately represented the Settlement Class.

### 2.    Rule 23(e)(2)(B): The Settlement is the Result of Arm's-length Negotiation Between Experienced Counsel

Prior to submitting this case to mediation, the parties zealously advocated their positions on Defendants' motion to dismiss and motion for reconsideration, exchanged written discovery, collectively produced and reviewed hundreds of thousands of pages of documents, deposed experts and exhausted considerable resources briefing issues related to class certification.  *See id*. at ¶¶ 6, 18-32, 35-36.  Armed with this information, the parties were well-equipped to consider the strengths and weaknesses of their positions before agreeing to mediation.  *See*, *e.g.*, *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 23, 2016) (noting that "Lead Counsel had ample information to evaluate the prospects for the Class and to assess the

11

fairness of the Settlement" where it had reviewed publicly available information, conducted an extensive investigation, consulted with an expert, drafted the initial and amended complaints, briefed an opposition to defendants' motion to dismiss, and engaged in mediation); *Devlin v. Ferrandino & Son, Inc.*, No. CV 15-4976, 2016 WL 7178338, at *5 (E.D. Pa. Dec. 9, 2016) (noting that "[c]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery").

Moreover, the Stipulation was entered into following an all-day mediation with a well-respected, independent mediator, lending further support to the arm's-length nature of the parties' negotiations. *See In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (the "participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties"); *see also Alves v. Main*, No. 01-cv-789-DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014). Robert A. Meyer is a mediator with JAMS with over twelve years' experience in mediating complex commercial disputes, including securities class actions brought under the PSLRA. *See* Egan Decl. at ¶ 33.[7] There is no evidence of collusion here.

Additionally, Lead Counsel Berman Tabacco has extensive experience litigating securities class actions and Liaison Counsel Schnader has extensive experience litigating complex commercial matters including securities class actions. *See* Egan Decl. at ¶ 74 & Exs. 2-3. As Lead and Liaison Counsel, their judgment that the settlement is fair and reasonable is entitled to

---

[7] *See also Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq.").

considerable weight.  *See Alves*, 2012 WL 6043272, at \*22 ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."); *In re Rent-Way Sec. Litig*., 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (noting that lead counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight").  Similarly, Defendants were well-represented by zealous counsel with deep experience in securities class action.  Thus, there is no disputing that the Stipulation was reached in an arm's-length negotiation.

### 3. Rule 23(e)(2)(C): The Settlement is Adequate

Rule 23(e)(2)(C) of the Federal Rules of Civil Procedure direct the Court to evaluate whether "the relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2)(C).  In this case, the Settlement represents an excellent result for the Settlement Class given the attendant risks associated with continued litigation.  *See* Egan Decl. at ¶¶ 45-52.  Each of the Rule 23(e)(2)(C) factors weigh in favor of approval of the settlement.

#### a) Rule 23(e)(2)(C)(i): The Substantial Benefits for the Class, Weighed Against the Inherent Risks of Litigation Support Preliminary Approval

In assessing the proposed Settlement, Rule 23(e)(2) requires the Court to balance the benefits afforded to the Settlement Class—including the immediacy and certainty of a recovery—against the significant costs, risks and delay of proceeding with the litigation.  Overlapping with Rule 23(e)(2)(C)(i) is the first *Girsh* factor, which considers the complexity, expenses and likely duration of the litigation, and the fourth and fifth *Girsh* factors, which consider the risks of establishing liability and damages.  In this case, the proposed Settlement creates a cash recovery of $16.8 million that provides an immediate and substantial benefit to the Class considering the risks posed by continued litigation.   Lead Plaintiff's damages consultant estimates that total alleged damages during the Class Period were a maximum of $263 million, assuming Lead

13

Plaintiff prevailed on all its legal and damages arguments. *See* Egan Decl. at ¶ 50. As discussed in Section IV.C.5, below, a recovery of $16.8 million therefore represents approximately 6.4% of the estimated maximum alleged damages, in line with median reported values for securities fraud class actions generally and exceeding the Third Circuit's median recovery of 5.2% of damages. *See id*. at ¶ 51. Further, if Defendants prevailed on their arguments, potential recovery could be reduced to zero. For example, if the trier of fact is persuaded by Defendants' truth-on-the market defense—that the fraud was revealed early in the Class Period when a short-seller released a report describing Defendants' EPS rounding practices in March of 2017—this could potentially reduce the total compensable pool of damages to approximately $285,000. *See id*. at ¶ 48.

