**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UTAH RETIREMENT SYSTEMS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>HEALTHCARE SERVICES GROUP, INC., DANIEL P. MCCARTNEY, THEODORE WAHL, JOHN C. SHEA, and MATTHEW J. MCKEE,<br><br>　　　　　　　Defendants. | Case No. 2:19-cv-01227-ER |

**DECLARATION OF PATRICK T. EGAN IN SUPPORT OF**
**(1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND PLAN OF ALLOCATION AND CERTIFICATION OF**
**SETTLEMENT CLASS, AND (2) LEAD PLAINTIFF'S COUNSEL'S MOTION FOR AN**
**AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES AND AWARD TO**
**<u>LEAD PLAINTIFF PURSUANT TO 15 U.S.C. § 78u-4(A)(4)</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................2

II.     SUMMARY OF PLAINTIFF'S CLAIMS .........................................................5

III.    HISTORY OF THE ACTION .............................................................................6

IV.     SETTLEMENT NEGOTIATIONS AND THE
        SETTLEMENT OF THE ACTION ...................................................................8

V.      COMPLIANCE WITH PRELIMINARY APPROVAL
        ORDER ...................................................................................................................10

VI.     RISK FACTORS ....................................................................................................13

VII.    PLAN OF ALLOCATION ...................................................................................17

VIII.   APPLICATION FOR ATTORNEYS' FEES,
        REIMBURSEMENT OF EXPENSES, AND AWARD TO
        LEAD PLAINTIFF ...............................................................................................19

IX.     REIMBURSEMENT TO LEAD PLAINTIFF URS IS
        FAIR AND REASONABLE ................................................................................24

X.      REACTION OF THE SETTLEMENT CLASS ..............................................25

## LIST OF EXHIBITS

Exhibit 1    Declaration of Adam D. Walter of A.B. Data , Ltd. Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date;

Exhibit 2    Berman Tabacco Firm Resume;

Exhibit 3    Declaration of Ira Neil Richards in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses Filed on Behalf of Schnader Harrison Segal & Lewis LLP;

Exhibit 4    Declaration of Kevin Catlett on Behalf of Utah Retirement Systems in Support of Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses;

Exhibit 5    Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis*; and

I, Patrick T. Egan, declare:

1.      I am a partner in the Boston office of Berman Tabacco, the Court-appointed Lead Counsel[1] for Lead Plaintiff Utah Retirement Systems ("Lead Plaintiff" or "URS") and the proposed class counsel in the above-captioned matter.  As a result of my own substantial involvement in this litigation, I have personal knowledge of the facts set forth in this declaration.

2.      I respectfully submit this declaration in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Certification of Settlement Class (the "Final Approval Motion").  If approved, the Settlement would resolve all claims asserted in the Action against Defendants on behalf of the proposed Settlement Class, which consists of all Persons who purchased or otherwise acquired Healthcare Services Group, Inc. ("HCSG" or the "Company") common stock between April 8, 2014 through February 9, 2021, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby.[2]  The Court preliminarily approved the Settlement and certified the Settlement Class for settlement purposes only by an Order dated September 14, 2021.  ECF No. 72 (the "Preliminary Approval Order").

3.      I also respectfully submit this declaration in support of Lead Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. § 78u-4(A)(4) (the "Fee & Expense Motion").

4.      For the reasons discussed herein and in the memoranda of law filed concurrently herewith, I, on behalf of Lead Counsel, respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be finally approved by the Court; (ii) the

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated June 29, 2021 (ECF No. 70-4, the "Stipulation").

[2] Pursuant to Section 1.36 of the Stipulation, Defendants and certain related individuals and entities are excluded from the Settlement Class, as are any individuals or entities who make valid and timely requests for exclusion from the Settlement.  *See* ECF No. 70-4.

1

proposed Plan of Allocation is fair, reasonable, and adequate and should be approved by the Court; (iii) the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) and should be certified to effectuate the Settlement; and (iv) the attorneys' fees and expenses sought in the Fee & Expense Motion are reasonable, supported by the facts and the law, and should be granted.

## I.    INTRODUCTION

5.    The proposed Settlement before the Court provides for a resolution of all claims in the Action in exchange for a cash payment of $16,800,000 for the benefit of the Settlement Class. Lead Counsel respectfully submits that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks in the Action.  As explained herein, the Settlement provides a considerable benefit to the Class by conferring a substantial, certain, and immediate recovery while avoiding the significant risks and expense of continued litigation, including that the Settlement Class could recover nothing, or less than the Settlement Amount, after years of additional litigation and delay.

6.    The Settlement is the result of extensive efforts by Lead Plaintiff and Lead Counsel, which included, among other things detailed herein: (i) conducting a thorough investigation of Defendants' alleged fraudulent misrepresentations that included, *inter alia*, reviewing news articles, analyst reports, and other publicly available information concerning HCSG and the allegations at issue in this Action, interviewing a number of former HCSG employees who provided information as detailed in the Amended Complaint, and other research and analysis of potential claims; (ii) drafting the Amended Complaint, which was filed on September 17, 2019; (iii) researching and drafting in connection with the successful opposition to Defendants' motion to dismiss, which the Court denied in its entirety on April 24, 2020 (ECF No. 42); (iv) research

and drafting in connection with the successful opposition to Defendants' motion for reconsideration, which the Court denied on July 13, 2020 (ECF. No. 51); (v) research, drafting, and consultation with an expert in connection with a Motion for Class Certification filed on November 13, 2020 (ECF No. 61); (vi) conducting significant and meaningful discovery; (vii) engaging in an arm's-length mediation that led to the resolution of this matter; and (viii) negotiating and preparing the Stipulation and other Settlement-related documents, including the Plan of Allocation and the Notice provided to the Settlement Class.

