**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UTAH RETIREMENT SYSTEMS, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case 2:19-cv-01227-ER |
| v. | |
| HEALTHCARE SERVICES GROUP, INC., DANIEL P. MCCARTNEY, THEODORE WAHL, JOHN C. SHEA, and MATTHEW J. MCKEE, | |
| Defendants. | |

**CLASS REPRESENTATIVE'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR APPROVAL OF CLASS DISTRIBUTION PLAN**

## TABLE OF CONTENTS

I.      BACKGROUND ON THE SETTLEMENT ......................................................................... 1

II.     THE NET SETTLEMENT FUND .................................................................................... 3

III.    CLAIMS ADMINISTRATION ....................................................................................... 3

IV.     ADMINISTRATIVE DETERMINATIONS FOR CLAIMS ............................................. 5

        A.      Claims Recommended for Acceptance ................................................................. 5

        B.      Claims Recommended for Rejection ................................................................... 5

V.      FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .......................................... 6

VI.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ................................... 6

VII.    RELEASE OF CLAIMS ................................................................................................. 9

VIII.   RECORD RETENTION AND DESTRUCTION ............................................................. 9

IX.     CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Fleming v. Impax Labs., Inc.*,
No. 16-CV-065557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................. 8

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal Dec. 18, 2018) ....................................... 8

*Peace Officers' Annuity and Benefit Fund of Georgia*,
No. 17-CV-0304-WJM-NRN, 2021 WL 1387110 (D. Co. Apr. 13, 2021) ............................... 8

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
362 F. Supp. 2d 574 (E.D. Pa. 2005) ..................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................................... 1

Court-Appointed Settlement Class Representative and Lead Plaintiff, Utah Retirement Systems ("Utah" or "Class Representative"), by and through its counsel Berman Tabacco ("Lead Counsel"), hereby submits this memorandum in support of its motion for an Order, pursuant to Federal Rule of Civil Procedure 23(e), approving the plan for distributing the Net Settlement Fund to eligible Settlement Class Members ("Plan of Allocation") as set forth in the Declaration of Adam D. Walter in Support of Class Representative's Motion for Approval of Class Distribution Plan (the "Walter Declaration" or "Walter Decl."), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. ("A.B. Data").[1]

## I.    BACKGROUND ON THE SETTLEMENT

Utah, on behalf of itself and the Settlement Class, and Defendants[2] (collectively, the "Parties") reached a $16,800,000 cash settlement that resolved all claims in this Action.

By its Order Preliminarily Approving Settlement and Providing for Notice dated September 15, 2021 (ECF No. 72) (the "Preliminary Approval Order"), the Court directed that the Notice and Claim Form (together, the "Notice Packet") be mailed to potential Settlement Class Members at the mailing addresses set forth in the records provided or caused to be provided by HCSG, or who otherwise may be identified through further reasonable effort. The mailing was conducted in accordance with the Preliminary Approval Order.[3] As set forth in the Walter Declaration, A.B. Data mailed a total of 164,541 Notice Packets to potential Settlement Class Members and nominees. Walter Decl. ¶ 5. The Notice informed Settlement Class Members that

---

[1] Unless otherwise defined, all capitalized terms herein have the meanings set forth in the accompanying Walter Declaration or in the Stipulation and Agreement of Settlement (with attachments thereto), dated June 29, 2021 and filed on June 30, 2021 ("Stipulation") (ECF No. 70-4).

[2] "Defendants" are Healthcare Services Group, Inc. ("HCSG" or the "Company"), Daniel P. McCartney ("McCartney"), Theodore Wahl ("Wahl"), John C. Shea ("Shea"), and Matthew J. McKee ("McKee").

[3] Walter Decl. ¶¶ 3-4.

1

if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to complete and submit a Claim Form postmarked or received no later than February 7, 2022. Walter Decl. ¶ 6. Following Notice to the Settlement Class, not a single member of the Settlement Class objected to any aspect of the Settlement, including the Plan of Allocation. *See* ECF No. 80 at 1.

On January 10, 2022, the Court held a Final Approval Hearing to consider whether the proposed Settlement should be granted final approval. By its Final Judgment and Order of Dismissal with Prejudice ("Final Judgment and Order") dated January 12, 2022, (ECF No. 84), the Court: (i) approved the Settlement provided for in the Stipulation, finding it fair, just, reasonable, and adequate to the Settlement Class; (ii) found the Notice procedures to be proper; and (iii) dismissed with prejudice the claims asserted against Defendants in the Action. By its Order Approving Plan of Allocation dated January 12, 2022, (ECF No. 86), the Court approved Class Representative's proposed Plan of Allocation.