In evaluating the settlement of securities class actions, courts have repeatedly recognized that such litigation is complex, uncertain, and costly. *See*, *e.g.*, *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d at 501 ("[T]his has been, and will continue to be, a very expensive case to prosecute and defend in light of the complexity of the issues and the necessity for expert witnesses."); *In re Suprema Specialties, Inc. Sec. Litig*., No. 02-168 WHW, 2008 WL 906254, at \*5 (D.N.J. Mar. 31, 2008) (finding complexity of the securities class action supports final approval). This case is no different. Lead Plaintiff's theory of liability and the defenses proffered in response by Defendants have and would continue to require sophisticated analysis of complex financial data and accounting rules before the case may proceed to trial. Indeed, the complexity, expense, and duration of continued litigation through a contested motion for class certification (and likely appeals thereof pursuant to Fed. R. Civ. P. 23(f)), merits and expert discovery, summary judgment, trial, subsequent post-trial motion practice, and a jury verdict would be significant. Barring a settlement, there is no question that this case could be litigated for years, taking a considerable

14

amount of court time and costing hundreds of thousands, if not millions, of additional dollars, with the chance that the end result would be no better for the Settlement Class, and possibly worse.

While Lead Plaintiff believes its case is meritorious, it recognizes that there are significant risks to the Settlement Class. Defendants presented several arguments in their motion to dismiss and against class certification and asserted numerous defenses on the merits. For example, Defendants maintain that they made no actionable misrepresentations, that any alleged "rounding" of EPS was known and immaterial to investors years before the close of the Class Period or Settlement Class Period; that Defendants did not act with the requisite scienter; that Defendants were under no obligation to disclose the existence of the SEC investigation any earlier than they did; and that Lead Plaintiff and the Settlement Class were not damaged. *See* Egan Decl. at ¶ 45. Moreover, Defendants maintain that the action could not be certified as a class action because Lead Plaintiff's damages model could not adequately account for what Defendants contend are different theories of liability purportedly impacting different portions of the class, and that URS's asset manager did not rely on the alleged actionable misrepresentation. *See id.*

Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on topics including accounting, loss causation, and damages. *See* Egan Decl. at ¶ 48. If the trier of fact were to find Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims. As noted above, if the trier of fact is persuaded by Defendants' truth-on-the-market defense, this could potentially reduce the total compensable pool of damages to less than $300,000. *See id.*

While Lead Plaintiff believes that it has strong counterarguments on these points, the fact remains that the Court could have found such arguments persuasive either at class certification, summary judgment, or even at trial, which could significantly reduce or eliminate recoverable

15

damages.  The Settlement therefore provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continued litigation.

### b)    Rule 23(e)(2)(C)(ii): The Proposed Method of Distributing Relief to the Settlement Class is Effective

The Court also must assess the Settlement's "effectiveness of [the] proposed method of distributing relief" to the Settlement Class, "including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  As set forth in Section III, *supra*, and in the A.B. Data Declaration, the method and effectiveness of the proposed notice and claims administration process meet the dictates of Rule 23(e)(2)(C)(ii).  Direct mail notice was provided to all Settlement Class Members who were able to be identified with reasonable effort, supplemented by the publication of the Summary Notice in *Investor's Business Daily*.  *See* A.B. Data Decl. at ¶¶ 3-9. In addition, a settlement-specific website was created, http://www.HCSGSecuritiesLitigation.com, where key documents are posted, including the Amended Complaint, Stipulation, Notice, Claim Form, and the Preliminarily Approval Order.  *Id.* at ¶ 11.

The Notice describes the process for Settlement Class Members to submit a Claim, the Plan of Allocation that the Claims Administrator will use, and how the proceeds of the Settlement will be distributed pursuant to the Plan of Allocation.  *See id*. at Ex. A; ECF No. 72 at Ex. A-1.  The claims process is effective in that it includes a standard Claim Form which requests the information necessary to calculate a Claimant's Claim amount pursuant to the Plan of Allocation.  A.B. Data Decl. at Ex. A.  The Plan of Allocation will govern how Settlement Class Members' Claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  *See id*.; ECF No. 72 at Ex. A-1; Egan Decl. at ¶¶ 53-58.  The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's event

16

study analysis estimating the amount of artificial inflation in the price of HCSG common stock during the Class Period.  *See* Egan Dec. at ¶¶ 50, 53-58.; *see also* Section V, below.