7.      Further, in reaching the Settlement, Lead Plaintiff and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving the required elements of materiality, falsity, scienter, loss causation, and damages; (ii) the difficulties in overcoming Defendants' challenges to class certification and the delays involved in the inevitable appeals of a decision on class certification; (iii) the fact that, even if Lead Plaintiff prevailed at summary Judgment and trial, any monetary recovery could have been less than the Settlement Amount; and (iv) the delays that would follow even a favorable judgment including appeals.

8.      As a result of the efforts and considerations summarized in the preceding two paragraphs and as more fully set forth herein, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims and defenses in the Action at the time they reached the proposed Settlement.  The Settlement was reached only after extensive arm's length negotiations that were assisted by an experienced mediator, Robert A. Meyer, Esq. of JAMS, Inc. ("Meyer" or the "Mediator").  Lead Plaintiff and Lead Counsel believe that the Settlement represents a very favorable outcome for the Settlement Class and that its approval is in the best interest of the Settlement Class.

9.      As discussed in further detail below, the Plan of Allocation was developed with the assistance of Lead Plaintiff's damages expert and provides for the distribution of the Net Settlement Fund to Class Members who submit timely Claim Forms that are approved for payment on a *pro rata* basis based on Claimants' losses that are attributable to the alleged fraud.

10.     With respect to the Fee & Expense Motion, as discussed in the memorandum in support of the Fee & Expense Motion, the requested fee of 25% of the Settlement Fund is well within the range of percentage awards granted by courts in this Circuit.  Additionally, the fee requested represents a negative multiplier of 0.88 on Lead Plaintiff's counsel's collective lodestar, which is below or within the range of fee awards that have been accepted in this Circuit.

11.     On September 14, 2021, this Court preliminarily approved the Settlement, preliminarily certified the Settlement Class for settlement purposes, and approved the program for providing Notice to the Settlement Class.  *See* ECF No. 72.  While the deadline to submit objections and requests for exclusion has not passed, to date, no Settlement Class Member has objected to the Settlement or Plan of Allocation, and the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), has not received any requests for exclusion.

12.     For all of the reasons set forth herein and in the accompanying memoranda, including with respect to the quality of the result obtained and the numerous significant litigation risks, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.  In addition, Lead Counsel respectfully submits that their request for attorneys' fees, reimbursement of litigation expenses, and award to Lead Plaintiff pursuant to. 15 U.S.C. § 78u-4(A)(4) should be approved.

## II.    SUMMARY OF PLAINTIFF'S CLAIMS

13.    Lead Plaintiff alleges that Defendants engaged in a long-term pattern of misleading investors into believing that the Company legitimately met or beat Wall Street analysts' consensus estimates for the Company's earnings per share ("EPS") by manipulating the Company's net income and EPS to ensure the Company consistently met analyst expectations. *See*, *e.g.*, Amended Class Action Complaint for Violations of the Federal Securities Laws alleging violations of §§10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Amended Complaint") (ECF No. 31) at ¶¶ 4-9; 18-19, 42-43, 51-82.[3]  Lead Plaintiff further alleges that, once Defendants' conduct drew the attention of the U.S. Securities and Exchange Commission ("SEC"), Defendants continued to hide from investors its past conduct and also hid an ongoing SEC investigation into the Company's EPS practices that began in November 2017. *Id.* at ¶¶ 4, 10-13, 90-99.

14.    On March 4, 2019, Defendants first revealed the existence of the SEC investigation and further announced that the Company was conducting its own internal investigation.  In response, the price of HCSG's stock fell by more than 13%. *Id*. ¶¶ 15, 100-03, 280, 343.

15.    Then, on February 10, 2021, shortly after the parties began to discuss mediation and a possible settlement of this Action, the Company issued a press release announcing, in part, that the Company and the SEC had recently commenced discussions regarding a potential resolution of the investigation and that, in conjunction with those discussions, Defendant Shea had notified the Company that he would be taking a temporary leave of absence from his duties.  This news led to a further decline in the price of HCSG's common stock that, as discussed at ¶¶ 54-55 herein, was partially attributable to news about the SEC investigation and Defendant Shea's temporary leave of absence.

---

[3] Unless otherwise specified, citations to ¶ __ herein are to paragraphs in the Amended Complaint.

## III. HISTORY OF THE ACTION

16. This matter commenced on March 22, 2019 with the filing of an initial complaint, styled as *Stephen Koch v. Healthcare Services Group, Inc., and Theodore Wahl.*, Case No. 2:19-cv-01227-ER. *See* ECF No. 1. Thereafter, on May 21, 2019, URS sought appointment as Lead Plaintiff and sought the appointment of Berman Tabacco as Lead Counsel pursuant to the lead plaintiff provisions of the PSLRA. *See* ECF No. 5.

17. On June 17, 2019, this Court appointed URS as Lead Plaintiff for the class and approved Lead Plaintiff's choice of the law firms of Berman Tabacco as Lead Counsel and Schnader Harrison Segal & Lewis LLP as Liaison Counsel for the class. *See* ECF No. 24.

18. On September 17, 2019, after extensive investigation by Lead Counsel, Lead Plaintiff filed the Amended Complaint, which is the operative complaint in this Action. The Defendants in this Action are Healthcare Services Group, Inc. ("HCSG"), Daniel P. McCartney, Theodore Wahl, John C. Shea, and Matthew J. McKee (collectively, "Defendants").