Pursuant to paragraph 8.1 of the Stipulation, the Effective Date of the Settlement has occurred, and the Net Settlement may be distributed to Authorized Claimants. Now, after several months of review and processing claim forms, including efforts to allow Claimants to correct claims and/or contest determinations, the Settlement Funds are ready to be distributed to valid Claimants. As detailed in the accompanying Walter Declaration, and summarized below, the Claims Administrator reached its recommendation on those claims that should be accepted and rejected, subject to Court approval. Accordingly, Class Representative respectfully requests the Court to enter the [Proposed] Order Approving Class Representative's Class Distribution Plan.[4]

---

[4] The Court retained continuing and exclusive jurisdiction over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and the Order. *See* Order at 3.

## II.     THE NET SETTLEMENT FUND

Pursuant to the Stipulation, the Settlement Amount (*i.e.*, $16,800,000) has been deposited into the escrow account established by Lead Counsel ("Escrow Account") has been earning interest for the benefit of the Settlement Class.  To date, $276,406.73 in income has been earned on the Settlement Amount through April 30, 2023.  In addition, the following amounts have been paid from the Escrow Account: (i) $456,280.14 in Notice and Administration Costs[5]; (ii) $4,685,493.28 in Court-awarded attorneys' fees and expenses[6]; and (iii) $12,500.00 in Court-approved "PSLRA Award" to Class Representative.[7]

## III.     CLAIMS ADMINISTRATION

All claims received by A.B. Data through February 10, 2023 have been carefully processed in accordance with the Stipulation and the Court-approved Plan of Allocation set forth in the Notice.  Walter Decl. ¶ 4.  A.B. Data has responded in a prompt manner to all inquiries from potential Class Members regarding the Action, the Settlement, and the procedures for completing and submitting Claims, and has worked with Class Members throughout the administration process to help them perfect their Claims.

As discussed in the Walter Declaration, a significant number of the paper Claims submitted in connection with the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required follow-up work by A.B. Data.  Walter Decl. ¶ 19.  For the Claims that were determined

---

[5] Under the terms of the Stipulation and as approved in this Court, Lead Counsel was authorized to pay Notice and Administration Costs from the Settlement Fund, without further approval from Defendants or further order of the Court, in an amount up to $500,000. *See* Stipulation ¶ 3.6.

[6] *See* Order Awarding Attorneys' Fees, Litigation Costs and Expenses and Award to Class Representative Pursuant to 15 U.S.C. § 78u-4(a)(4) (ECF No. 85).

[7] *Id.* ¶ 5.

3

to be deficient or ineligible, A.B. Data mailed a letter to the Claimant describing the defects in, or the ineligibility of, their Claim and advising what, if anything, was necessary to complete the Claim. *Id.* ¶¶ 20-21. These letters advised Claimants that they were required to submit the appropriate information and/or documentary evidence to complete their Claim(s) within twenty (20) days from the date of the letter or their Claim(s) would be recommended for rejection to the extent the deficiency(ies) or condition(s) of ineligibility were not cured. Walter Decl. ¶ 20. For the Electronic Claims that were determined to be deficient or ineligible, A.B. Data sent each filer an email ("Status Email") with an attached Excel spreadsheet containing detailed information about which filings were deficient and/or rejected. Walter Decl. ¶ 22. This Status Email advised Claimants that any Claims with deficiencies not corrected within twenty (20) days from the date of the email may be rejected. Walter Decl. ¶ 23.

In addition to advising of what was required to cure the Claim, the letters and Status Emails advised Claimants of their right to request the Court's review of their Claim(s) if they contested A.B. Data's administrative determination to reject their Claim(s) in whole or in part. *Id.* During this administration, A.B. Data received five requests for Court review. Walter Decl. ¶ 28. A.B. Data was able to resolve these requests for Court review prior to the filing of Class Representative's motion through additional communications with the Claimant. *Id.* Throughout this administration, A.B. Data spent considerable time addressing deficient and ineligible Claims and assisting Claimants in curing the deficiencies in their Claims in order to be eligible to participate in the Settlement. *See generally* Walter Decl. ¶¶ 19-29. As a result of A.B. Data's efforts, many Claimants who submitted Claims with curable deficiencies were able to properly complete their Claims and are now eligible to participate in the Settlement and receive a payment from the Net Settlement Fund.