### c)      Rule 23(e)(2)(C)(iii): The Request for Attorneys' Fees is Reasonable

Rule 23(e)(2)(C)(iii) requires that the Court, as part of its overall analysis of the adequacy of the Settlement, consider "the terms of any proposed award of attorney's fees, including [the] timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Under the terms of the Settlement, as described in the Notice provided to Settlement Class Members, and as described in Lead Plaintiff's Counsel's Fee Motion, Class Counsel seeks an award of attorneys' fees not to exceed 25% of the Settlement Fund.  *See* Egan Decl. ¶ 43.  As described in the Fee Motion, the requested fee is consistent with the fee agreement between Lead Counsel and URS which was entered into at the outset of the litigation.  *See* Catlett Decl. ¶ 7.  If awarded, Lead Plaintiff's Counsel's fee will fall within the range of reasonable attorneys' fees generally awarded in this Circuit.  *See In re Wilmington Tr.*, 2018 WL 6046452, at *9 (finding 28% to be a "typical fee percentage" in the Third Circuit) (citing *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *8 (D.N.J. Nov. 28, 2007)).

### d)      Rule 23(e)(2)(C)(iv): There Are No Side Agreements Other Than With Respect to Opt-Outs

Rule 23(e)(2)(C)(iv) requires that the parties identify any side agreements required to be disclosed by Rule 23(e)(3), which requires the identification of "any agreement made in connection with the proposal."  Here, the Parties have entered into a standard supplemental agreement that provides that if Class Members opt out of the Settlement such that the number of shares of HCSG common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement.  Stipulation at ¶ 8.3.  Agreements of this sort are typical in class settlements and, if requested, Lead Plaintiff can submit additional

17

information regarding this agreement *in camera.*[8]  There are no other side agreements between the Parties.

### 4.    Rule 23(e)(2)(D): All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to one another."  Fed. R. Civ. P. 23(e)(2)(D).  "The proposed allocation [of settlement proceeds] need not meet the standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis."  *In re Par Pharm. Sec. Litig.*, No. CIV.A 06-3226 ES, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013).

Lead Counsel, with the assistance of its damages consultant, has proposed a plan for allocating the Settlement proceeds that ensures all Settlement Class Members will be treated equitably relative to their respective losses attributable to Defendants' alleged fraud.  *See* Egan Decl. at ¶¶ 53-58.  The proposed Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members who submit timely and valid Claim Forms demonstrating a loss on their transactions in HCSG common stock purchased or otherwise acquired during the Settlement Class Period and held through at least one of the alleged corrective disclosures.  *See id.* The formula to apportion the Net Settlement Fund among Settlement Class Members, which was developed in consultation with Lead Plaintiff's damages consultant, is based on the estimated amount of artificial inflation in the price of HCSG common stock over the course of the Class

---

[8] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out'"); *see also In re Warfarin*, 212 F.R.D. 231, 253 (D. Del. 2002) ("The notice did not need to include details such as . . . the confidential 'opt-out' threshold beyond which defendant reserved the right to withdraw from the settlement (irrelevant to members' opt-out decision)[.]"), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

Period that was allegedly caused by Defendants' misconduct.[9]  Further, the Plan of Allocation apportions the Net Settlement Fund among Settlement Class Members based on when they purchased, acquired, and/or sold their HCSG common stock, and was created without consideration of Lead Plaintiff's individual transactions.  This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner.  *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a pro rata basis for their recognized losses based largely on when they bought and sold their shares").  Accordingly, the Plan applies equitably to all Settlement Class Members.

*       *       *

Thus, each factor identified under Rule 23(e)(2) is satisfied, warranting final approval of the remarkable $16,800,000 recovery achieved in the Settlement.

---

[9] The Plan of Allocation focuses on two alleged corrective disclosure dates: March 4, 2019, when the Company first announced the existence of the SEC investigation, and February 10, 2021, when the Company provided a further "update" on the investigation and announced that Defendant Shea was taking a temporary leave of absence.  *See* Egan Decl. at ¶¶ 15, 34, 54-55.  For the first corrective disclosure, Lead Plaintiff's damages consultant attributed that *all* of the Company-specific price decline on March 4, 2019 represented the elimination of inflation in the stock price related to the alleged fraud.  For the February 10, 2021 disclosure, the Company announced several things in its earnings release, including worse-than-expected revenue guidance and concerns over lingering COVID-related issues.  As determined by Lead Plaintiff's damages/loss causation consultant, these concerns, not the update on the SEC investigation, were the primary focus of securities analysts' reports.  Thus, Lead Counsel, in consultation with its damages consultant, concluded that only 25% of the stock price decline on February 10, 2021, or roughly $0.75 per share, represented the elimination of remaining inflation in the stock price related to the alleged fraud.  *See id*. at ¶ 55; *see also* ECF No. 72 at Ex. A-1 (Notice) at 16-21.