19. On November 18, 2019, Defendants filed a motion to dismiss the Amended Complaint. *See* ECF No. 33. Lead Plaintiff thereafter filed an extensively researched and carefully drafted 49-page opposition to Defendants' motion on January 17, 2020. *See* ECF No. 38. On April 24, 2020, the Court denied Defendants' motion to dismiss in its entirety. *See* ECF No. 42. On May 8, 2020, Defendants moved for reconsideration of the Court's ruling on the motion to dismiss (ECF No. 45), which Lead Plaintiff opposed (ECF No. 46). The Court entered an Order denying the motion for reconsideration on July 13, 2020. *See* ECF No. 51.

20. On June 8, 2020, the parties exchanged their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1).

21. Defendants filed their Answer and Affirmative Defenses to the Amended Complaint on June 22, 2020. *See* ECF No. 47.

22. On July 23, 2020, the Parties submitted a stipulated Proposed Joint Discovery Protocol. *See* ECF No. 53.

23. On July 27, 2020, the Court held an initial pre-trial conference. Pursuant to the Court's instructions at the July 27, 2020 pre-trial conference, the parties attempted to negotiate a joint proposed scheduling order and discovery plan for the Action. Thereafter, following a series of negotiations, on August 7, 2020, the Parties filed a proposed Scheduling Order and Discovery Plan. *See* ECF No. 58.

24. On August 11, 2020, the Court entered a First Scheduling Order on Class Certification, imposing a schedule regarding the class certification aspects of the case, bifurcating discovery, and ordering Defendants to produce certain materials previously provided to the SEC, pursuant to an agreement of the parties. *See* ECF No. 59.

25. Counsel for the parties held several conferences to negotiate proposed protective orders and discovery protocols. On July 28, 2020, the Court issued two Orders approving the Parties' Stipulated Protective Order (ECF No. 56) and Joint Discovery Protocol (ECF No. 57), and, on September 11, 2020, the Court issued an Order approving the Parties' Stipulated Qualified Protective Order governing protected health information (ECF No. 60).

26. Thereafter, the parties commenced authorized discovery, including: Defendants' production to Lead Plaintiff of over 60,000 documents (including over 450,000 produced pages), Lead Plaintiff's production to Defendants of 665 documents (totaling approximately 11,209 pages of materials), Defendants' service on Lead Plaintiff of twelve written interrogatories and Lead

Plaintiff's objections and responses thereto, and Lead Plaintiff's service upon Defendants of one written interrogatory (containing four subparts) and Defendants' objections and responses thereto.

27. In connection with the above-referenced discovery, counsel for the parties exchanged numerous meet and confer letters and held several telephonic conferences to discuss the nature and scope of the parties' requests, objections, and responses.

28. In addition, Defendants subpoenaed 2,412 documents (totaling 9,485 pages of materials) from Lead Plaintiff's investment advisor Wasatch Global Investors, and 496 documents (totaling 1,071 pages) from third-party Callan Associates, Inc.

29. On November 13, 2020, Lead Plaintiff moved for class certification, supported by an expert report. *See* ECF No. 61.

30. On December 3, 2020, following several weeks of negotiation, the parties submitted, and the Court approved, a Stipulated Remote Deposition Protocol to address the constraints of the COVID-19 pandemic on in-person depositions. *See* ECF No. 62.

31. Thereafter, Defendants deposed URS's Rule 30(b)(6) designee, the two Rule 30(b)(6) designees of URS's money manager Wasatch Global Investors, and Plaintiff's expert, Dr. Zachary Nye., Ph.D.

32. Defendants filed their brief in opposition to class certification and a supporting expert report on January 27, 2021. *See* ECF No. 63. On February 25, 2021, Lead Plaintiff deposed Defendants' class certification expert, Stephen Choi.

## IV.   SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT OF THE ACTION

33. In early February 2021, shortly after Defendants filed their opposition to Lead Plaintiff's Class Certification Motion, the Parties discussed the possibility of mediation and selected a nationally recognized mediator, Robert A. Meyer, Esquire, to mediate a possible

settlement of this Action.  Mr. Meyer is a mediator with JAMS with over twelve years' experience in mediating complex commercial disputes, including securities class actions brought under the PSLRA.  *See* https://www.jamsadr.com/meyer/.

34.    On February 10, 2021, shortly after the Parties began to discuss mediation, HCSG announced quarterly and yearly results for the period ended December 31, 2021, provided revenue guidance, and expressed concerns over lingering COVID-related issues.  *See*, *e.g.*, https://www.sec.gov/Archives/edgar/data/731012/000073101221000021/hcsg-20210210.htm.  In addition, the Company provided an update on the ongoing SEC investigation, stating, "The Company and the SEC have recently commenced discussions regarding a potential resolution of the investigation, which focuses on periods prior to 2018."  *Id.*  The Company further announced that in conjunction with those discussions, Defendant Shea "is taking a temporary leave of absence from his duties."  *Id.*

35.    On March 12, 2021, the parties exchanged detailed mediation statements setting forth their positions on, *inter alia*, liability and damages.

36.    On March 17, 2021, the Parties engaged in intensive, arm's-length settlement negotiations under the close supervision of Mr. Meyer and reached an agreement to settle the Action for $16,800,000, subject to approval by this Court.  As a result of Lead Plaintiff's and Lead Counsel's investigation, the information obtained in discovery, legal and factual research in connection with briefing Defendants' motion to dismiss and Lead Plaintiff's motion for class certification, and the information exchanged in connection with the Mediation (*see* ¶ 6, *supra*), Lead Plaintiff and Lead Counsel were fully informed of the strengths and weaknesses of the claims and defenses in the Action at the time they reached the proposed Settlement of this Action.