IV.     ADMINISTRATIVE DETERMINATIONS FOR CLAIMS

A.      Claims Recommended for Acceptance

As set forth in the Walter Declaration, a total of 64,388 Claims were received by A.B. Data in connection with the settlement through February 10, 2023. Walter Decl. ¶ 6. A total of 27,861 of these Claims have been provisionally accepted by A.B. Data. Walter Decl. ¶ 35. Of the 27,861 Claims being recommended for acceptance approval by the Court, 1,393 Claims were received or postmarked after the initial Court-approved Claims submission deadline of February 7, 2022, but received by A.B. Data on or before February 10, 2023. *Id.* Although these 1,393 Claims were submitted late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. Accordingly, Lead Counsel believes that it would be appropriate to allow these Late but Otherwise Eligible Claims to share in the Net Settlement Fund. Walter Decl. ¶ 29.

The total Recognized Loss Amount for the 27,861 Claims being recommended for acceptance is $260,951,617.48 ($228,394,084.09 for the Timely Eligible Claims listed on **Exhibit D** to the Walter Declaration and $32,557,533.39 for the Late but Otherwise Eligible Claims listed on **Exhibit E** to the Walter Declaration). Walter Decl. ¶¶ 34-35.

Lead Counsel respectfully requests that the Court approve A.B. Data's administrative determinations with respect to the Claims being recommended for acceptance as listed on **Exhibits D** and **E** to the Walter Declaration.

B.      Claims Recommended for Rejection

Of the total Claims received by A.B. Data through February 10, 2023, 36,527 Claims are being recommended for rejection. Walter Decl. ¶ 36; *see also* **Exhibit F** to the Walter Declaration (listing all Claims being recommended for rejection and the reasons for rejection, in Claim number

5

order).  The 36,527 Claims being recommended for rejection were determined to be ineligible for the following reasons: (i) 8,073 Claims had no purchase(s) of HCSG common stock during the Settlement Class Period; (ii) 26,321 Claims did not result in a Recognized Claim under the Court-approved Plan of Allocation; (iii) 1,889 Claims were duplicates or replaced; (iv) 3 Claims failed to cure a deficiency; and (v) 241 Claims were withdrawn.  Walter Decl. ¶ 36.

Lead Counsel respectfully requests that the Court approve A.B Data's administrative determinations with respect to the Claims being recommended for rejection as listed on **Exhibit F** to the Walter Declaration.

## V.      FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with A.B. Data's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, A.B. Data was responsible for, among other things, disseminating Notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline dedicated to the Settlement, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants.  As noted above and set forth in the accompanying Walter Declaration, the cost of the administration for this project up to the Initial Distribution of the Net Settlement Fund ("Initial Distribution") is $465,182.05.  Walter Decl. ¶ 38. To date, A.B. Data has received payment for $456,280.14.  A.B. Data expects to incur an additional $92,456.90 in fees and expenses to conduct the Initial Distribution.  *Id*.

Lead Counsel respectfully requests that the Court approve payment of fees and expenses A.B. Data has incurred and expects to incur to conduct the Initial Distribution and direct payment of this amount (i.e., $557,638.95) to A.B. Data.

## VI.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed at this time.  Lead Counsel, therefore, respectfully requests the Court enter an order approving A.B. Data's determinations concerning

6

the acceptance and rejection of the Claims received through February 10, 2023 and approving the Distribution Plan set forth in the Walter Declaration. If A.B. Data's administrative determinations are approved by the Court, each of the Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim calculated pursuant to the Plan of Allocation compared to the total Recognized Claims of all Authorized Claimants. Walter Decl. ¶ 39(a)(i). As set forth in the Plan of Allocation, if an Authorized Claimant's distribution payment calculates to less than $10.00 it will not be included in the calculation and no distribution will be made to the claimant. Walter Decl. ¶ 39(a)(ii).