### C.    The Remaining *Girsh* Factors Further Support Preliminary Approval

As demonstrated above in connection with the Rule 23(e)(2)(C) and (D) factors, the first, fourth and fifth *Girsh* factors (the complexity, expense and likely duration of litigation, risks of establishing liability and risks of establishing damages) all favor approval of the Settlement. The remaining *Girsh* factors, when considered collectively, lend further support for approval of the Settlement.

### 1.    The Reaction of the Settlement Class to the Settlement

The second *Girsh* factor considers the class's reaction to a proposed settlement. As of December 2, 2021, A.B. Data provided a total of 159,546 copies of the Notice and Claim form to potential Settlement Class Members. *See* A.B. Data Decl. at ¶¶ 3-8. To date, no objections have been filed and no requests for exclusion have been received. *See* Egan Decl. at ¶¶ 11, 71, 80. The deadline for filing objections or submitting requests for exclusion is December 17, 2021. Lead Plaintiff will provide an update on any objections and opt-outs in its reply papers, which are due to be filed on or before January 3, 2021.

### 2.    The Stage of the Proceedings

The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. CIV.A. 08-CV-285-DMC, 2010 WL 547613, at \*7 (D.N.J. Feb. 9, 2010) (quoting *GMC Truck*, 55 F.3d at 813). "[U]nder this factor the Court considers whether the…amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Id*. at \*29 (alteration in original). While there is some overlap between this factor and the consideration of litigation risks pursuant to Fed. R. Civ. P. 23(e)(2)(C)(i), Lead Plaintiff addresses this factor separately.

20

In this case, Lead Counsel reviewed hundreds of thousands of documents, including a substantial number of documents that HCSG had previously furnished to the SEC in connection with its investigation into the very allegations at the heart of the Amended Complaint.  In addition, the parties conducted five depositions, including two expert depositions, and the deposition of Lead Plaintiff's Rule 30(b)(6) representative.  Further, lead counsel consulted with experts in the fields of market efficiency, loss causation, damages, and accounting.  Thus, at the time of mediation, the parties were well-positioned to weigh the strengthens and weaknesses of their respective positions before agreeing to mediation.  *See* Egan Decl. ¶¶ 6, 16-32; *see also In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties."); *NFL Players* 821 F.3d at 436-37 ("To the extent objectors ask us to require formal discovery before presuming that a settlement is fair, we decline the invitation.  In some cases, informal discovery will be enough for class counsel to assess the value of the class claims and negotiate a settlement that provides fair compensation.").  This factor weighs in favor of approval of the Settlement.

### 3.    The Risk of Maintaining the Class Action Through Trial

The sixth *Girsh* factor considers the risk of maintaining the class action through trial.  Though Lead Plaintiff is confident that its class certification motion would have been granted, as the Third Circuit has noted, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *Prudential*, 148 F. 3d at 321; *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d at 506-07 ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved.  While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement.").  Thus, in the present case, where "the Class had yet to be

21

certified and there is no guarantee of success . . . the risks favor settlement." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 104 (D.N.J. 2018).

### 4. Defendants' Ability to Withstand a Greater Judgment

The seventh *Girsh* factor concerns the ability of defendants to withstand a greater judgment. Although Defendants here may be able to withstand a greater judgment, where the other *Girsh* factors weigh in favor of approval, this factor should not influence the overall conclusions that the settlement is fair, reasonable, and adequate.[10]

### 5. The Settlement Amount is Reasonable Considering the Range of Possible Recoveries

The eighth and ninth *Girsh* factors call for the court to determine "the range of reasonableness of the settlement fund in light of the best possible recovery … [and] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. Here, the $16.8 million settlement is an excellent result for the Settlement Class. *See* Egan Decl. ¶¶ 53-58, 73. For example, Cornerstone Research estimates that median settlements as a percentage of "simplified tiered damages"[11] in Rule 10b-5 cases have ranged between 3.9% and 8.9% for cases with estimated damages of between $150 million to $500

---

[10] *See*, *e.g.*, *Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 333 (E.D. Pa. 2007) (even when a defendant "likely can withstand a judgment significantly greater than the Settlement . . . this determination in itself does not carry much weight in evaluating the fairness of the Settlement"); *In re Warfarin*, 391 F.3d at 538 (concluding that Defendant's ability to pay a higher amount was irrelevant in determining the fairness of the settlement).