37. Over the course of several months following the March 17, 2021 Mediation, the Parties engaged in extensive negotiations regarding the terms of the Stipulation and, on June 29, 2021, the Parties entered into the Stipulation (ECF No. 70-4), which was filed with the Court along with Lead Plaintiff's preliminary approval papers on June 30, 2021.

## V.   COMPLIANCE WITH PRELIMINARY APPROVAL ORDER

38. On September 14, 2021, the Court issued its Preliminary Approval Order and ordered that Notice be provided to the Settlement Class, which was docketed on September 15, 2021. *See* ECF No. 72 at 4-6. For purposes of settlement, the Court appointed Berman Tabacco as Lead Counsel, URS as class representative, and A.B. Data as the Claims Administrator. *Id*. at 3, 5. Subject to Court approval, Lead Plaintiff had retained A.B. Data – a highly experienced claims administration firm – after a competitive bidding process. As discussed herein and in the accompanying Declaration of Adam D. Walter of A.B. Data, Ltd. Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "A.B. Data Declaration" or "A.B. Data Decl.," attached as Exhibit 1 hereto), the Claims Administrator has carried out all of the steps set forth in the Preliminary Approval Order, including providing the Notice to 159,546 potential Settlement Class Members and publishing/transmitting the Summary Notice. *See* A.B. Data Decl. at ¶¶ 3-8 and Exs. A-C thereto.

39. Following the Court's preliminary approval of the Settlement, Lead Plaintiff, Lead Counsel, and the Claims Administrator implemented the Court-approved notice plan. Pursuant to the Court's Preliminary Approval Order, the Notice and Claim Form (the Notice and Claim Form are referred to collectively herein as the "Notice Packet") were sent via U.S. Mail on October 6, 2021 to all registered holders of HCSG common stock during the Settlement Class Period, as

identified by HCSG's transfer agent, and to a list of the largest and most common banks, brokers, and other nominees maintained by the Claims Administrator. *See* A.B. Data Decl. ¶¶ 3-5.

40.    The Preliminary Approval Order and Notice required that nominees who purchased or otherwise acquired HCSG common stock as a nominee for a beneficial owner during the Settlement Class Period, within ten (10) days of receipt of the Notice, either: (i) send a copy of the Notice Packet by First-Class Mail to all such Persons; or (ii) provide a list of the names, addresses, and, if available email addresses, of such Persons to the Claims Administrator. *See id*. at ¶ 6 & Ex. A (Notice) at Section 23. Pursuant to this provision, A.B. Data received an additional 91,618 names and addresses of potential Settlement Class Members from individuals or brokerage firms, banks, institutions and other nominees, and has also received requests from brokers and other nominee holders for 64,036 Notice Packets, which the brokers and nominees are required to mail to their customers. *See id*. at ¶ 7.

41.    A total of 161,204 Notice Packets have been mailed to potential Settlement Class Members and their nominees. *Id*. at ¶ 8. A.B. Data received 2,224 Notice Packets returned by the United States Postal Service ("USPS") as undeliverable. Through TransUnion, A.B. Data performed address searches for the undeliverable Notice Packets and was able to find 632 updated addresses. For all 632 of those Persons, A.B. Data re-mailed the Notice Packet; the USPS has returned 66 of the re-mailed Notice Packets as undeliverable. *Id.* Accordingly, the Notice Packet was provided to 159,546 potential Settlement Class Members.

42.    In addition to mailing the Notice Packet, on October 11, 2021, the Summary Notice was published in *Investor's Business Daily* (a publication focused on the stock market, business, and finance) and in a press release issued through *PR Newswire* on October 11, 2021. *See id.* at ¶ 9 & Exs. B and C. Both of these forms of Summary Notice included contact information for the

11

Claims Administrator and Lead Counsel, as well as the address of the settlement website, www.HCSGSecuritiesLitigation.com. *See id.*

43. The Notice apprised Settlement Class Members of the nature and pendency of the Action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released. In addition, the Notice provided Settlement Class Members with the following information: (i) the Settlement consideration; (ii) the Parties' reasons for proposing the Settlement; (iii) the estimated average recovery per affected common share; (iv) the attorneys' fees and expenses sought; (v) the contact information of Lead Counsel's representatives who are available to answer questions; (vi) the right of Settlement Class Members to participate in the Settlement, object to any aspect of the Settlement, the Plan of Allocation, and/or the fee and expense application, or exclude themselves from the Settlement; (vii) the dates and deadlines for certain Settlement-related events; (viii) the rationale behind the Plan of Allocation; (ix) how to submit Claim Forms, object, or opt out of the Settlement and the timing needed to do so; and (x) that the Claims Administrator will maintain a toll-free number to answer questions as well as maintain a website where, among other things, key pleadings in this case may be viewed. The Notice specifically informed recipients that Lead Counsel intended to apply for an award of attorneys' fees not to exceed twenty-five percent (25%) of the Settlement Amount and for reimbursement of litigation expenses in an amount not to exceed $550,000.00.

44. The Settlement Website, www.HCSGSecuritiesLitigation.com, went live on October 6, 2021. *See id.* at ¶ 11. The Settlement Website contains a copy of the Notice, Claim Form, and Stipulation, as well as a copy of the Amended Complaint and the Preliminary Approval Order. *See id.* Copies of Lead Plaintiff's Final Approval Motion, Lead Counsel's Fee & Expense

12

Motion, and this declaration and the exhibits thereto will be posted to the Settlement Website shortly after they are filed with the Court.