It is expected that not all checks sent to the Authorized Claimants will be cashed promptly and some of these checks will remain uncashed. Following the Initial Distribution, and after A.B. Data has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, any balance remaining in the Net Settlement Fund (whether by reason of uncashed checks or otherwise) nine (9) months after the Initial Distribution will, if cost-effective to do so, be redistributed, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution, to Authorized Claimants who have cashed their Initial Distribution checks and who would receive at least $10.00 from such redistribution. Walter Decl. ¶ 39(b).

Additional redistributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional redistributions may occur thereafter if Lead Counsel, in consultation with A.B. Data, determines that additional redistributions, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistributions, would be cost-effective. Walter Decl. ¶ 39(c).

7

Pursuant to Section 6.10 of the Stipulation, at such time as Lead Counsel determines that further redistribution of the funds remaining in the Net Settlement Fund is not cost-effective, any remaining balance, after payment of any unpaid fees and expenses incurred in administering the Settlement, shall be contributed to nonsectarian, not-for-profit organization(s), to be selected by Class Representative and approved by the Court.  *See also* Walter Decl. ¶ 39(d).   Class Representative requests that the Court approve the Investor Protection Trust as such nonsectarian, not-for-profit organization.[8]   Neither Defendants, Class Representative nor Lead Counsel are affiliated with the Institute for Investor Protection. *See* Egan Decl. ¶¶ 6-7.  The Investor Protection Trust is a Washington D.C.-based non-profit organization devoted to independent and unbiased investor education, research, and support of investor protection efforts. *See* Egan Decl. ¶ 5.  Both this Action and the Investor Protection Trust focus on combatting securities fraud and the Investor Protection Trust has been approved by several courts as an appropriate *cy pres* recipient.  *See Fleming v. Impax Labs., Inc.*, No. 16-CV-065557-HSG, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (finding "sufficient nexus between the Class and the Investor Protection Trust, which shares the Class Members' interests in protecting investors and preventing fraud."); *Peace Officers' Annuity and Benefit Fund of Georgia*, No. 17-CV-0304-WJM-NRN, 2021 WL 1387110, at *6 (D. Co. Apr. 13, 2021) (approving Investor Protection Trust as one of three *cy pres* recipients); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *11 (N.D. Cal Dec. 18, 2018) (the Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary); *see also Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 576 (E.D. Pa. 2005) (In analyzing a potential *cy pres* recipient, "the court should consider (1) the objectives of the underlying statute(s), (2) the nature

---

[8] *See* Investor Protection Trust, available at https://investorprotection.org/about/.

of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case.").

## VII.    RELEASE OF CLAIMS

In order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Action, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising from such involvement.  *See* Stipulation ¶ 6.5.  Accordingly, Lead Counsel respectfully requests that this Court bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and release and discharge from any and all claims arising out of the claims administration all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund.

## VIII.   RECORD RETENTION AND DESTRUCTION

Lead Counsel respectfully requests that the Court authorize A.B. Data to destroy paper copies of Claims and all supporting documentation one year after the Second Distribution (as defined in the Walter Declaration), if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution and all electronic copies of the same one year after all funds have been distributed.  Walter Decl. ¶ 39(f).

## IX.   CONCLUSION

Based on the foregoing, Class Representative respectfully requests that the Court approve its Motion and enter the [Proposed] Order Approving Class Representative's Class Distribution Plan.

DATED:  May 2, 2023

**BERMAN TABACCO**

*/s/ Patrick T. Egan*

Patrick T. Egan (*Pro Hac Vice*)
Steven J. Buttacavoli (*Pro Hac Vice*)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com
        sbuttacavoli@bermantabacco.com

**BERMAN TABACCO**
Nicole Lavallee (*Pro Hac Vice*)
Jeffrey Rocha (*Pro Hac Vice*)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        jrocha@bermantabacco.com

*Counsel for Lead Plaintiff Utah Retirement Systems*
*& Lead Counsel for the Class*

**SCHNADER HARRISON SEGAL &**
**LEWIS LLP**
Ira Neil Richards
Arleigh P. Helfer III
1600 Market Street, Ste. 3600
Philadelphia, PA 19103
Telephone: (215) 751-2503
Facsimile: (215) 751-2205
Email: irichards@schnader.com
        ahelfer@schnader.com

*Counsel for Lead Plaintiff Utah Retirement Systems*
*& Liaison Counsel for the Class*

**CERTIFICATE OF SERVICE**

I certify that on the 2nd of May, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ Patrick T. Egan*
Patrick T. Egan