[11] Cornerstone Research defines "simplified tiered damages" as a measure of potential shareholder losses "that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends." *See* Egan Decl. Ex. 6 (*Cornerstone Research, Securities Class Action Settlements: 2020 Review and Analysis* at 5, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis).

million since 2011.[12]  Cornerstone Research further estimates that the median settlement dollars for all securities fraud cases from 2016 to 2020 that, like here, follow rulings on motions to dismiss, but were reached before rulings on class certification, is $6.1 million.[13]

In this case, had Lead Plaintiff overcome all of the obstacles to establishing liability, loss causation, and damages, Lead Plaintiff's expert estimates that the maximum total damages during the Class Period were as much as $263 million.  *See* Egan. Decl. ¶ 50.  The $16.8 million settlement therefore represents approximately 6.4% of the estimated total maximum alleged damages, which is in line with the median reported by Cornerstone Research and exceeds the Third Circuit's median recovery of 5.2% of damages.  *See* Egan Decl. ¶ 51.  Moreover, given the likelihood that not all Settlement Class Members will file claims (as is typical in securities class actions), it is likely that the actual percentage of recovery will be even higher.  Additionally, as discussed in Section IV.A.3(a), above, should Defendants prevail in arguing that the alleged fraud was fully disclosed to the market on March 22, 2017, when the first Monocle Report was published, this could potentially dramatically curtail the class period and reduce damages to less than $300,000.  *See* Egan Decl. at ¶ 48.

In sum, the parties have demonstrated that the Settlement warrants approval as being within the "range of reasonableness" given the significant uncertainties and risks in continuing this litigation.  Thus, the $16.8 million in cash recovery now, particularly when viewed in the context of the risks, costs, delay, and uncertainties of further proceedings, weighs in favor of approval of the Settlement.

---

[12] *Id.* at 6.

[13] *Id.* at 14.

### 6.    The Relevant *Prudential* Considerations Also Support Approval of the Settlement

In addition to Rule 23(e) and the *Girsh* factors, courts in the Third Circuit also address certain overlapping considerations set forth in *Prudential*, where applicable.  The *Prudential* considerations are:

[1]    the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
[2]    the existence and probable outcome of claims by other classes and subclasses;
[3]    the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants;
[4]    whether class or subclass members are accorded the right to opt out of the settlement;
[5]    whether any provisions for attorneys' fees are reasonable; and
[6]    whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323.  Each of the relevant *Prudential* considerations overlap with the Rule 23(e) or *Girsh* factors that weigh in favor of the Settlement.  With respect to the first consideration, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case.  *See* Section IV.A.3(a), *supra*.  With respect to the second and third considerations, Lead Counsel is not aware of any other classes of claimants asserting related securities fraud claims against Defendants.  With respect to the fourth consideration, Settlement Class Members were afforded the right to opt out of the Settlement and were informed of that right in the Court-approved Notice; to date none have.  With respect to the fifth consideration, Lead Plaintiff's Counsel's request for attorneys' fees is reasonable for the reasons set forth in the memorandum in support of the Fee and Expense Motion, filed herewith.  With respect to the sixth

24

consideration, the Plan of Allocation, which will govern the processing of claims and the allocation of settlement funds, is fair and reasonable as set forth in Section V below.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P. 23 is governed by the same standards of review applicable to the settlement as a whole— the plan must be fair, reasonable, and adequate." *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at \*23 (D.N.J. Nov. 15, 2016). "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014). Generally, a plan of allocation that reimburses class members on a *pro rata* basis based on the relative strength and value of their claims is reasonable. *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d at 431; *In re Ikon Office Sols. Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000). Moreover, the Plan of Allocation was fully disclosed in the Notice and Claim Form mailed to potential Settlement Class Members and nominees and, to date, there have been no objections to the Plan of Allocation, which further supports the reasonableness of the Plan of Allocation.