## VI.    RISK FACTORS

45.    In connection with the briefing on Defendants' motion to dismiss, Lead Plaintiff's motion for class certification, and in the mediation statements and related information exchanged in the context of the Mediation, the Parties exchanged extensive analyses of key legal and factual issues in this Action.  These issues include, *inter alia* the necessary elements of falsity, materiality, scienter, loss causation, and damages, as well as issues related to class certification.  For example, Defendants contend that: (a) they made no actionable material misrepresentations; (b) the alleged "rounding" of EPS results was both known and immaterial to investors years before the close of the Class Period or Settlement Class Period; (c) Defendants did not act with the requisite scienter; (d) Defendants were under no obligation to disclose the existence of the SEC investigation any earlier than they did; and (e) Lead Plaintiff and the Settlement Class were not damaged.  Moreover, Defendants maintain that the Action could not be certified as a class action because Lead Plaintiff's damages model does not adequately account for what Defendants believe are different theories of liability that purportedly impact different portions of the class.  Defendants also argue that it is an obstacle to class certification that URS's asset manager did not rely on the alleged actionable misrepresentations and that a class could not be certified for a period that extends beyond March 22, 2017, the date on which short-seller Monocle Accounting Research ("Monocle") issued a report noting that HCSG regularly met consensus EPS targets for more than a decade.

46.    Lead Counsel, who have a decades of experience in the prosecution and resolution of complex class actions and securities litigation, have carefully evaluated the merits of the case and the proposed Settlement.  Lead Counsel believe that the case was strong and that there was

13

sufficient evidence to proceed to the jury on the claims. They recognize, however, that Defendants would strenuously challenge the allegations and proof regarding each element of the causes of action, including materiality, falsity, scienter, and loss causation, and that the vigorously contested motion for class certification presented significant challenges. Defendants would further challenge the class-wide damages alleged by Lead Plaintiff, arguing that actual damages were significantly less, if not nonexistent. Lead Counsel recognize that these challenges would pose significant risks regarding the ability to prevail on the merits and the scope of damages if the case were to proceed to trial. Based on their extensive experience, Lead Counsel understands the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict. As such, Lead Counsel believes the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

47.    Continued litigation of this complex Action—through the completion of class certification briefing, likely appeals of a decision on class certification, full merits fact discovery, merits expert discovery, dispositive motion practice, pre-trial preparation, trial, a jury verdict, post-trial motion practice, and post-trial appeals—would have undoubtedly been a long and expensive endeavor. This complex action involves a range of disputed issues including issues of materiality, falsity, damages, loss causation, scienter, and class certification. While Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious, Defendants have denied, and continue to deny, each and all of the claims and contentions asserted.

48.    Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues ranging from accounting, loss causation, and damages. If the trier of fact finds Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims. Moreover, if the trier of fact is persuaded by Defendants' truth-on-the market defense—that the

14

fraud was revealed early in the Class Period when Monocle released its first report in March of 2017—this could potentially reduce the total compensable pool of damages to near zero. Lead Plaintiff's expert estimated that total classwide damages would be approximately $285,000 if the fraud was found to have been fully revealed on March 22, 2017.

49.    Barring a settlement, there is no question that this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than the Settlement.

50.    In connection with Lead Plaintiff's motion for class certification and in preparation for mediation, Lead Counsel consulted with a damages consultant to evaluate loss causation and damages. To estimate price inflation during the Settlement Class Period, Lead Plaintiff's damages consultant performed an event study of the alleged corrective events, and Company-specific returns on each date were estimated using a regression analysis, which measures the relationship between HCSG stock returns and (i) changes in market-wide factors that would be expected to impact all stocks; and (ii) changes in industry-wide factors that would be expected to impact stock in HCSG's sector. Then, the Company-specific returns (*i.e.*, net of market and industry effects) observed on each alleged corrective event date formed the basis of the estimate of price inflation present during the Settlement Class Period, subject to modification based on the market reaction to any confounding news released on the same dates. Then, to estimate aggregate class-wide damages under Section 10(b), the timing and quantity of investor transactions in HCSG common stock during the Settlement Class Period were estimated using the proportional "80/20 Multi-Trader Model," which posits two active traders with different holdings and propensities to trade. The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders

(*i.e.*, they hold 80% of the shares available, but trade 20% of the volume) and a small set of "fast" traders (*i.e.,* they hold 20% of shares available, but trade 80% of the volume). Applying the theory of per-share damages to the daily trading behavior predicted by the 80/20 Multi-Trader Model aggregate damages under Section 10(b) are estimated to be as much as $263.0 million, based on 59.1 million damaged shares. Lead Plaintiff's expert's result is a best-case scenario which assumes that Lead Plaintiff would prevail on all elements of its claims. Even accepting as true Lead Plaintiff's theory of the case, Defendants likely would dispute the assumptions underlying this analysis.

51.    Based on these estimates, the $16.8 million recovery under the proposed Settlement constitutes approximately 6.4% of the Class's maximum possible recoverable damages, assuming that Lead Plaintiff prevailed on all claims against Defendants. This result compares favorably to median settlements in comparable cases. In the Third Circuit, median settlement amounts in securities class actions are 5.2% of estimated damages. *See* Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis*, attached as Ex. 6 hereto, at 20. For securities class action settlements with estimated damages of between $150 million and $500 million, median settlement amounts ranged from 3.9% and 8.9% of estimated damages from 2011-2020. *See id*. at 6. Moreover, in cases where the settlement was reached after a ruling on a motion to dismiss but before a ruling on class certification, the median settlement was 6.1% of estimated damages. *See id.* at 14.