Here, the proposed Plan of Allocation, which was developed with the assistance of Lead Plaintiff's damages consultant, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Amended Complaint, as opposed to economic losses caused by market or industry factors or company-specific factors unrelated to the alleged fraud. *See* Egan Decl. at ¶¶ 53-58. In developing the Plan of Allocation, Lead Plaintiff's consultant calculated the estimated amount of artificial inflation in the price of HCSG common stock which was allegedly proximately caused

by Defendants' alleged false and misleading statements and material omissions during the Settlement Class Period. *See id.* In order for a Settlement Class Member to have a Recognized Loss, HCSG common stock must have been purchased or acquired during the Settlement Class Period and held through at least one of the two corrective disclosure dates (March 4, 2019 or February 10, 2021, *see* n.3, *supra* and Section VI, *infra*). *See* Egan Decl. at ¶ 54; *see also* Section IV.A(4) and n.9, *supra*.

Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each share of HCSG common stock purchased or acquired during the Settlement Class Period that is listed on a Claimant's Claim Form and for which adequate supporting documentation is provided. *See id*. at ¶ 56. The calculation of a Recognized Loss (and, ultimately, a recognized claim) for each Claimant will depend on factors including the date(s) on which the Claimant purchased her, his, or its shares of HCSG common stock, whether shares were sold and, if so, at what price. *See id*. The Claims Administrator will then proportionally allocate the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis; each *pro rata* share will be the Authorized Claimant's Recognized Loss divided by the total Recognized Losses of all Authorized Claimants and multiplied by the total amount in the Net Settlement Fund. *See id*.

The Plan of Allocation was fully disclosed in the Court-approved Notice. To date, there have been no objections to the Plan of Allocation. *See id*. at ¶ 11. Accordingly, Lead Counsel believes that the Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the federal securities laws and should be approved.

## VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court granted preliminary certification of the Settlement Class, finding that the prerequisites for certification under Federal Rules of Civil

Procedure 23(a) and 23(b)(3) were met for the purposes of settlement. *See* ECF No. 72 at 2-3. The Settlement Class Period preliminarily certified by the Court is longer than the Class Period alleged in the operative complaint, which encompassed April 8, 2014 through March 4, 2019. The extended Settlement Class Period results from a press release issued by the Company in February 2021, which constituted a further revelation related to the alleged EPS manipulation scheme alleged in the Amended Complaint. The February 2021 announcement, which was issued in the midst of class certification briefing and just as the parties began settlement discussions, serves as a final corrective disclosure arising out of the same facts and circumstances of the alleged fraud and thus may end the Settlement Class Period here. *See*, *e.g., In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at \*2 (S.D.N.Y. July 15, 2014) ("The expanded class period covers the entire time period during which there might arguably have been artificiality in the market so Settling Defendants may obtain a 'global peace' settling all claims arising from the alleged facts."); *see also* ECF No. 70-2 at 19-20.

Since the Preliminary Approval Order issued, nothing has occurred to affect the correctness of the Court's certification of the Settlement Class. Thus, for the reasons stated in the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for and Order: (I) Preliminarily Approving Proposed Class Action Settlement; (II) Preliminarily Certifying the Settlement Class; and (III) Approving Notice to the Settlement Class (ECF No. 70-2, incorporated herein by reference), certification of the Settlement Class remains appropriate. Lead Plaintiff therefore respectfully requests that the Court finally certify the Settlement Class for purposes of effectuating the Settlement.

## VII.   CONCLUSION

For the reasons stated herein and in the Egan Declaration filed herewith, Lead Plaintiff respectfully requests that the Court enter the proposed Order and approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

DATED:  December 3, 2021                         **BERMAN TABACCO**

/s/ Patrick T. Egan
    Patrick T. Egan (*Pro Hac Vice*)

Steven J. Buttacavoli (*Pro Hac Vice*)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email:  pegan@bermantabacco.com
              sbuttacavoli@bermantabacco.com

**BERMAN TABACCO**
Nicole Lavallee (*Pro Hac Vice*)
Jeffrey Rocha (*Pro Hac Vice*)
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  nlavallee@bermantabacco.com
              jrocha@bermantabacco.com

*Counsel for Lead Plaintiff Utah Retirement Systems*
*& Lead Counsel for the Class*

and

**SCHNADER HARRISON SEGAL &**
**LEWIS LLP**
Ira Neil Richards
Arleigh P. Helfer III
1600 Market Street, Ste. 3600
Philadelphia, PA 19103
Telephone: (215) 751-2503
Facsimile: (215) 751-2205
Email: irichards@schnader.com
              ahelfer@schnader.com

*Counsel for Lead Plaintiff Utah Retirement Systems*
*& Liaison Counsel for the Class*

28

## CERTIFICATE OF SERVICE

I certify that on the 3rd of December, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ Patrick T. Egan*
Patrick T. Egan