52.    The $16.8 million in cash is a substantial benefit for the Settlement Class, particularly when compared to the risk that a smaller recovery, or no recovery at all, could be achieved after a trial and appeals, possibly years in the future. If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of his claims, neither Lead

16

Plaintiff nor any members of the proposed Settlement Class of HCSG investors would recover anything. Also, if the Defendants were successful in proving any of their defenses, the proposed Settlement Class likely would recover substantially less than the amount provided in the Settlement, potentially less than $300,000 (*see* ¶ 48, *supra*), or nothing at all.

## VII.   PLAN OF ALLOCATION

53.   As noted above, Lead Counsel consulted extensively with its loss causation/damages expert with regard to the claims asserted in the Amended Complaint to support its motion for class certification, to prepare for mediation, and to prepare the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), which is described in the Notice.

54.   The Plan of Allocation assumes that the price of HCSG common stock was artificially inflated throughout the Settlement Class Period. The computation of the estimated alleged artificial inflation in the price of HCSG common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff. The Plan of Allocation sets forth Recognized Loss estimates based on Lead Plaintiff's determination, based on consultation with its damages consultant, that corrective disclosures removed artificial inflation from the price of HCSG common stock on March 4, 2019 and February 10, 2021 (the "Corrective Disclosure Dates"). Thus, in order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, HCSG common stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.

55.   For the first corrective disclosure, Lead Plaintiff's damages consultant attributed all of the Company-specific price decline on March 4, 2019 ($5.40 per share) to the elimination of

17

most of the inflation in the stock price related to the alleged fraud.  For the second corrective disclosure, the Company announced several things in its February 10, 2021 earnings release, including worse-than-expected revenue guidance and concerns over lingering Covid-related issues.  These concerns, not the update on the SEC investigation, were the primary focus of securities analysts' reports, according to Lead Plaintiff's damages/loss causation consultant.  Thus, based on consultation with its consultant, Lead Counsel determined that only 25% of the stock price decline on February 10, 2021, or roughly $0.75 per share, represented the elimination of inflation in the stock price related to the alleged fraud.

56.    Under the Plan of Allocation, persons and entities who purchased HCSG stock during the Class Period are potentially eligible to share in the distribution of the Net Settlement Fund, if they submit valid Claim Forms.  The Plan of Allocation describes the method of calculating each Claimant's Recognized Loss for each share of HCSG purchased during the Settlement Class Period, as well as their *pro rata* share of the Net Settlement Fund.  Specifically, the Net Settlement Fund is to be allocated in proportion to the Recognized Loss calculated by the Claims Administrator for each Authorized Claimant.  Each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, and multiplied by the total amount in the Net Settlement Fund.

57.    The per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that Lead Plaintiff's damages consultant calculated for litigation purposes and as the estimated maximum amounts of damages Settlement Class Members could likely recover at trial.

18

58.     Thus, I am informed and believe that the Plan of Allocation provides an equitable and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund among Claimants who suffered economic losses as a result of the alleged fraud and should be approved by the Court.

## VIII.  APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

59.     Lead Plaintiff's Counsel seeks an attorney fee award of 25% of the settlement amount, or $4,200,000, and the reimbursement of $485,493.28 in litigation Expenses.

60.     As described in the memorandum of law in support of the Fee & Expense Motion, filed contemporaneously herewith, the 25% fee is comparable to attorneys' fees awarded in comparable securities class actions.  The lodestar multiplier of 0.88, based on the 8,406.10 hours expended by Lead Counsel and Liaison Counsel, is well within or below the range of multipliers awarded in complex common fund class action settlements.

61.     Set forth below is a schedule reflecting the amount of time Berman Tabacco attorneys and professional staff worked on the Action from the inception of the case through October 31, 2021, and the corresponding lodestar value of that work, for which Berman Tabacco seeks an award of attorneys' fees.  The schedule was prepared based upon daily time records maintained by Berman Tabacco attorneys and professional support staff in the ordinary course of business, and the lodestar calculations are based on the firm's current hourly rates as presented in similar lodestar calculations in other complex litigation.  Attorneys or professional support staff who devoted fewer than 15 hours to the Action are excluded from this schedule.  The time and lodestar spent preparing the Fee & Expense Motion were also excluded from these values.

| TIMEKEEPER | STATUS | HOURLY RATE | TOTAL HOURS | TOTAL LODESTAR |
|---|---|---|---|---|
| Bastien, Mackline | Staff Attorney | $420 | 652.00 | $273,840.00 |
| Becker, Kathy | Paralegal | $410 | 139.00 | $56,990.00 |
| Buttacavoli, Steven | Partner | $855 | 491.10 | $419,890.50 |
| Drake, Brian | Staff Attorney | $420 | 594.00 | $249,480.00 |
| Egan, Patrick | Partner | $925 | 867.50 | $802,437.50 |
| Elias, Victor | Associate | $550 | 611.30 | $336,215.00 |
| Eng, Jay | Of Counsel | $825 | 166.10 | $137,032.50 |
| Falardeau, Laura | Project Attorney | $450 | 800.50 | $360,225.00 |
| Keating Ronald | Investigator | $595 | 320.00 | $190,400.00 |
| Lavallee, Nicole | Partner | $1,015 | 205.70 | $208,785.50 |
| Lee, Berna | Staff Attorney | $420 | 673.30 | $282,786.00 |
| Maruzzi, Nicole | Associate | $410 | 118.90 | $48,749.00 |
| McKim, Ellee | Staff Attorney | $420 | 756.00 | $317,520.00 |
| Nolan, Katherine | Investigator | $400 | 68.00 | $27,200.00 |
| Rocha, Jeffrey | Associate | $475 | 1,355.10 | $643,672.50 |
| Saif, Justin | Of Counsel | $740 | 372.10 | $275,354.00 |
| Segura, Beto | Paralegal | $380 | 92.40 | $35,112.00 |
| Soboleva, Yelena | Paralegal | $280 | 55.50 | $15,540.00 |
| **TOTALS** | | | **8,338.50** | **$4,681,229.50** |

62.    The hourly rates for attorneys and professional support staff in my firm have been accepted by courts throughout the country in other complex class actions. *See*, *e.g., Oklahoma Police Pension & Ret. Sys. v. Sterling Bancorp, Inc.*, No. 5:20-cv-10490-JEL-EAS (E.D. Mich. Sep. 23, 2021); *In re Alphabet Inc. Shareholder Deriv. Litig.*, No. 19CV341522 (Cal. Super. Ct. Santa Clara Cty. Feb. 5, 2021); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *4-5 (S.D.N.Y. June 16, 2020); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018); *In re BP p.l.c. Sec. Litig.*, No. 4:10-md-02185, ECF No. 1512 (S.D. Tex. Feb. 13, 2017); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, ECF No. 234 (N.D. Cal. Mar. 18, 2016); *In re Fannie Mae 2008 Sec. Litig.*, No. 1:08-cv-07831-PAC, ECF No. 552 (S.D.N.Y. Mar. 3, 2015); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *22 (N.D. Cal. Feb. 3, 2015).

63.     As discussed in detail in the accompanying Declaration of Ira Neil Richards in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses Filed on Behalf of Schnader Harrison Segal & Lewis LLP (the "Richards Declaration" or "Richards Decl."), attached hereto as Exhibit 3, Liaison Counsel's time on this case is 67.6 hours with a lodestar value of $65,264.00.  *See* Richards Decl. at ¶ 6.

64.     Thus, the total time expended by Lead Plaintiff's Counsel in prosecuting this case on behalf of the Settlement Class is 8,406.10 hours, with a lodestar value of $4,746,493.50.

65.     Berman Tabacco's lodestar figures do not include charges for expense items. Expense items are billed separately, and such charges are not duplicated in the firm's current billing rates.  Further, expense items do not contain any general overhead costs and do not contain a surcharge over the amount paid to the corresponding vendor(s).

66.     As detailed and categorized in the below schedule, Berman Tabacco has incurred a total of $485,284.78 in expenses for which it seeks to be reimbursed from the Settlement Fund.

| DESCRIPTION | TOTAL |
| --- | --- |
| Experts | $ 410,903.00 |
| Court Reporters/Transcripts | $ 11,925.86 |
| Lexis/Dow Jones/Westlaw/Research | $ 18,607.10 |
| Photocopying | $ 3,222.36 |
| Mediation | $ 9,563.00 |
| Document Hosting | $ 29,031.25 |
| Postage/Express/Delivery | $ 283.33 |
| Telephone/FAX | $ 136.52 |
| Travel, Meals, Lodging | $ 1,612.36 |
| **TOTAL** | **$ 485,284.78** |

67.     The above schedule was prepared based upon expense records reflected in the books and records of Berman Tabacco.  These books and records are prepared from expense vouchers, check records, receipts and other source materials.

68.      The types of expenses for which Lead Counsel seeks reimbursement were necessarily incurred in this Action and are of the type routinely charged to classes in contingent litigation, including expenses associated with, *inter alia*, research, accounting and damages consultants, and mediation.  The largest portion of Lead Counsel's expenses, $410,903.00, went to pay for the services of experts and consultants, including Plaintiff's expert at class certification, an accounting consultant who advised on the allegations in the Amended Complaint, and a damages consultant who assisted URS and Lead Counsel in connection with the investigation of the claims, the Mediation, and preparing the Plan of Allocation.  The second largest expense was $29,031.25, to pay for electronic document storage (or "hosting") and the use of the digital document review platform through which Lead Counsel reviewed the more than 450,000 pages of documents produced by Defendants in this Action.  Another large component of Lead Counsel's expenses was $18,607.10 in online research costs for legal research related to, *inter alia*, analyzing and bringing the claims, opposing Defendants' motions to dismiss and for reconsideration, filing Lead Plaintiff's motion for class certification, and addressing discovery concerns.  A further significant expense was the $11,925.86 in connection with court reporters and transcripts related to the five depositions taken in this action and transcripts of proceedings in this Court.  Lead Counsel also incurred expenses of $9,563.00 in connection with the formal Mediation session, as well as pre- and post-mediation discussions with Robert A. Meyer.   The other expenses for which Lead Counsel seeks reimbursement include, *inter alia*, travel, meal and lodging costs, document-reproduction costs, telephone/fax charges, and postage and delivery expenses.

69.      As discussed in the Richards Declaration, Liaison Counsel has incurred $208.50 in unreimbursed expenses on behalf of the Settlement Class in this case.  *See* Richards Decl. at ¶ 10.

22

70.     Thus, the total expenses incurred by Lead Plaintiff's Counsel in the prosecution and settlement of this Action is $485,493.28.

71.     To date, there have been no objections to Lead Counsel's fee or expense request.

72.     With respect to the standing of my firm, attached hereto as Exhibit 2 is a biography of my firm and the attorneys in my firm that were involved in this Action.

73.     The $16.8 million Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded through further litigation and to trial. At the time the Settling Parties reached an agreement to settle the Action, Lead Plaintiff's Motion for Class Certification remained pending, and a decision on class certification (and likely appeals thereof), merits discovery, summary judgment, trial, and possible appeals all lay ahead. The Settlement will provide finality and meaningful relief to hundreds or thousands of investors.

74.     Moreover, Lead Counsel undertook significant risk in prosecuting the action entirely on a contingent basis, receiving no compensation during the time the action has been pending, and was never guaranteed payment of any fee. Lead Counsel has national standing and extensive experience in litigating securities and other complex class actions and has recouped billions of dollars for investors in securities class actions since the enactment of the PSLRA, and Liaison Counsel has significant experience with complex litigation in this district. *See* Exs.2 & 3, attached hereto. Lead Counsel has also participated in dozens of mediations and worked on the resolution of numerous settlements. Lead Counsel prosecuted this case vigorously, provided high quality legal services, and achieved a great result for the Settlement Class. Moreover, the effort and skill of Lead Counsel in investigating the claims, drafting the Amended Complaint, opposing Defendants' motion to dismiss and motion for reconsideration, moving for class certification, and

23

presenting a strong case throughout the Parties' settlement discussions was essential to achieving a meaningful resolution of the Action.

75.     In advancing this litigation, Lead Counsel's substantial efforts were met by aggressive and highly skilled defense attorneys who vigorously contested Lead Plaintiff's claims, with the Defendants here represented by the law firm Troutman Pepper Hamilton Sanders LLP, one of Philadelphia's and the country's preeminent law firms.  Barring a settlement, there is no question that this case would be aggressively litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than achieved through the Settlement.

## IX.     REIMBURSEMENT TO LEAD PLAINTIFF URS IS FAIR AND REASONABLE

76.     PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Accordingly, URS seeks reimbursement of its reasonable costs incurred directly for its work representing the Settlement Class in the amount of $12,500.  The amount of time and effort devoted to this Action by Class Representative is detailed in the accompanying Declaration of Kevin Catlett (the "Catlett Declaration" or "Catlett Decl."), attached hereto as Exhibit 4.  The Court-approved Notice provided that URS may seek "up to $20,000 for its time and expenses incurred in representing the Settlement Class."  *See* ECF No. 72 at Ex. A-1.  To date, no Settlement Class Member has objected to the request for reimbursement of URS's time and expenses.

77.     As discussed in the Catlett Declaration, URS has been fully committed to pursuing this Action from the outset, devoting its time to reviewing pleadings and motions, participating in

24

strategic decisions, participating in class certification discovery including the deposition of a URS representative, consulting with counsel, and having a representative attend the Mediation. *See* Catlett Decl. at ¶¶ 3-4.

78. As a public pension fund and an institutional investor which manages more than $43 billion in assets for over 240,000 beneficiaries, URS is precisely the type of class representative the PSLRA was designed to encourage. *See* Catlett Decl. at ¶¶ 1, 3; 15 U.S.C. § 78u-4(a)(3)(B) (providing a rebuttable presumption that plaintiff with largest financial interest is most adequate plaintiff that shall be appointed lead plaintiff). According to the House Conference Report on the PSLRA, "[t]he Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. 104-369, 34 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

79. Based on its involvement throughout the course of this Action, URS supports final approval of the settlement and Lead Counsel's fee and expense request. *See* Catlett Decl. at ¶¶ 6-7. URS believes that the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class. *See id.* at ¶ 6. URS further believes that Lead Counsel's request for an award of attorney's fees in the amount of 25% is fair, reasonable, and consistent with the fee agreement between Lead Counsel and URS, which was entered into at the outset of the litigation. *See id.* at ¶ 7. In addition, URS believes that the expenses incurred by counsel are fair, reasonable, and necessary to the successful prosecution and resolution of this Action. *See id.*

## X.   REACTION OF THE SETTLEMENT CLASS

80. The deadline for objections or requests for exclusion from the Settlement Class is December 17, 2021. *See* ECF No. 72 at 7-8. While the deadline to submit objections and requests

for exclusion has not passed, no Settlement Class Member has objected to the Settlement, Plan of Allocation, or Lead Counsel's request for attorneys' fees and reimbursement of expenses, and no Settlement Class Member has requested exclusion from the Settlement. *See* A.B. Data Decl. at ¶¶ 12-13. Should any requests for exclusion or objections be received after the date of this submission, Lead Plaintiff and Lead Counsel will address them in their reply brief.

*        *        *

81.    I have been informed by counsel for Defendants that Defendants do not oppose the Motion for Final Approval and take no position on the Fee & Expense Motion.

82.    Attached hereto are true and correct copies of the following documents:

a.    Exhibit 1: Declaration of Adam D. Walter of A.B. Data , Ltd. Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date;

b.    Exhibit 2: Firm resume of Berman Tabacco;

c.    Exhibit 3: Declaration of Ira Neil Richards in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses Filed on Behalf of Schnader Harrison Segal & Lewis LLP;

d.    Exhibit 4: Declaration of Kevin Catlett on Behalf of Utah Retirement Systems in Support of Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses; and

e.    Exhibit 5: Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis*.

26

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Boston, Massachusetts, on December 3, 2021.

*/s/Patrick T. Egan*
Patrick T. Egan

27

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 3rd of December, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.


/s/ Patrick T. Egan
Patrick T. Egan